# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

## Idas Resources N.V., Curacao et al

_____
Plaintiff(s)

vs.                                                          Civil Action No.: 1:06-cv-00570

Empresa Nacional de Diamantes de Angola E.P. et al

_____
Defendant(s)

## AFFIDAVIT REQUESTING FOREIGN MAILING

I, the undersigned, counsel of record for plaintiff(s), hereby request that the Clerk mail a copy of the summons and complaint (and notice of suit, where applicable) to (list name(s) and address(es) of defendants):

Empresa Nacional de Diamantes de Angola E.P.
Dr. Manuel Arnaldo de Sousa Calado, President
Rua Major Canhangulo
No. 100
Caixa Postal 1247
Luanda
Angola

by: (check one)    ☑    registered mail, return receipt requested
                   ☐    DHL

pursuant to the provisions of: (check one)
                   ☐    FRCP 4(f)(2)(C)(ii)
                   ☐    28 U.S.C. § 1608(a)(3)
                   ☑    28 U.S.C. § 1608(b)(3)(B)

I certify that this method of service is authorized by the domestic law of (name of country):

Republic of Angola _____, and that I obtained this information by contacting the Overseas Citizens Services, U.S. Department of State.

_____
(Signature)

Steven D. Cundra, D.C. Bar No. 374074
Hall Estill Hardwick Golden Gable & Nelson, PC
1120 20th Street, N.W.,
Suite 700, North Building
Washington, D.C. 20036
Tel: (202) 973-1200
Fax: (202) 973-1212

(Name and Address)

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

IDAS RESOURCES N.V., CURAÇAO;
PABECO B.V.; and ADASTRA MINERALS,
INC., f/k/a AMERICA MINERAL FIELDS

**SUMMONS IN A CIVIL CASE**

V.

EMPRESA NACIONAL DE DIAMANTES DE
ANGOLA E.P. and NOFAR MINING B.V.

CASE NUMBER:    1:06-cv-00570

TO: (Name and address of Defendant)

EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P.
Rua Major Canhangulo
No. 100
Caixa Postal 1247
Luanda
Angola

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Steven D. Cundra
D.C. Bar No. 374074
HALL ESTILL HARDWICK GOLDEN GABLE & NELSON, PC
1120 20th Street, N.W.,
Suite 700, North Building
Washington, D.C. 20036

an answer to the complaint which is served on you with this summons, within _____60_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK                                        DATE

(By) DEPUTY CLERK

AO 440  (Rev. DC - September 2003) Summons in a Civil Action

### RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

G   Served personally upon the defendant.  Place where served: _____

G   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
    discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

G   Returned unexecuted: _____

G   Other (specify): _____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____         _____
                    Date                    *Signature of Server*


                                            _____
                                            *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**FILED**

MAR 2 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IDAS RESOURCES N.V., CURAÇAO<br>St. George's House<br>15 Hanover Square<br>London W1S 1HS<br>United Kingdom<br><br>PABECO B.V.<br>Handelstraat nr. 14<br>Code 1901 VA<br>Castricum<br>The Netherlands<br><br>ADASTRA MINERALS, INC.<br>f/k/a AMERICA MINERAL FIELDS, INC.<br>St. George's Street House<br>15 Hanover Square<br>London W1S 1HS<br>United Kingdom;<br><br>       Plaintiffs,<br><br>v.<br><br>EMPRESA NACIONAL DE DIAMANTES<br>DE ANGOLA E.P.<br>Rua Major Canhangulo<br>No. 100<br>Luanda Caixa Postal 1247<br>Angola<br><br>NOFAR MINING B.V.<br>Watermanweg 100<br>3067 GG Rotterdam<br>The Netherlands<br><br>       Defendants. | CIVIL ACTION<br>NO. _____<br><br><br>CASE NUMBER  1:06CV00570<br><br>JUDGE: Ellen Segal Huvelle<br><br>DECK TYPE: Contract<br><br>DATE STAMP: 03/28/2006 |

1

**COMPLAINT**

Come now IDAS RESOURCES N.V., CURAÇAO ("IDAS"), PABECO B.V. ("Pabeco") and ADASTRA MINERALS, INC. f/k/a AMERICA MINERAL FIELDS, INC. ("AMI"), Plaintiffs, complaining of EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P. ("ENDIAMA"), and NOFAR MINING B.V. ("NOFAR"), Defendants, and would show the Court as follows:

**PARTIES**

1. Plaintiff IDAS Resources N.V., Curaçao is a Dutch Antilles company with its principal place of business located in the United Kingdom.

2. Plaintiff Pabeco B.V. is a Netherlands company with its principal place of business located in The Netherlands.

3. Plaintiff Adastra Minerals, Inc. f/k/a America Mineral Fields, Inc., is a Yukon Territory, Canada, company with its principal place of business located in the United Kingdom.

4. Defendant EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P. is, upon information and belief, an Angolan company with its principal place of business located in Luanda, Angola. It is believed that ENDIAMA is owned or controlled, directly or indirectly, by the Angolan Government ("the Government"). Pursuant to 28 U.S.C. § 1608(b)(3)(B), ENDIAMA may be served with citation by international registered mail addressed to its President, Dr. Manuel Arnaldo de Sousa Calado at Rua Major Canhangulo, No. 100, Luanda, Angola, postal address Caixa Postal 1247, Luanda, Angola, addressed and mailed by the clerk of this Court.

