# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Idas Resources N.V., Curacao et al

_____
Plaintiff(s)

vs.                                                                                    Civil Action No.: 1:06-cv-00570

Empresa Nacional de Diamantes de Angola E.P. et al

_____
Defendant(s)


## AFFIDAVIT REQUESTING FOREIGN MAILING

I, the undersigned, counsel of record for plaintiff(s), hereby request that the Clerk mail a copy of the summons and complaint (and notice of suit, where applicable) to (list name(s) and address(es) of defendants):

Nofar Mining B.V.
Watermanweg 100
Plaats
3067 GG Rotterdam
The Netherlands


by: (check one)      ☑    registered mail, return receipt requested
                     ☐    DHL

pursuant to the provisions of: (check one)
                     ☑    FRCP 4(f)(2)(C)(ii)
                     ☐    28 U.S.C. § 1608(a)(3)
                     ☐    28 U.S.C. § 1608(b)(3)(B)


I certify that this method of service is authorized by the domestic law of (name of country):
The Netherlands_____, and that I obtained ~~this~~ information by contacting the Overseas Citizens Services, U.S. Department of State.

_____
(Signature)

Steven D. Cundra, D.C. Bar No. 374074
Hall Estill Hardwick Golden Gable & Nelson, PC
1120 20th Street, N.W.,
Suite 700, North Building
Washington, D.C. 20036
Tel: (202) 973-1200
Fax: (202) 973-1212

(Name and Address)

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

IDAS RESOURCES N.V., CURAÇAO;
PABECO B.V.; and ADASTRA MINERALS,
INC., f/k/a AMERICA MINERAL FIELDS

**SUMMONS IN A CIVIL CASE**

V.

EMPRESA NACIONAL DE DIAMANTES DE
ANGOLA E.P. and NOFAR MINING B.V.

CASE NUMBER: 1:06-cv-00570

TO: (Name and address of Defendant)

NOFAR MINING B.V.
Watermanweg 100
3067 GG Rotterdam
The Netherlands

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Steven D. Cundra
D.C. Bar No. 374074
HALL ESTILL HARDWICK GOLDEN GABLE & NELSON, PC
1120 20th Street, N.W.,
Suite 700, North Building
Washington, D.C. 20036

an answer to the complaint which is served on you with this summons, within ____20____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE

(By) DEPUTY CLERK

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me⁽¹⁾ | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

G  Served personally upon the defendant. Place where served: _____

_____

G  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left: _____

G  Returned unexecuted: _____

_____

G  Other (specify): _____

_____

**STATEMENT OF SERVICE FEES**

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                  Date                          *Signature of Server*

                                _____
                                            *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

FILED

MAR 28 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IDAS RESOURCES N.V., CURAÇAO<br>St. George's House<br>15 Hanover Square<br>London W1S 1HS<br>United Kingdom<br><br>PABECO B.V.<br>Handelstraat nr. 14<br>Code 1901 VA<br>Castricum<br>The Netherlands<br><br>ADASTRA MINERALS, INC.<br>f/k/a AMERICA MINERAL FIELDS, INC.<br>St. George's Street House<br>15 Hanover Square<br>London W1S 1HS<br>United Kingdom;<br><br>     Plaintiffs,<br><br>v.<br><br>EMPRESA NACIONAL DE DIAMANTES<br>DE ANGOLA E.P.<br>Rua Major Canhangulo<br>No. 100<br>Luanda Caixa Postal 1247<br>Angola<br><br>NOFAR MINING B.V.<br>Watermanweg 100<br>3067 GG Rotterdam<br>The Netherlands<br><br>     Defendants. | CIVIL ACTION<br>NO. _____<br><br><br><br><br>CASE NUMBER 1:06CV00570<br><br>JUDGE: Ellen Segal Huvelle<br><br>DECK TYPE: Contract<br><br>DATE STAMP: 03/28/2006 |

1

## COMPLAINT

Come now IDAS RESOURCES N.V., CURAÇAO ("IDAS"), PABECO B.V. ("Pabeco") and ADASTRA MINERALS, INC. f/k/a AMERICA MINERAL FIELDS, INC. ("AMI"), Plaintiffs, complaining of EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P. ("ENDIAMA"), and NOFAR MINING B.V. ("NOFAR"), Defendants, and would show the Court as follows:

## PARTIES

1. Plaintiff IDAS Resources N.V., Curaçao is a Dutch Antilles company with its principal place of business located in the United Kingdom.

