IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IDAS RESOURCES N.V., CURAÇAO ) | |
| ) | |
| PABECO B.V. ) | |
| ) | |
| ADASTRA MINERALS, INC. ) | |
| f/k/a AMERICA MINERAL FIELDS, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:06-cv-00570-ESH |
| ) | |
| EMPRESA NACIONAL DE DIAMANTES ) | |
| DE ANGOLA E.P. ) | |
| ) | |
| NOFAR MINING B.V. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P.'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

Defendant, Empresa Nacional de Diamantes de Angola E.P. ("ENDIAMA"), by undersigned counsel, respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss, and states as follows:

**I.      INTRODUCTION**

Plaintiffs, IDAS Resources N.V. Curacao ("IDAS"), Pabeco B.V., and Adastra Minerals Inc. ("AMI"), filed their Complaint against ENDIAMA and NOFAR Mining B.V. ("NOFAR") on March 28, 2006. Plaintiffs allege numerous causes of action against ENDIAMA, such as breach of contract, breach of duty of good faith, fraudulent misrepresentation, unlawful discrimination between investors, and unlawful cancellation of licenses. See Complaint, Counts I-V, respectively. Plaintiffs allege that NOFAR tortiously interfered with those contracts.

Plaintiffs' lawsuit involves contracts between Plaintiffs and ENDIAMA for prospecting and exploring part of the Luanda Norte Province in Angola. Plaintiffs describe the formation of these contracts and agreements with ENDIAMA in their Complaint, but allege no event or other act performed in the United States or having a direct effect here. There is no allegation or showing that ENDIAMA had any connection with the United States or that the contractual agreements or alleged interferences have any relation to the United States whatsoever. Plaintiffs cannot show that any rights to property were taken in violation of international law and that ENDIAMA engaged in a commercial activity in the United States. Plaintiffs have failed to demonstrate that ENDIAMA performed any act or commercial activity in the United States or any activity that had a direct effect in the United States.

Accordingly, the Plaintiffs' claims against ENDIAMA must be dismissed for a lack of subject matter jurisdiction.

## II.   ARGUMENT

### A.   This Court Lacks Subject Matter Jurisdiction under the FSIA

The Foreign Sovereignties Immunities Act ("FSIA") constitutes the sole basis for courts of the United States to exercise jurisdiction over foreign sovereigns, their agents and instrumentalities. Argentine Republic v. Weltover, Inc., 504 U.S. 607, 610-11 (1992). The general rule under the FSIA is that a "foreign state shall be immune" from the jurisdiction of the United States Courts. See 28 U.S.C. § 1604. Under the FSIA, 28 U.S.C.S. § 1603(a), a "foreign state" includes a political subdivision of a foreign state or instrumentality of a foreign state. 28 U.S.C.S. § 1603(a). 28 U.S.C.S. § 1603(b) defines the terms "agency" and "instrumentality" as meaning any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is

an organ of a foreign state or a majority of whose shares or other ownership interest is owned by a foreign state. 28 U.S.C.S. § 1603(b).

In the Complaint, Plaintiffs aver that subject matter jurisdiction exists over ENDIAMA because ENDIAMA is a foreign sovereign. See Complaint at 6. There is no question that ENDIAMA is an instrumentality of the Republic of Angola, as it is a separate legal corporation that is wholly owned and created by the Republic of Angola and has its principal place of business in Luanda, Angola. See Affidavit of Manuel Arnaldo de Sousa Calado, President of ENDIAMA's Board of Directors, and English translation attached herein as Exhibit A, ¶¶ 1, 2, 3, 4; 28 U.S.C. § 1603(a) and (b).

ENDIAMA was established in 1987 after Angola won its independence from Portugal, and was given control over Angola's diamond mineral-rights and mining, empowered to issue exploration licenses and enter into joint ventures with foreign mining and investment companies. See Exhibit A, ¶ 6. All of the licenses that ENDIAMA grants must be approved by the Angolan government which is separate and distinct from ENDIAMA; those licenses are subject to the laws of Angola. See Exhibit A, ¶ 7. The contracts entered into between ENDIAMA and IDAS ("IDAS Agreement") involved prospecting and exploration only in Angola. See Exhibit A, ¶ 8.