5. Defendant Nofar Mining B.V. is a company organized under the laws of The Netherlands. The Netherlands is a signatory to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters (20 UST 361, TIAS 6638) and

2

permits service of process by international registered mail. *See http://travel.state.gov/law/ info/judicial/judicial_657.html*. Accordingly, Nofar Mining, B.V. may be served with citation by serving its President at Nofar Mining, B.V., Watermanweg 100, Plaats, 3067 Rotterdam, The Netherlands by international registered mail, return receipt requested

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330(a) and 1605(a)(2)-(3) because ENDIAMA is an instrumentality of a foreign sovereign and:

      a.    this action is based upon an action of ENDIAMA outside the territory of the United States in connection with a commercial activity of ENDIAMA and those actions have caused a direct effect in the United States; and

      b.    this action is based upon rights in property taken in violation of international law, that property is owned or operated by ENDIAMA, and ENDIAMA engaged in a commercial activity in the United States.

7.    This Court has personal jurisdiction over ENDIAMA pursuant to 28 U.S.C. § 1330(b) because this action involves a claim for relief over which the Court has jurisdiction under 28 U.S.C. § 1330(a) and service is being effected under 28 U.S.C. § 1608.

8.    Venue is proper under 28 U.S.C. § 1391(f)(4). Pursuant to this statute, a civil action may be brought in the United States District Court for the District of Columbia if the action is brought against a foreign state or the instrumentality of a foreign state.

9.    Jurisdiction and venue for all other Defendants are founded on 28 U.S.C. §§ 1332(a)(2) and 1391(b)&(d).

## STATEMENT OF FACTS

10.    In 1995, IDAS was granted two licenses for diamond exploration and exploitation in the Luanda Norte and Malange regions of Angola. One was an exploitation license of 3000 sq. km.

and the other was an exploration license of 36,000 sq. km.[1] ENDIAMA, IDAS, and Twins Limited ("Twins") agreed to form a joint venture partnership to develop the licensed areas.

    11.    In May 1996, AMI formed a joint venture with IDAS to develop these license areas by bringing them into production.

    12.    In 1998, AMI moved to Dallas. Thereafter, and while domiciled in Dallas, AMI undertook to acquire IDAS, subject to the agreement of ENDIAMA that such acquisition would not violate the agreement between IDAS and ENDIAMA.[2]

    13.    ENDIAMA advised AMI and IDAS that AMI's acquisition of IDAS was a matter between AMI and IDAS and that as long as AMI and IDAS, performed, ENDIAMA did not object to the acquisition.

    14.    AMI closed the transaction with IDAS and its shareholders, by which IDAS became a wholly owned subsidiary of AMI. Pabeco retained a net profits interest to a maximum of $27,440,000.00.

    15.    In February 1999, AMI moved to London, England.

    16.    Until the cessation of hostilities between the Government and UNITA, following the death of Jonas Savimbi in February 2002, the Cuango river valley, where the concessions were located, was considered an unsafe area, so physical access to the license areas had not been possible.

    17.    In 1999, a meeting was held in Houston, Texas with General Ndalu, the Angolan

---

[1]  From the start, the integrity of these two licenses was challenged by a boundary dispute with SDM, which had rights to the land contiguous with IDAS's properties to the South (i.e. upstream of IDAS's properties). There was an overlap of the coordinates published in the official government gazette, the *Diario Da Republica, orgao oficial da Republica de Angola* ("the Diario").

[2]  Plaintiff Pabeco was a shareholder in IDAS and its shares were part of the shares in IDAS that were to be acquired by AMI.

Ambassador to the United States, and a principal in Twins, in an attempt to resolve the matter of a boundary dispute and IDAS's interests. That same year, the Angolan Government promulgated a new diamond law limiting the maximum diamond concession area for any one company to 3,000 sq. km. Based upon this fact, IDAS and Twins were advised by ENDIAMA that the 1995 and related agreements were no longer effective and new contracts would have to be agreed. IDAS and Twins agreed to terminate the earlier agreements and negotiate new contracts with ENDIAMA.

18.    In November 2000, a Memorandum of Understanding ("MOU") was executed between IDAS and ENDIAMA, which recognized the smaller concession area and provided for the formation of a joint venture amongst IDAS, ENDIAMA, and Twins.

19.    In April 2001, the Government Council of Ministers granted to IDAS and ENDIAMA rights to two new license areas, one an exploitation license of 246 sq. km. and the other an exploration license of 2,690 sq. km., which together approximated the smaller of the two previously held licenses.

20.    On October 5, 2001, the Angolan Government published the concession award to IDAS in the Diario and included in this notice the terms of the MOU signed in November 2000.

21.    In reliance upon the license grants, and in view of official approval of the licenses as evidenced by publication in the Diario, IDAS re-opened its Luanda office in 2002 for the purpose of commencing exploration and exploitation with ENDIAMA and Twins. In August 2002, IDAS, ENDIAMA, and Twins executed a Heads of Agreement finalizing the relative shareholdings and detailing the structure for the reimbursement of shareholder loans. This was very important because IDAS was providing all the development funding for the project.

22.    An additional agreement between IDAS, ENDIAMA, and Twins was executed on

December 4, 2002. The December 4, 2002 agreement detailed the composition of the Board of Directors, the management structure of the joint venture company, the minimum investment to be made by IDAS, and details governing the payment of a signing bonus to ENDIAMA and the repayment of shareholder loans to IDAS. It was specifically agreed that IDAS would have 51% of the project equity until all shareholder loans were repaid and that IDAS would have three Board representatives out of a total of five. ENDIAMA would have 38% and Twins 11%, with each having one director. After capital recoupment, IDAS's shareholding would fall to 49% but IDAS would be able to rely on the voting support of Twins (13%). ENDIAMA's shareholding would remain unchanged.