2. Plaintiff Pabeco B.V. is a Netherlands company with its principal place of business located in The Netherlands.

3. Plaintiff Adastra Minerals, Inc. f/k/a America Mineral Fields, Inc., is a Yukon Territory, Canada, company with its principal place of business located in the United Kingdom.

4. Defendant EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P. is, upon information and belief, an Angolan company with its principal place of business located in Luanda, Angola. It is believed that ENDIAMA is owned or controlled, directly or indirectly, by the Angolan Government ("the Government"). Pursuant to 28 U.S.C. § 1608(b)(3)(B), ENDIAMA may be served with citation by international registered mail addressed to its President, Dr. Manuel Arnaldo de Sousa Calado at Rua Major Canhangulo, No. 100, Luanda, Angola, postal address Caixa Postal 1247, Luanda, Angola, addressed and mailed by the clerk of this Court.

5. Defendant Nofar Mining B.V. is a company organized under the laws of The Netherlands. The Netherlands is a signatory to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters (20 UST 361, TIAS 6638) and

2

permits service of process by international registered mail. *See http://travel.state.gov/law/ info/judicial/judicial_657.html.* Accordingly, Nofar Mining, B.V. may be served with citation by serving its President at Nofar Mining, B.V., Watermanweg 100, Plaats, 3067 Rotterdam, The Netherlands by international registered mail, return receipt requested

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330(a) and 1605(a)(2)-(3) because ENDIAMA is an instrumentality of a foreign sovereign and:

 a. this action is based upon an action of ENDIAMA outside the territory of the United States in connection with a commercial activity of ENDIAMA and those actions have caused a direct effect in the United States; and

 b. this action is based upon rights in property taken in violation of international law, that property is owned or operated by ENDIAMA, and ENDIAMA engaged in a commercial activity in the United States.

7. This Court has personal jurisdiction over ENDIAMA pursuant to 28 U.S.C. § 1330(b) because this action involves a claim for relief over which the Court has jurisdiction under 28 U.S.C. § 1330(a) and service is being effected under 28 U.S.C. § 1608.

8. Venue is proper under 28 U.S.C. § 1391(f)(4). Pursuant to this statute, a civil action may be brought in the United States District Court for the District of Columbia if the action is brought against a foreign state or the instrumentality of a foreign state.

9. Jurisdiction and venue for all other Defendants are founded on 28 U.S.C. §§ 1332(a)(2) and 1391(b)&(d).

## STATEMENT OF FACTS

10. In 1995, IDAS was granted two licenses for diamond exploration and exploitation in the Luanda Norte and Malange regions of Angola. One was an exploitation license of 3000 sq. km.

3

and the other was an exploration license of 36,000 sq. km.[1] ENDIAMA, IDAS, and Twins Limited ("Twins") agreed to form a joint venture partnership to develop the licensed areas.

11.  In May 1996, AMI formed a joint venture with IDAS to develop these license areas by bringing them into production.

12.  In 1998, AMI moved to Dallas. Thereafter, and while domiciled in Dallas, AMI undertook to acquire IDAS, subject to the agreement of ENDIAMA that such acquisition would not violate the agreement between IDAS and ENDIAMA.[2]

13.  ENDIAMA advised AMI and IDAS that AMI's acquisition of IDAS was a matter between AMI and IDAS and that as long as AMI and IDAS, performed, ENDIAMA did not object to the acquisition.