Subject matter jurisdiction in any action in the United States District Courts depends on whether one of the specified exceptions to foreign sovereign immunity exists. See 28 U.S.C. § 1605. Therefore, the only question for the Court is whether any of these specified exceptions apply in the instant case.

In asserting subject matter jurisdiction over the claims against ENDIAMA in the Complaint, Plaintiffs allege that "(a) this action is based upon an action of ENDIAMA outside the territory of the United States in connection with a commercial activity of ENDIAMA and

3

those actions have caused a direct effect in the United States; and (b) this action is based upon rights in property taken in violation of international law, that property is owned or operated by ENDIAMA, and ENDIAMA engaged in a commercial activity in the United States." See Complaint at ¶6(a)(b).[1]

Plaintiffs attempt to assert jurisdiction based upon the "direct effect," "commercial activity" and expropriation of property rights exceptions in Section 28 U.S.C. § 1605(a)(2)-(3). See Complaint at ¶ 6. As discussed below, none of these exceptions apply.

### 1. ENDIAMA's actions have caused no direct effect in the United States

Since ENDIAMA is engaging in commercial activities for the Republic of Angola, in Angola, the issue is whether there is any or a sufficient nexus between ENDIAMA's commercial activity in Angola (regarding Plaintiffs' claims) and the United States. See, e.g., Republic of Argentina v. Weltover, 504 U.S. 607, 617-18 (1992). To demonstrate a sufficient nexus, Plaintiffs must show that the actions in question satisfy one of the three clauses listed in the commercial activity exception to the FSIA. Id. Under 28 U.S.C. § 1605(a)(2), a foreign state is not immune from the jurisdiction of the courts of the United States if

> the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

See, e.g., Virtual Defs. & Dev.' Int'l, Inc. v. Republic of Moldova, 133 F.Supp. 2d 1, 4-5 (D.D.C. 1999).

---

[1] ENDIAMA is not disputing that the nature of its Angolan activities are commercial. However, ENDIAMA asserts that none of these activities occurred in the United States nor regarding any property in the United States. ENDIAMA has not waived its jurisdictional immunity from suit in the United States. See Exhibit A, ¶ 18. Moreover, there is no direct effect from these activities in the United States. None of the exceptions to immunity apply.

Plaintiffs appear to rely in their Complaint on the direct effect prong of 28 U.S.C. § 1605(a)(2) to attempt to establish subject matter jurisdiction. The appropriate inquiry, therefore, is whether the alleged acts have caused a direct effect in the United States.

Plaintiffs allege that the direct effect in the United States includes "a loss of income to the principals in Twins, which, together with IDAS, was ENDIAMA's joint venture partner, as well as losses to the United States shareholders of AMI[2], IDAS's parent." See Complaint at ¶ 27. Plaintiffs state that AMI is a "Yukon Territory, Canada, company with its principal place of business located in the United Kingdom." See Complaint at 3. Plaintiffs reveal that AMI "moved" to London, England in February of 1999. See Complaint at 15.

Twins is not a plaintiff in this action and on the claim that U.S. shareholders of AMI lost money, the DC Circuit has held that a financial loss by a United States resident cannot be considered a direct effect.[3] See, e.g., Zedan v. Kingdom of Saudi Arabia, 270 U.S. App. D.C. 382, 849 F.2d 1511, 1514 (D.C. Cir. 1988)(the presence of the plaintiff in the U.S. was not a direct effect because "financial hardship fortuitously suffered in the United States is not a direct effect of Saudi Arabia's failure to honor a contract in Saudi Arabia"); see also, Yang Rong v. Liaoning Province Gov't, 2006 U.S. App. LEXIS 16954 (D.C. Cir. 2006)(unpublished opinion) (discussing in the concurring opinion that "[a] mere financial loss by a resident of the United States does not constitute a 'direct effect' in the United States."); see also Soudavar v. Islamic Republic of Iran, 67 F.App'x. 618, 619 (D.C. Cir. June 10, 2003)(unpublished opinion).

Other circuits have agreed with this principle. See e.g., United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n, 33 F.3d 1232, 1239 (10th Cir. 1994), cert. denied, 513 U.S.