23.     By early 2003, IDAS had prepared and presented a detailed work plan for the license areas. In July 2003, ENDIAMA informed IDAS that it wished to revise some of the commercial terms of the Heads of Agreement. IDAS agreed to compromise on the issue. In November 2003, after several meetings, IDAS agreed to make concessions concerning the minimum investment and management structure. Following these concessions and in reply to repeated questioning, ENDIAMA confirmed that the deal was complete.

24.     On March 30 and 31, 2004, ENDIAMA proposed that IDAS's shareholding drop from 51% to 43% and that its Board representation reduce from 3 to 1. This was the first time that ENDIAMA had raised these issues since the Heads of Agreement was signed in August 2002.

25.     In mid-2004, IDAS learned that ENDIAMA had, for several months, been negotiating with NOFAR to replace IDAS as ENDIAMA's joint venture partner in the concessions awarded to IDAS. IDAS has since learned that ENDIAMA offered the Luremo concessions to NOFAR and that NOFAR has had its personnel on site. Indeed, IDAS has learned that on May 18, 2004, ENDIAMA

and NOFAR executed a contract to explore and exploit most of the prospecting area previously licensed to the IDAS/ENDIAMA/Twins joint venture.

26. In early July 2004, ENDIAMA informed IDAS that ENDIAMA would not honor its contractual obligations but offered IDAS the opportunity of working on other diamond concessions. IDAS declined to agree to ENDIAMA's unilateral repudiation of the contracts or to discuss other projects and this action followed.

27. The actions of ENDIAMA set forth herein have caused a direct effect in the United States, including a loss of income to the principals in Twins, which, together with IDAS, was ENDIAMA's joint venture partner, as well as losses to the United States shareholders of AMI, IDAS's parent.

## COUNT I- BREACH OF CONTRACT

### (As to ENDIAMA)

28. Plaintiffs incorporate the allegations in paragraphs 1-27 as if fully set forth herein.

29. IDAS and ENDIAMA entered into binding contracts, including those of August and December 2002.

30. In July 2004, ENDIAMA informed IDAS that it would not honor its contractual obligations.

31. ENDIAMA has since failed to honor its contractual obligations with IDAS.

32. As a result of ENDIAMA's failure to honor its contractual obligations, ENDIAMA breached its 2000 - 2004 contracts between the parties and such breaches were a proximate cause of damages to Plaintiffs in an amount in excess of the jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT II- BREACH OF DUTY OF GOOD FAITH

### (As to ENDIAMA)

33.    Plaintiffs incorporate the allegations in paragraphs 1-32 as if fully set forth herein.

34.    During the negotiations with IDAS, ENDIAMA engaged in conduct contrary to the principle of good faith and in violation of Angolan law.

35.    ENDIAMA entered into negotiations with NOFAR during the course of its negotiations with IDAS. The negotiations with NOFAR concerned the areas previously licensed to IDAS.

36.    Despite the intentions of ENDIAMA to enter into an agreement with NOFAR, it continued to conduct negotiations with IDAS.

37.    The bad faith conduct of ENDIAMA and Twins set forth herein was a proximate cause of damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT III- FRAUDULENT MISREPRESENTATION

### (As to ENDIAMA)

38.    Plaintiffs incorporate the allegations in paragraphs 1-37 as if fully set forth herein.

39.    During the negotiations with IDAS, ENDIAMA engaged in fraudulent conduct in violation of applicable Angolan law.

40.    ENDIAMA entered into negotiations with NOFAR during the course of its joint venture agreement with IDAS and Twins, for development of areas already licensed to the ENDIAMA/IDAS/Twins joint venture.

41.    Despite the intentions of ENDIAMA to enter into an agreement with NOFAR, it

8

fraudulently misrepresented to IDAS that it intended to honor their agreements and continue the development of the areas with IDAS. In reliance upon ENDIAMA's representations that a joint venture existed, IDAS re-opened its Angolan office, and expended funds in activities in furtherance of the joint venture.

42.    The fraudulent conduct of ENDIAMA set forth herein was a proximate cause of damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT IV- UNLAWFUL DISCRIMINATION BETWEEN INVESTORS

### (As to ENDIAMA)

43.    Plaintiffs incorporate the allegations in paragraphs 1-42 as if fully set forth herein.

44.    Article 12 of the 2003 Law on the Bases for Private Investment of the Republic of Angola ("Angolan Investment Law") guarantees equality of treatment to foreign investors in Angola.

45.    The Angolan Investment Law also provides that any discrimination between investors is strictly prohibited.

46.    At all relevant times, IDAS was a foreign investor pursuant to Article 1 of the Angolan Investment Law.

47.    ENDIAMA, an instrumentality of Angola, discriminated against IDAS by terminating its contractual relationship with IDAS for the purpose of entering into a contractual relationship with NOFAR.

48.    As a result of such conduct, ENDIAMA violated its obligation under Article 12 of the Angolan Investment Law, and Plaintiffs have suffered damages in amounts in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT V- UNLAWFUL CANCELLATION OF LICENCES

### (As to ENDIAMA)

49.    Plaintiffs incorporate the allegations in paragraphs 1-48 as if fully set forth herein.

50.    Article 15 of the Angolan Investment Law guarantees that licenses shall not be cancelled, without the respective judicial or administrative measures.

51.    In July 2004, ENDIAMA cancelled the licenses previously granted to IDAS in April 2001.

52.    Such cancellation was made without respective judicial or administrative measures as required by the Angolan Investment Law.