14.  AMI closed the transaction with IDAS and its shareholders, by which IDAS became a wholly owned subsidiary of AMI. Pabeco retained a net profits interest to a maximum of $27,440,000.00.

15.  In February 1999, AMI moved to London, England.

16.  Until the cessation of hostilities between the Government and UNITA, following the death of Jonas Savimbi in February 2002, the Cuango river valley, where the concessions were located, was considered an unsafe area, so physical access to the license areas had not been possible.

17.  In 1999, a meeting was held in Houston, Texas with General Ndalu, the Angolan

---

[1] From the start, the integrity of these two licenses was challenged by a boundary dispute with SDM, which had rights to the land contiguous with IDAS's properties to the South (i.e. upstream of IDAS's properties). There was an overlap of the coordinates published in the official government gazette, the *Diario Da Republica, orgao oficial da Republica de Angola* ("the Diario").

[2] Plaintiff Pabeco was a shareholder in IDAS and its shares were part of the shares in IDAS that were to be acquired by AMI.

4

Ambassador to the United States, and a principal in Twins, in an attempt to resolve the matter of a boundary dispute and IDAS's interests. That same year, the Angolan Government promulgated a new diamond law limiting the maximum diamond concession area for any one company to 3,000 sq. km. Based upon this fact, IDAS and Twins were advised by ENDIAMA that the 1995 and related agreements were no longer effective and new contracts would have to be agreed. IDAS and Twins agreed to terminate the earlier agreements and negotiate new contracts with ENDIAMA.

18. In November 2000, a Memorandum of Understanding ("MOU") was executed between IDAS and ENDIAMA, which recognized the smaller concession area and provided for the formation of a joint venture amongst IDAS, ENDIAMA, and Twins.

19. In April 2001, the Government Council of Ministers granted to IDAS and ENDIAMA rights to two new license areas, one an exploitation license of 246 sq. km. and the other an exploration license of 2,690 sq. km., which together approximated the smaller of the two previously held licenses.

20. On October 5, 2001, the Angolan Government published the concession award to IDAS in the Diario and included in this notice the terms of the MOU signed in November 2000.

21. In reliance upon the license grants, and in view of official approval of the licenses as evidenced by publication in the Diario, IDAS re-opened its Luanda office in 2002 for the purpose of commencing exploration and exploitation with ENDIAMA and Twins. In August 2002, IDAS, ENDIAMA, and Twins executed a Heads of Agreement finalizing the relative shareholdings and detailing the structure for the reimbursement of shareholder loans. This was very important because IDAS was providing all the development funding for the project.

22. An additional agreement between IDAS, ENDIAMA, and Twins was executed on

5

December 4, 2002. The December 4, 2002 agreement detailed the composition of the Board of Directors, the management structure of the joint venture company, the minimum investment to be made by IDAS, and details governing the payment of a signing bonus to ENDIAMA and the repayment of shareholder loans to IDAS. It was specifically agreed that IDAS would have 51% of the project equity until all shareholder loans were repaid and that IDAS would have three Board representatives out of a total of five. ENDIAMA would have 38% and Twins 11%, with each having one director. After capital recoupment, IDAS's shareholding would fall to 49% but IDAS would be able to rely on the voting support of Twins (13%). ENDIAMA's shareholding would remain unchanged.

23.    By early 2003, IDAS had prepared and presented a detailed work plan for the license areas. In July 2003, ENDIAMA informed IDAS that it wished to revise some of the commercial terms of the Heads of Agreement. IDAS agreed to compromise on the issue. In November 2003, after several meetings, IDAS agreed to make concessions concerning the minimum investment and management structure. Following these concessions and in reply to repeated questioning, ENDIAMA confirmed that the deal was complete.

24.    On March 30 and 31, 2004, ENDIAMA proposed that IDAS's shareholding drop from 51% to 43% and that its Board representation reduce from 3 to 1. This was the first time that ENDIAMA had raised these issues since the Heads of Agreement was signed in August 2002.