---

[2] ENDIAMA's agreements were with IDAS, not AMI. Moreover, a review of AMI's corporate website reveals that the company is not listed on any of the stock exchanges in the United States; rather, it is listed on the Toronto Stock Exchange and the Alternative Investment Market.

[3] Pursuant to the United States Court of Appeals for the District of Columbia, Rule 28(c)(1)(B) provides that unreported decisions entered after January 1, 2002 may be cited as precedent.

1112, 115 S. Ct. 904, 130 L. Ed. 2d 787 (1995). The Court in United World Trade rejected an American citizen's claim that his lost profits caused by a foreign state's alleged breach of an oil contract was a direct effect under section 1605(a)(2). The Court reasoned that no direct effect from plaintiff's lost profits could be found from the breach of a contract entered into by parties in Moscow, which specified the delivery of oil to Sicily, and payment to be made in Paris. Id.; see also, Croesus EMTR Master Fund L.P. v. Brazil, 212 F.Supp. 2d 30, 35-36 (D.D.C. 2002).

The Supreme Court, in Weltover, defined a "direct effect" as one that "follows an immediate consequence of the defendant's activity." 504 U.S. at 607 (internal citations and quotes omitted). The Court stated that "[p]urely trivial effects in the United States" are not sufficient and § 1605(a)(2) requires that such effects be substantial or foreseeable. Weltover, 504 U.S. at 618. In the instant matter, plaintiffs have not shown that any alleged effect in the United States flows as an immediate consequence of ENDIAMA's activity. See, e.g., Doe v. State of Israel, 400 F.Supp.2d 86, 107 (D.D.C. 2005).

The D.C. Circuit follows the same approach set forth in Weltover. See Global Index, Inc. v. Mkapa, 290 F.Supp. 2d 108, 112-113 (D.D.C. 2003). A direct effect is not found unless payment was "supposed" to have been made in the United States. Id. (citing see Goodman Holdings, et al. v. Rafidain Bank, 26 F.3d 1143, 1146 (D.C. Cir. 1994) (finding no direct effect when "neither New York nor any other United States location was designated as the 'place of performance' where money was 'supposed' to have been paid")). Significantly, no Agreement entered into by ENDIAMA designated a location in the United States as a place of performance where money was to be paid or other acts performed.[4] See Exhibit A, ¶¶ 12, 25, 26.

---

[4] Notably, there is no evidence that the parties ever contemplated resolving their disputes in the United States. Any dispute between the parties of the IDAS Agreement was subject to Angolan law and had to be referred to arbitration which was to be held in Portuguese, in Luanda, Angola, and conducted under the terms of the United Nations Commission on International Commercial Trade. See Exhibit A, ¶¶ 9, 10.

6

As the Court explained in Global, "[a]ny plaintiff could also create FSIA jurisdiction over almost any contractual dispute, frustrating Congress's attempt to balance competing concerns – on the one hand, allowing U.S. citizens to recover against foreign states, but, on the other hand, imposing limits on the 'direct effect' exception so that it does not open floodgates of litigation against foreign states." United World Trade, 33 F.3d at 1238 n.4 (discussing the concern that the FSIA not turn U.S. courts into "small 'international courts of claims[,]'…open…to all comers to litigate any dispute which any private party might have with a foreign state anywhere in the world") (quoting Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 76 L.Ed.2d 81, 103 S. Ct. 1962 (1983))." Global Index, Inc., 290 F.Supp. at 116.

As the court in Global acknowledged, "[t]he fact that a U.S. citizen or entity suffers a loss does not suffice to prove a direct effect in the United States." See id. at 115. The same conclusion must be drawn in the present case.

### 2. ENDIAMA neither took property rights in violation of international law nor engaged in commercial activity in the United States

Plaintiffs also rely on 28 U.S.C. § 1605(a)(3) alleging that the action is based on property rights in violation of international law owned or operated by ENDIAMA, and that ENDIAMA engaged in commercial activity in the United States. For the exception to immunity provided in 28 U.S.C. § 1605(a)(3) to apply, "it must meet three requirements: At issue must be (1) 'rights in property' that (2) were taken in violation of international law and (3) the property at issue (or any property exchanged for it) must either (a) be present in the United States 'in connection with commercial activity carried on in the United States by the foreign state' or (b) 'owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality' engages in commercial activity in the United States." See Peterson v. Royal Kingdom of Saudi Arabia, 367 U.S.App.D.C. 421 (D.C. Cir. 2005).