53.    As a result of such, ENDIAMA violated its obligation under Article 15 of the Angolan Investment Law and Plaintiffs have suffered damages in amounts in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT VI- TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

### (As to NOFAR)

54.    Plaintiffs incorporate the allegations in paragraphs 1-53 as if fully set forth herein.

55.    IDAS executed several agreements with ENDIAMA and undertook considerable efforts to finalize a work plan for the license areas.

56.    NOFAR knew of the existence of these agreements and of IDAS's efforts to finalize a work plan for the license areas.

57.    NOFAR purposefully intended to interfere, and did interfere, with IDAS's actual and prospective agreements by persuading ENDIAMA to terminate its contractual relationship with IDAS.

58.    The purposeful interference by NOFAR proximately caused ENDIAMA to terminate its contractual relationship with IDAS.

59.    As a result of the conduct of NOFAR, Plaintiffs have suffered damages in amounts in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

## RELIEF REQUESTED

60.    As a result of the unlawful actions of ENDIAMA and NOFAR as set forth above, IDAS has suffered damages in the amount of US$397,000,000. These damages include, but are not limited to, loss of the benefit of the bargain, costs and expenses associated with IDAS's efforts to acquire and develop the licenses, and professional fees, including attorney's and consulting fees, for all of which IDAS prays judgment of the Court.

61.    As a result of the unlawful actions of ENDIAMA as set forth above, Pabeco has suffered damages of US$27,440,000.00, and AMI has suffered damages of US$4,600,000. These damages include, but are not limited to, loss of the benefit of the bargain, AMI's costs and expenses associated both with its acquisition of IDAS and subsequent expenditures in funding the operations of IDAS, and professional fees, including attorney's and consulting fees, for all of which Pabeco and AMI pray judgment of the Court.

62.    Plaintiffs seek recovery of applicable pre- and post-judgment interest.

63.    Plaintiffs would show that the conduct of ENDIAMA and NOFAR as set forth above merits an award of punitive damages for which Plaintiffs seek recovery under applicable law in the amount of $100,000,000.00.

WHEREFORE, premises considered, Plaintiffs pray that ENDIAMA and NOFAR be cited to answer and appear herein and, upon final trial of this action, that the Court award judgment in favor of Plaintiffs, and against Defendants ENDIAMA and NOFAR as prayed for above, together with all other relief to which Plaintiffs may show themselves justly entitled.

Dated: _March 28,_ , 2006        Respectfully submitted,

Steven D. Cundra
D.C. Bar No. 374074
HALL ESTILL HARDWICK GOLDEN
GABLE & NELSON, PC
1120 20th Street, N.W.,
Suite 700, North Building
Washington, D.C. 20036
Tel: (202) 973-1200
Fax: (202) 973-1212


Stephen F. Malouf
Bar No. TX0017
THE LAW OFFICES OF STEPHEN F.
MALOUF, P.C.
3506 Cedar Springs
Dallas, Texas 75219
Tel: (214) 969-7373
Fax: (214) 969-7648

*Attorneys for Plaintiffs IDAS, Pabeco and AMI*

12

AO440 (Rev. DC – Setembro 2003) Citação em Acção Cível

# TRIBUNAL DISTRITAL DOS ESTADOS UNIDOS
### Distrito de Columbia

IDAS RESOURCES N.V., CURAÇÃO
PABECO B.V.; e ADASTRA MINERALS.
INC., f/k/a AMERICA MINERAL FIELDS

**CITAÇÃO EM ACÇÃO CIVEL**

V.

EMPRESA NACIONAL DE DIAMANTES DE
ANGOLA E.P. e NOFAR MINING B.V.

PROCESSO NÚMERO: 1:06-cv-00570

**PARA**: (nome e endereço do Réu)

EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P.
Rua Major Canhangulo
N.º 100
Caixa Postal 1247
Luanda
Angola

**ENCONTRA-SE PELA PRESENTE CITADO** e solicitado a notificar o
ADVOGADO DOS AUTORES (nome e endereço)

Steven D. Cunha
D. C. Bar n. º 374074
HALL ESTILL HARDWICK GOLDEN GABLE & NELSON, PC
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036

da oposição ao pedido apresentado, o qual é junto com a presente citação, no prazo de
_____ 60 _____ a contar da entrega da citação, excluindo o dia da mesma. No caso de não
ser deduzida qualquer oposição naquele prazo, terá lugar o julgamento à revelia pelo pedido de
indemnização formulado na petição inicial. Qualquer oposição notificada às partes da presente
acção deverá ser apresentada junto do Funcionário de Justiça deste Tribunal num período de
tempo razoável a contar da notificação.

_____        _____
Funcionário de Justiça              Data


_____
(Pelo) Representante do Funcionário de Justiça

AO440 (Rev. DC – Setembro 2003) Citação em Acção Cível)

## RETORNO DO SERVIÇO

| A Citação e entrega da Petição inicial foi feita por mim (1) | DATA: |
|---|---|
| NOME DO FUNCIONÁRIO (*LETRA DE IMPRENSA*) | CARGO: |

*Verificar quadro abaixo e assinalar o modo de citação adequado*

**G** Citação pessoal do réu. Local onde a citação ocorreu: _____
_____

**G** Foram deixadas cópias na residência habitual do réu com uma pessoa de idade apropriada, que também aí reside.

Nome da pessoa a quem foi entregue a citação e a petição inicial_____

**G** Devolvida sem ter sido executada: _____
_____

**G** Outra (especificar): _____
_____
_____
_____

### DECLARAÇÃO DE HONORÁRIOS

| Deslocação | Serviços | Total |
|---|---|---|

### DECLARAÇÃO DO FUNCIONÁRIO

Eu declaro, sob pena de cometer perjúrio nos termos da lei dos Estados Unidos da América, que a presente informação contida no Retorno do Serviço e na Declaração de Honorários é verdadeira e correcta.