25.    In mid-2004, IDAS learned that ENDIAMA had, for several months, been negotiating with NOFAR to replace IDAS as ENDIAMA's joint venture partner in the concessions awarded to IDAS. IDAS has since learned that ENDIAMA offered the Luremo concessions to NOFAR and that NOFAR has had its personnel on site. Indeed, IDAS has learned that on May 18, 2004, ENDIAMA

and NOFAR executed a contract to explore and exploit most of the prospecting area previously licensed to the IDAS/ENDIAMA/Twins joint venture.

26. In early July 2004, ENDIAMA informed IDAS that ENDIAMA would not honor its contractual obligations but offered IDAS the opportunity of working on other diamond concessions. IDAS declined to agree to ENDIAMA's unilateral repudiation of the contracts or to discuss other projects and this action followed.

27. The actions of ENDIAMA set forth herein have caused a direct effect in the United States, including a loss of income to the principals in Twins, which, together with IDAS, was ENDIAMA's joint venture partner, as well as losses to the United States shareholders of AMI, IDAS's parent.

## COUNT I- BREACH OF CONTRACT

### (As to ENDIAMA)

28. Plaintiffs incorporate the allegations in paragraphs 1-27 as if fully set forth herein.

29. IDAS and ENDIAMA entered into binding contracts, including those of August and December 2002.

30. In July 2004, ENDIAMA informed IDAS that it would not honor its contractual obligations.

31. ENDIAMA has since failed to honor its contractual obligations with IDAS.

32. As a result of ENDIAMA's failure to honor its contractual obligations, ENDIAMA breached its 2000 - 2004 contracts between the parties and such breaches were a proximate cause of damages to Plaintiffs in an amount in excess of the jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT II- BREACH OF DUTY OF GOOD FAITH

### (As to ENDIAMA)

33. Plaintiffs incorporate the allegations in paragraphs 1-32 as if fully set forth herein.

34. During the negotiations with IDAS, ENDIAMA engaged in conduct contrary to the principle of good faith and in violation of Angolan law.

35. ENDIAMA entered into negotiations with NOFAR during the course of its negotiations with IDAS. The negotiations with NOFAR concerned the areas previously licensed to IDAS.

36. Despite the intentions of ENDIAMA to enter into an agreement with NOFAR, it continued to conduct negotiations with IDAS.

37. The bad faith conduct of ENDIAMA and Twins set forth herein was a proximate cause of damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT III- FRAUDULENT MISREPRESENTATION

### (As to ENDIAMA)

38. Plaintiffs incorporate the allegations in paragraphs 1-37 as if fully set forth herein.

39. During the negotiations with IDAS, ENDIAMA engaged in fraudulent conduct in violation of applicable Angolan law.

40. ENDIAMA entered into negotiations with NOFAR during the course of its joint venture agreement with IDAS and Twins, for development of areas already licensed to the ENDIAMA/IDAS/Twins joint venture.

41. Despite the intentions of ENDIAMA to enter into an agreement with NOFAR, it

8

fraudulently misrepresented to IDAS that it intended to honor their agreements and continue the development of the areas with IDAS. In reliance upon ENDIAMA's representations that a joint venture existed, IDAS re-opened its Angolan office, and expended funds in activities in furtherance of the joint venture.

42. The fraudulent conduct of ENDIAMA set forth herein was a proximate cause of damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT IV- UNLAWFUL DISCRIMINATION BETWEEN INVESTORS

### (As to ENDIAMA)

43. Plaintiffs incorporate the allegations in paragraphs 1-42 as if fully set forth herein.

44. Article 12 of the 2003 Law on the Bases for Private Investment of the Republic of Angola ("Angolan Investment Law") guarantees equality of treatment to foreign investors in Angola.

45. The Angolan Investment Law also provides that any discrimination between investors is strictly prohibited.

46. At all relevant times, IDAS was a foreign investor pursuant to Article 1 of the Angolan Investment Law.

47. ENDIAMA, an instrumentality of Angola, discriminated against IDAS by terminating its contractual relationship with IDAS for the purpose of entering into a contractual relationship with NOFAR.