In the present case, Plaintiffs' lawsuit involves contracts between Plaintiffs and ENDIAMA for prospecting and exploring part of the Luanda Norte Province in north-central Angola. See Exhibit A, ¶ 8. Plaintiffs describe the formation of these contracts and agreements with ENDIAMA in their Complaint, but fail to state that any event or any other act was performed in the United States. In fact, no employee or agent of ENDIAMA was ever present in the United States in connection with the IDAS Agreement. See Exhibit A, ¶ 13. No property, or rights to property, in dispute in this case are located in the United States. See Exhibit A, ¶ 20. In any event, courts have found that the expropriation exception does not apply to breach of contract disputes, as it does not create a "right in property." See Peterson, 416 F.3d at 12-14 (citing Rong v. Liaoning Provincial Gov't, 362 F.Supp.2d 83, 101 (D.C.C. 2005) ("The FSIA applies where the property at issue is tangible property.")); Brewer v. Socialist People's Republic of Iraq, 890 F.2d 97, 101 (8th Cir. 1989) (expropriation exception inapplicable because "breach of contract did not create 'rights in property'"). The expropriation exception to the statute does not apply as no "rights to property" as described by the courts were taken in violation of international law and ENDIAMA did not engage in any commercial activity in the United States. As far as Plaintiffs' claims are concerned, no property, or rights to property, in dispute is located in the United States. See Exhibit A¶ 20. This comports with the allegations of the Complaint and, notably, the Complaint is devoid of any reference to the United States[5], except to allege that at some point in the 1990s, AMI was in Texas to negotiate a purchase of IDAS. ENDIAMA had no involvement with AMI's purchase of IDAS. See Exhibit A, ¶ 27.

---

[5] Moreover, the Agreement between ENDIAMA and Defendant NOFAR ("NOFAR Agreement") was also negotiated in Portuguese, subject to Angolan law, and referred to arbitration in Angola. See Exhibit A, ¶¶ 21, 22, 23. The NOFAR Agreement did not involve any negotiations or performance in the United States. See Exhibit A, ¶¶ 24, 25, 26.

8

As a result, applying the law in this Circuit to the facts in the present case, it is clear that this Court does not have subject matter jurisdiction. The property at issue, contracts for mining and exploration in Angola was neither present in the United States nor in connection with commercial activity carried on in the United States by a foreign state. Moreover, the contracts were not owned by an entity (here ENDIAMA) which engages in commercial activity in the United States. See Exhibit A, ¶¶ 16, 17. ENDIAMA has not performed any act or commercial activity in the United States, or any act outside the territory of the United States in connection with commercial activities that have or had a direct effect in the United States, relating to these facts alleged in this cause of action. See Exhibit A, ¶ 19. As a result, Plaintiffs cannot establish subject matter jurisdiction in this Court.

### III.    CONCLUSION

For the foregoing reasons, Defendant, ENDIAMA, requests that the Court enter an Order dismissing Plaintiffs' claims against this Defendant, with prejudice.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

_/s/ Thomas J. Whalen_
Thomas J. Whalen (D.C. Bar No. 208512)
Laura G. Stover (D.C. Bar No. 475144)
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20006
Phone: (202) 659-6600
Fax: (202) 659-6699

Counsel for Defendant, Empresa Nacional
 de Diamantes de Angola E.P.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Defendant ENDIAMA's Memorandum of Points & Authorities in Support of its Motion to Dismiss** was filed and served electronically, this 1st day of August, 2006, to:

> Steven D. Cundra
> Hall Estill Hardwick Golden Gable & Nelson, PC
> 1120 20th Street, NW
> Suite 700, North Building
> Washington, DC 20036
>
> Stephen F. Malouf
> The Law Offices of Stephen F. Malouf, P.C.
> 3506 Cedar Springs
> Dallas, TX 75219

_/s/ Laura G. Stover_
Laura G. Stover