Executado em _____    _____
Data                              Assinatura do Funcionário


_____
Endereço do Funcionário

(1) Relativamente a que pode efectuar a citação, ver Regra 4 das Regras Federais de Processo Civil.

NO TRIBUNAL DISTRITAL DOS ESTADOS UNIDOS
PARA O DISTRITO DE COLUMBIA

_____

IDAS RESOURCES N.V., CURAÇAO
St. George's House
15 Hanover Square
Londres W1S 1HS
Reino Unido

e

PABECO B.V.
Handelstraat n.º 14
Code 1901 VA
Castricum
Holanda

e

ADASTRA MINERALS, INC.
f/k/a AMERICA MINERAL FIELDS, INC.
St. George's House
15 Hanover Square
Londres W1S 1HS

      Autoras,

contra

EMPRESA NACIONAL DE DIAMENTES DE
ANGOLA E.P.
Rua Major Canhangulo
N.º 100
Luanda Caixa Posta 1247
Angola

e

NOFAR MINING B.V.
Watermanweg 100
3067 GG Roterdão
Holanda

      Rés

_____

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

ACÇÃO CÍVEL

N.º 1:06-cv-00570

## ACÇÃO

Vêm pela presente a IDAS RESOURCES N.V., CURAÇAO ("IDAS"), a PABECO B.V. ("Pabeco") e a ADASTRA MINERALS, INC. f/k/a AMERICA MINERAL FIELDS, INC.("AMI"), Autoras, intentar acção contra a EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P. ("EDIAMA") e a NOFAR MINING B.V. ("NOFAR"), Rés, nos termos e com os fundamentos seguintes:

## PARTES

1.      A Autora IDAS Resources N.V., Curaçao é uma sociedade das Antilhas Neerlandesas, possuindo o seu centro principal de negócios no Reino Unido.

2.      A Autora Pabeco B.V. é uma sociedade Holandesa, possuindo o seu centro principal de negócios na Holanda.

3.      A Autora Adastra Minerals, Inc f/k/a America Mineral Fields, Inc. é uma sociedade do *Yukon Territory*, Canadá, possuindo o seu centro principal de negócios no Reino Unido.

4.      A Ré EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P. é, de acordo com as informações disponíveis, uma sociedade Angolana com o seu centro principal de negócios em Luanda, Angola. Acredita-se que a ENDIAMA é detida ou controlada, directa ou indirectamente, pelo Governo Angolano (o "Governo"). Nos termos do 28 U.S.C. § 1608(b)(3)(B), a ENDIAMA pode ser citada por correio registado internacional endereçado ao seu Presidente, Dr. Manuel Arnaldo de Sousa Calado, na Rua Major Canhangulo, n.º 100, Luanda, Angola, endereço postal Caixa Postal 1247, Luanda, Angola, endereçado e enviado pelo funcionário deste Tribunal.

5.      A Ré Nofar Mining B.V. é uma sociedade constituída nos termos da lei Holandesa. A Holanda é signatária da Convenção de Haia Relativa à Citação e à Notificação no Estrangeiro dos Actos Judiciais e Extrajudiciais em Matéria Civil e

Comercial (20 UST 361, TIAS 6638) e permite que as citações de processos sejam feitas por correio registado internacional. Ver *http://travel.state.gov/law/info/judicial/judicial_657.htlm*. Assim sendo, a Nofar Minig B.V. pode ser citada na pessoa do seu Presidente, em Nofar Minig B.V., Watermanweg 100, Plaats, 3067 GG Roterdão, Holanda, por correio registado internacional com aviso de recepção.

## JURISDIÇÃO E COMPETÊNCIA

6.      O presente Tribunal tem jurisdição material sobre a acção em causa de acordo com o 28 U.S.C. §§ 1330 (a) e 1605 (a)(2)-(3) uma vez que a ENDIAMA é uma empresa pública detida por um Estado soberano estrangeiro e:

     a.   a presente acção baseia-se em actos praticados pela ENDIAMA fora do território dos Estados Unidos relacionados com a actividade comercial da ENDIAMA e esses actos produziram efeitos directos nos Estados Unidos; e

     b.   a presente acção baseia-se em direitos sobre imóveis subtraídos em violação do direito internacional, esses imóveis são detidos ou explorados pela ENDIAMA e a ENDIAMA tem actividade comercial nos Estados Unidos.

7.      Este Tribunal tem jurisdição pessoal sobre a ENDIAMA nos termos do 28 U.S.C. § 1330(b) uma vez que esta acção envolve um pedido de indemnização sobre a qual o Tribunal tem jurisdição nos termos do 28 U.S.C. § 1330 (a) e a citação deverá ser efectuada nos termos do 28 U.S.C.§ 1608.

8.      Tem competência própria nos termos do 28 U.S.C. § 1391 (f)(4). De acordo com esta norma, uma acção cível pode ser intentada no Tribunal Distrital dos

Estados Unidos pelo Distrito de Columbia se a acção for intentada contra um estado estrangeiro ou um organismo de um estado estrangeiro.