48. As a result of such conduct, ENDIAMA violated its obligation under Article 12 of the Angolan Investment Law, and Plaintiffs have suffered damages in amounts in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

9

## COUNT V- UNLAWFUL CANCELLATION OF LICENCES

### (As to ENDIAMA)

49. Plaintiffs incorporate the allegations in paragraphs 1-48 as if fully set forth herein.

50. Article 15 of the Angolan Investment Law guarantees that licenses shall not be cancelled, without the respective judicial or administrative measures.

51. In July 2004, ENDIAMA cancelled the licenses previously granted to IDAS in April 2001.

52. Such cancellation was made without respective judicial or administrative measures as required by the Angolan Investment Law.

53. As a result of such, ENDIAMA violated its obligation under Article 15 of the Angolan Investment Law and Plaintiffs have suffered damages in amounts in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

## COUNT VI- TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

### (As to NOFAR)

54. Plaintiffs incorporate the allegations in paragraphs 1-53 as if fully set forth herein.

55. IDAS executed several agreements with ENDIAMA and undertook considerable efforts to finalize a work plan for the license areas.

56. NOFAR knew of the existence of these agreements and of IDAS's efforts to finalize a work plan for the license areas.

57. NOFAR purposefully intended to interfere, and did interfere, with IDAS's actual and prospective agreements by persuading ENDIAMA to terminate its contractual relationship with IDAS.

10

58. The purposeful interference by NOFAR proximately caused ENDIAMA to terminate its contractual relationship with IDAS.

59. As a result of the conduct of NOFAR, Plaintiffs have suffered damages in amounts in excess of the minimum jurisdictional limits of this Court for which Plaintiffs pray judgment.

### RELIEF REQUESTED

60. As a result of the unlawful actions of ENDIAMA and NOFAR as set forth above, IDAS has suffered damages in the amount of US$397,000,000. These damages include, but are not limited to, loss of the benefit of the bargain, costs and expenses associated with IDAS's efforts to acquire and develop the licenses, and professional fees, including attorney's and consulting fees, for all of which IDAS prays judgment of the Court.

61. As a result of the unlawful actions of ENDIAMA as set forth above, Pabeco has suffered damages of US$27,440,000.00, and AMI has suffered damages of US$4,600,000. These damages include, but are not limited to, loss of the benefit of the bargain, AMI's costs and expenses associated both with its acquisition of IDAS and subsequent expenditures in funding the operations of IDAS, and professional fees, including attorney's and consulting fees, for all of which Pabeco and AMI pray judgment of the Court.

62. Plaintiffs seek recovery of applicable pre- and post-judgment interest.

63. Plaintiffs would show that the conduct of ENDIAMA and NOFAR as set forth above merits an award of punitive damages for which Plaintiffs seek recovery under applicable law in the amount of $100,000,000.00.

WHEREFORE, premises considered, Plaintiffs pray that ENDIAMA and NOFAR be cited to answer and appear herein and, upon final trial of this action, that the Court award judgment in favor of Plaintiffs, and against Defendants ENDIAMA and NOFAR as prayed for above, together with all other relief to which Plaintiffs may show themselves justly entitled.

Dated: March 28, 2006

Respectfully submitted,

*signature*

Steven D. Cundra
D.C. Bar No. 374074
HALL ESTILL HARDWICK GOLDEN
GABLE & NELSON, PC
1120 20th Street, N.W.,
Suite 700, North Building
Washington, D.C. 20036
Tel: (202) 973-1200
Fax: (202) 973-1212


Stephen F. Malouf
Bar No. TX0017
THE LAW OFFICES OF STEPHEN F.
MALOUF, P.C.
3506 Cedar Springs
Dallas, Texas 75219
Tel: (214) 969-7373
Fax: (214) 969-7648

*Attorneys for Plaintiffs IDAS, Pabeco and AMI*