    9.    A jurisdição e competência para todas as restantes Rés fundamenta-se no 28 U.S.C. §§ 1332 (a)(2) e 1391 (b)&(d).

## EXPLICAÇÃO DOS FACTOS

    10.    Em 1995, foram atribuídas à IDAS duas licenças para prospecção e exploração de diamantes nas regiões de Norte de Luanda e Malange em Angola. Uma consistia numa licença de prospecção de 3.000km$^2$ e a outra numa licença de exploração de 36.000km$^2$ [1]. A ENDIAMA, a IDAS e a Twins Limited ("Twins") acordaram em constituir uma parceria em *joint venture* para desenvolver as referidas áreas licenciadas.

    11.    Em Maio de 1996, a AMI constituiu uma *joint venture* com a IDAS para desenvolver essas áreas licenciadas por forma a que se iniciasse a respectiva actividade.

    12.    Em 1998, a AMI deslocou-se para Dalas, no Texas. Assim sendo, e enquanto domiciliada em Dalas, a AMI adquiriu a IDAS condicionada ao consentimento da ENDIAMA em que essa aquisição não violaria o acordado entre a IDAS e a ENDIAMA.[2]

    13.    A ENDIAMA informou a AMI e a IDAS que a aquisição pela AMI da IDAS era uma questão entre a AMI e a IDAS e que, desde que a AMI e a IDAS cumprissem, a ENDIAMA não se oporia à aquisição.

    14.    A AMI completou a transacção com a IDAS e os seus accionistas, através da qual a IDAS se transformou numa subsidiária detida totalmente pela AMI. A Pabeco reteve um lucro líquido num máximo de $27.440.000,00.

---

[1] Desde o início, a integridade destas duas licenças foi contestada por uma disputa de fronteiras com a SDM, a qual detinha direitos sobre a propriedade contígua com a propriedade da IDAS a Sul (i.e. acima das propriedades da IDA). Houve uma sobreposição das coordenadas publicadas no jornal oficial do governo, *o Diário da República, órgão oficial da República de Angola* ("o Diário").

[2] A Autora Pabeco era accionista da IDAS e as suas acções eram parte das acções a serem adquiridas pela AMI.

15.  Em Fevereiro de 1999, a AMI deslocou-se para Londres, Inglaterra.

16.  Até à cessação das hostilidades ente o Governo e a UNITA, após a morte de Jonas Savimbi em Fevereiro de 2002, o vale do Rio Cuango, onde as concessões se localizavam, foi considerado uma área pouco segura, pelo que o acesso físico às áreas licenciadas não teria possível.

17.  Em 1999, teve lugar uma reunião em Houston, Texas, com o General Ndalu, o Embaixador Angolano nos Estados Unidos e um director da Twins, numa tentativa de resolver a questão da disputa das fronteiras e dos interesses da IDAS. No mesmo ano, o Governo Angolano promulgou uma nova lei sobre diamantes estabelecendo um novo limite máximo à área de concessão de diamantes por sociedade de 3.000 km$^2$. Baseado neste facto, a IDAS e a Twins foram informados pela ENDIAMA que o acordo de 1995 e os acordos relacionados já não se encontravam em vigor e que teriam de ser celebrados novos contratos. A IDAS e a Twins acordaram em resolver os contratos anteriores e negociar novos contratos com a ENDIAMA.

18.  Em Novembro de 2000 foi celebrado um Acordo de intenções ("MOU") entre a IDAS e a ENDIAMA, o qual reconheceu a área de concessão menor prevendo a constituição de uma *joint venture* entre a IDAS, a ENDIAMA e a Twins.

19.  Em Abril de 2001, o Conselho de Ministros concedeu à IDAS e à ENDIAMA direito a duas novas licenças, uma licença de exploração de 246 km$^2$ e uma licença de exploração de 2,690 km$^2$, as quais, em conjunto, se aproximavam à menor das duas licenças de que eram titulares anteriormente.

20.  A 5 de Outubro de 2001, o Governo Angolano publicou a adjudicação da concessão à IDAS no Diário e incluiu nessa publicação os termos do MOU assinado em Novembro de 2000.

21.     Confiando na concessão das licenças e tendo em conta a aprovação oficial das licenças tal como evidenciado na publicação no Diário, a IDAS reabriu o seu escritório de Luanda em 2002 com o propósito de começar a prospecção e exploração com a ENDIAMA e a Twins. Em Agosto de 2002, a IDAS, a ENDIAMA e a Twins celebraram um Acordo de intenções estabelecendo as participações sociais correspondentes, detalhando a estrutura de reembolso dos suprimentos. Isto foi da maior importância uma vez que a IDAS estava a fornecer todos os fundos para o desenvolvimento do projecto.

22.     Um acordo adicional foi celebrado em 4 de Dezembro de 2002 entre a IDAS a ENDIAMA e a Twins. O contrato de 4 de Dezembro de 2002 detalhou a composição do Conselho de Administração, a estrutura de administração da sociedade em *joint venture*, o investimento mínimo a ser realizado pela IDAS e os pormenores para regular o pagamento de um bónus de celebração para a ENDIAMA e a devolução dos suprimentos à IDA. Ficou especificamente acordado que a IDAS teria 51% do capital do projecto até os suprimentos serem restituídos e que a IDAS nomearia três representantes do Conselho de Administração num total de cinco membros. A ENDIAMA teria 38% e a Twins 11%, cada uma com o direito a nomear um administrador. Após a restituição do capital, a participação da IDAS desceria para 49% mas a IDAS poderia contar com o apoio de votação da Twins (13%). A participação da ENDIAMA permaneceria inalterada.

23.     No início de 2003, a IDAS preparou e apresentou um plano de trabalho detalhado para as áreas das licenças. Em Julho de 2003, a ENDIAMA informou a IDAS que era sua vontade rever alguns dos termos comerciais do Protocolo de Entendimento. A IDAS concordou em comprometer-se na matéria. Em Novembro de 2003, depois de

várias reuniões, a IDAS concordou em fazer concessões relativamente ao investimento mínimo e à estrutura de administração.

24.     Após estas concessões e em resposta ao repetido pedido de esclarecimento, a ENDIAMA confirmou que a negociação estava terminada. A 30 e 31 de Março de 2004, a ENDIAMA propôs que a participação social da IDAS descesse de 51% para 43% e que a sua representação no Conselho de Administração descesse de 3 membros para 1 membro. Esta era a primeira vez que a ENDIAMA tinha levantado estas questões desde que o Protocolo de Entendimento foi assinado em Agosto de 2002.

25.     Em meados de 2004, a IDAS teve conhecimento que a ENDAMA manteve, por vários meses, negociações com a NOFAR para substituir a IDAS enquanto parceira da *joint venture* da ENDIAMA na concessão acordada com a IDAS. A IDAS teve ainda conhecimento que a ENDIAMA ofereceu a concessão do Luremo à NOFAR e que a NOFAR teve o seu pessoal no local. De facto, a IDAS teve conhecimento que a 18 de Maio de 2004, a ENDIAMA e a NOFAR celebraram um contrato de prospecção e exploração da maioria da área de prospecção anteriormente licenciada à *joint venture* IDAS/ENDIAMA/Twins.

26.     No início de Julho de 2004, a ENDIAMA informou a IDAS que a ENDIAMA não iria cumprir com as suas obrigações contratuais mas ofereceu à IDAS a oportunidade de trabalhar em outras concessões de diamantes. A IDAS declinou o repúdio unilateral da ENDIAMA dos contratos bem como a discussão de outros projectos pelo que a presente acção foi intentada.

27.     A actuação da ENDIAMA tal como ora descrita produziu efeitos directos nos Estados Unidos, incluindo a perda de lucro do director da Twins, a qual, juntamente com a IDAS, era parceira na *joint venture* com a ENDIAMA, bem como perdas para os accionistas dos Estados Unidos da AMI, empresa mãe da IDAS.

## CAUSA DE PEDIR I – INCUMPRIMENTO DO CONTRATO

### (Relativamente à ENDIAMA)

28.    As Autoras assumem as alegações feitas nos pontos 1 a 34 como aqui integralmente reproduzidas.

29.    A IDAS e a ENDIAMA celebraram contratos vinculativos, incluindo os celebrados em Agosto e Dezembro de 2002.

30.    Em Julho de 2004, a ENDIAMA informou a IDAS que não iria cumprir com as suas obrigações contratuais.

31.    A ENDIAMA desde então não cumpriu as obrigações contratuais que assumiu relativamente à IDAS.

32.    Em consequência do não cumprimento das obrigações contratuais pela ENDIAMA, a ENDIAMA violou os contratos existentes entre as partes celebrados em 2000-2004 e essas violações foram causa próxima dos danos sofridos pelos Autores em montante superior aos limite mínimo de competência deste Tribunal ao qual as Autoras solicitam julgamento.

## CAUSA DE PEDIR II – VIOLAÇÃO DO DEVER DE BOA FÉ

### (Relativamente à ENDIAMA)

33.    As Autoras assumem as alegações feitas nos pontos 1 a 32 como aqui integralmente reproduzidas.

34.    Durante as negociações com a IDAS, a ENDIAMA teve uma conduta contrária aos princípios da boa fé, violando a lei Angolana aplicável.

35.    A ENDIAMA entrou em negociações com a NOFAR durante o período de negociação com a IDAS. As negociações com a NOFAR diziam respeito a áreas anteriormente licenciadas à IDAS.

36.    Não obstante as intenções da ENDIAMA em celebrar um contrato com a NOFAR, aquela manteve as negociações com a IDAS.

37.    A conduta de má fé da ENDIAMA ora alegada foi causa próxima dos danos sofridos pelas Autoras em montante superior ao limite mínimo de competência deste Tribunal ao qual as Autoras solicitaram julgamento.


## CAUSA DE PEDIR III – DECLARAÇÕES FRAUDULENTAS
### (Relativamente à ENDIAMA)

38.    As Autoras assumem as alegações feitas nos pontos 1 a 37 como aqui integralmente reproduzidas.

39.    Durante as negociações com a IDAS, a ENDIAMA teve uma conduta fraudulenta violando a lei Angolana aplicável.

40.    A ENDIAMA entrou em negociações com a NOFAR durante o período de contrato de *joint venture* celebrado com a IDAS e a Twins, para desenvolvimento das áreas já licenciadas à *joint venture* IDAS/ENDIAMA/Twins.

41.    Não obstante a intenção da ENDIAMA em celebrar um contrato com a NOFAR, aquela declarou de forma fraudulenta à IDAS que tinha intenção de cumprir os contratos celebrados e continuar a desenvolver as áreas com a IDAS. Com fundamento nas declarações da ENDIAMA de que a *joint venture* existia, a IDAS reabriu o escritório em Angola e despendeu fundos no desenvolvimento da *joint venture*.

42.    A conduta fraudulenta da ENDIAMA ora alegada foi causa próxima dos danos sofridos pelas Autoras num montante superior ao limite mínimo de competência deste Tribunal ao qual as Autoras solicitaram julgamento.

## CAUSA DE PEDIR IV – DISCRIMINAÇÃO ILEGAL ENTRE INVESTIDORES

### (Relativamente à ENDIAMA)

43.    As Autoras assumem as alegações feitas nos pontos 1 a 40 como aqui integralmente reproduzidas.

44.    O artigo 12 da Lei de Bases para o Investimento Privado na República de Angola de 2003 ("Lei Angolana para o Investimento") garante a igualdade de tratamento dos investidores estrangeiros em Angola.

45.    A Lei Angolana para o Investimento prevê ainda que qualquer discriminação entre investidores é estritamente proibida.

46.    Para todos os efeitos relevantes, a IDAS era um investidor estrangeiro nos termos do Artigo 1 da Lei Angolana para o Investimento.

47.    A ENDIAMA, empresa pública Angolana, discriminou a IDAS ao resolver as suas relações contratuais com a IDAS com o propósito de iniciar uma relação contratual com a NOFAR.

48.    Em resultado dessa conduta, a ENDIAMA violou as suas obrigações nos termos do Artigo 12 da Lei Angolana para o Investimento e as Autoras sofreram danos em montante superior ao limite mínimo de competência deste Tribunal ao qual as Autoras solicitaram julgamento.

## CAUSA DE PEDIR V – CANCELAMENTO ILEGAL DE LICENÇAS

### (Relativamente à ENDIAMA)

49.    As Autoras assumem as alegações feitas nos pontos 1 a 34 como aqui integralmente reproduzidas.

50.    O artigo 15 da Lei Angolana para Investimento garante que uma licença não pode ser cancelada sem o respectivo procedimento judicial ou administrativo.

51.    Em Julho de 2004, a ENDIAMA cancelou unilateralmente as licenças anteriormente atribuídas à IDAS em Abril de 2001.

52.    Esse cancelamento foi feito sem o respectivo procedimento judicial ou administrativo, tal como exigido pela Lei Angolana para o Investimento.

53.    Em resultado disso, a ENDIAMA violou as suas obrigações nos termos do Artigo 15 da Lei do Investimento Privado Angolana e as Autoras sofreram danos em montantes superiores ao limite mínimo de competência deste Tribunal ao qual as Autoras solicitaram julgamento.


## CAUSA DE PEDIR VI – INTERFERÊNCIA DANOSA NAS RELAÇÕES CONTRATUAIS

### (Relativamente à NOFAR)


54.    As Autoras assumem as alegações feitas nos pontos 1 a 34 como aqui integralmente reproduzidas.

55.    A IDAS celebrou diversos acordos com a ENDIAMA e empreendeu esforços consideráveis para finalizar um plano de trabalhos para as áreas licenciadas.

56.    A NOFAR tinha conhecimento da existência desses contratos e dos esforços da IDAS em desenvolver as áreas licenciadas.

57.    A NOFAR teve a intenção de interferir, e interferiu, nos acordos actuais e perspectivados, persuadindo a ENDIAMA a resolver as suas relações contratuais com a IDAS.

58.    A interferência propositada da NOFAR foi causa próxima da resolução da relação contratual da ENDIAMA com a IDAS.

59.    Em resultado da conduta da NOFAR, as Autoras sofreram danos em montantes superiores ao limite mínimo de competência deste Tribunal, ao qual as Autoras solicitaram julgamento.

## INDEMNIZAÇÃO REQUERIDA

60.    Em resultado dos comportamentos ilegais da ENDIAMA e da NOFAR tal como anteriormente descritos, a IDAS sofreu danos no montante de US$397.000.000. Estes danos incluem, mas não estão limitados a, perdas de benefícios do negócio (lucros cessantes), custos e despesas associadas aos esforços da IDAS em adquirir e desenvolver as licenças, e honorários profissionais, incluindo honorários de advogados e consultores, pelos quais a IDAS solicita julgamento ao Tribunal.

61.    Em resultado dos comportamentos ilegais da ENDIAMA tal como anteriormente descritos, a Pabeco sofreu danos no montante de US$27.440.000,00 e a AMI sofreu danos no montante de US$4.600.000. Este danos incluem, mas não estão limitados a, perdas de benefícios do negócio (lucros cessantes), custos e despesas da AMI associadas tanto com a aquisição da IDAS como com despesas subsequentes com o financiamento da exploração da IDAS, honorários profissionais, incluindo honorários de advogados e consultores, pelos quais a Pabeco solicita julgamento ao Tribunal.

62.    As Autoras pretendem recuperar juros vencidos e vincendos.

63.    As Autoras demonstrarão que a conduta da ENDIAMA e da NOFAR tal como acima demonstrado, justifica que seja arbitrada uma indemnização com carácter punitivo no montante de $ 100.000.000,00 a qual as Autoras requerem em conformidade com a lei aplicável.

PELO QUE, considerado o acima exposto, as Autoras requerem que a ENDIAMA e a NOFAR sejam citadas para contestar e comparecer perante este Tribunal, na audiência final de julgamento da presente acção, que o Tribunal julgue a favor das Autoras e condene a ENDIAMA e a NOFAR a pagar o requerido, juntamente com quaisquer outras compensações que as Autoras venham a demonstrar que têm direito.

Data: MARÇO 28 2006          Requer respeitosamente,

Steven D. Cundra
D. C. Bar n.º 374074
HALL    ESTILL    HARDWICK
GOLDEN GABEN & NELSON, PC
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
Tel: (202) 973-1200
Fax: (200) 973-1212


Stephen F. Malouf
D.C. Bar No. TX0017
**THE    LAW    OFFICES    OF
STEPHEN F. MALOUF, P.C.**
3811 Turtle Creek Blvd.
Suite 1600
Dallas, Texas 75219
Tel: (214) 969-7373
Fax: (214) 969-7648


Advogados dos Autores IDAS, Pabeco e AMI