# EXHIBIT 1

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 6497 Page 1 of 11

Case 1:06-cv-00570-ESH    Document 19-2    Filed 09/25/2006    Page 2 of 12

*2000 U.S. Dist. LEXIS 6497, \**

DYNAMIC CONCEPTS, INC., Plaintiff, v. U-TECH SERVICES CORP., Defendant.

Civil Action No. 99-1260 (EGS) [3-1],[3-2]

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2000 U.S. Dist. LEXIS 6497

January 31, 2000, Decided
January 31, 2000, Filed

**DISPOSITION:** [\*1] Defendant's motion to dismiss [3-1] DENIED; and Defendant's alternative motion to transfer this case to the Central District of California under 28 U.S.C. § 1404 [3-2], GRANTED; and Case transferred.

**CASE SUMMARY:**
**PROCEDURAL POSTURE:** Defendant's filed a motion to dismiss, and in the alternative, a motion to transfer the plaintiff's contract action to the Central District of California under 28 U.S.C.S. § 1404.

**OVERVIEW:** Plaintiff company and defendant company agreed to submit a proposal as teaming partners for a government contract to maintain and support equipment at a military base in California. After months of negotiations, the parties entered into a subcontract agreement governing disputes that might arise between them. Plaintiff became dissatisfied with defendant's performance and terminated the parties' subcontract for default, took over defendant's work, and hired defendant's employees. Plaintiff sued defendant for breach of contract, breach of express and implied warranties, indemnification, and numerous other claims. Plaintiff brought suit in federal court in the District of Columbia. Defendant filed a motion to dismiss, or, alternatively, to transfer the case to the Central District of California under 28 U.S.C.S. § 1404. The court transferred the case holding that the defendant had not established minimum contacts sufficient to trigger personal jurisdiction and defendant's forum selection clause was controlling in the parties' subcontract.

**OUTCOME:** Because the defendant had not established minimum contacts sufficient to trigger personal jurisdiction in the District of Columbia, and defendant's forum selection clause was controlling in the parties' subcontract, the court transferred the case to the Central District of California.

**CORE TERMS:** subcontract, long-arm, personal jurisdiction, mail, choice of law, telephone, solicited, venue, breach of contract, convenience, ambiguity, contractor, exercise personal jurisdiction, transacting business, motion to dismiss, choice of forum, non-resident, purposefully, trigger, reply, correspondence, sentence, burden of establishing, service of process, motion to transfer, own jurisdiction, forum state, transferred, transferee, transacted

**LexisNexis(R) Headnotes**

Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
**HN1** A federal court may exercise personal jurisdiction over a non-resident defendant if service of process is, (1) authorized by statute, and (2) consistent with due process principles. Accordingly, the court must first look to the state's long-arm statute to

determine whether it has personal jurisdiction, and then examine whether service of process comports with due process.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview
HN2± See D.C. Code Ann. § 13-423(a).

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview
HN3± Under the D.C. long-arm statute, D.C. Code Ann. § 13-423(a), which is generally interpreted very broadly, plaintiff bears the burden of establishing personal jurisdiction by alleging factual underpinnings for the exercise of such jurisdiction over the defendant. These allegations must include specific facts demonstrating purposeful attempts by the defendant to avail itself of the benefits and protections of the District's laws.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
HN4± The constitutional touchstone of the due process determination is whether the defendant purposefully established minimum contacts in the forum state. Minimum contacts entail some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws. The purposeful availment requirement insures that a defendant will not be haled into court solely as a result of random, or attenuated contacts.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts
HN5± The test for establishing personal jurisdiction under the "transacting business" provision is three-pronged. Plaintiff must prove that (1) defendant transacted business in the state, (2) the claim arose from the business transacted in the state, and (3) the defendant purposely established minimum contacts with the state such that the court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

Contracts Law > Contract Interpretation > General Overview
HN6± The basic rules of contract construction require giving priority to the intention of the parties.

Civil Procedure > Jurisdiction > General Overview
Civil Procedure > Venue > Motions to Transfer > General Overview
HN7± Even without jurisdiction over the defendant, the court may transfer rather than dismiss a case, to avoid any injustice that may result from dismissal of an action merely because an incorrect decision has been made on a close jurisdictional question.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
HN8± Under 28 U.S.C.S. § 1404(a), the court has the discretion to transfer a civil action to another district where it might have been brought for the convenience of the parties and witnesses, in the interest of justice. The moving party bears the burden of establishing that the transfer of an action is proper.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
HN9± In determining the propriety of a 28 U.S.C.S. § 1404(a) transfer, the court considers both the private interests of the parties and the public interests of the courts: The private interest considerations include: (1) the plaintiffs' choice of forum, unless the

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 6497	Page 3 of 11

Case 1:06-cv-00570-ESH    Document 19-2    Filed 09/25/2006    Page 4 of 12

balance of convenience is strongly in favor of the defendants, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

Civil Procedure > Venue > Motions to Transfer > General Overview

**HN10** Differences between the applicable law in the vying venues are factored into the transfer of venue calculus, since the interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake.

**COUNSEL:** For DYNAMIC CONCEPTS, INC., plaintiff: A. Scott Bolden, REED, SMITH, SHAW & MCCLAY, L.L.P., Washington, DC.

For U-TECH SERVICES CORPORATION, defendant: Michael Alan Gordon, HOLMES, SCHWARTZ & GORDON, Rockville, MD.

**JUDGES:** EMMET G. SULLIVAN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** EMMET G. SULLIVAN

**OPINION: MEMORANDUM OPINION**

Pending before the Court is defendant's motion to dismiss, or, alternatively, to transfer this case to the Central District of California under 28 U.S.C. § 1404. After consideration of defendant's motion, the memorandum and materials in support, plaintiffs' memorandum in opposition, defendant's reply in support, and the parties' arguments in open court on December 17, 1999, this Court concludes that defendant's motion to transfer this case to the Central District of California under 28 U.S.C. § 1404 is **GRANTED.**

**I. Background**

Plaintiff, Dynamic Concepts Inc. ("DCI"), is a Washington, **[*2]** D.C.-based diversified technical services firm that provides technical support to federal, state, and local governments, as well as private clients. Defendant, U-Tech Services Corporation, ("U-Tech") is a California-based technical services firm that provides telephone systems services, including installation, removal, and maintenance.

On November 10, 1997, DCI and U-Tech agreed to submit a proposal as teaming partners for a government contract to maintain and support equipment at Vandenburg Air Force Base in California. On May 19, 1998, the parties were awarded the contract. On September 1, 1998, after months of negotiations, the parties entered into a subcontract agreement governing disputes that might arise between them. Plaintiff authored the agreement; however, it did incorporate by reference some provisions authored by defendant that defendant routinely included in its standard subcontracted agreements.

Plaintiff became dissatisfied with defendant's performance over several months. On April 28, 1999, plaintiff terminated the parties' subcontract for default, took over defendant's work, and hired defendant's employees. Plaintiff now sues defendant for breach of contract, breach **[*3]** of express and implied warranties, indemnification, breach of the duty of good faith and fair dealing, interference with contractual relations, interference with prospective

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 6497

Case 1:06-cv-00570-ESH    Document 19-2    Filed 09/25/2006    Page 5 of 12

Page 4 of 11

economic advantage, and misrepresentation. Defendant has filed a motion to dismiss, or, alternatively, to transfer this case to the Central District of California under 28 U.S.C. § 1404.

**II. Discussion**

A. Defendant's 12(b)(2) Motion to Dismiss

1. *Minimum Contacts*

Defendant argues that plaintiff's amended complaint should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. *HN1* A federal court may exercise personal jurisdiction over a non-resident defendant if service of process is 1) authorized by statute, and 2) consistent with due process principles. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *see also Founding Church of Scientology of Washington, D.C. v. Verlag*, 175 U.S. App. D.C. 402, 536 F.2d 429, 432 (D.C. Cir.1976). Accordingly, the Court must first look to the District of Columbia long-arm statute to determine whether it has personal jurisdiction, and then **[*4]** examine whether service of process comports with due process. *See Steinberg v. International Criminal Police Org.*, 217 U.S. App. D.C. 365, 672 F.2d 927, 930 (D.C. Cir. 1981).

Defendant contends that it is beyond the jurisdiction of the District of Columbia long-arm statute. That statute provides in pertinent part:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> (1) transacting any business in the District of Columbia . . . .*HN2*
> D.C. Code § 13-423(a).

*HN3* Under the D.C. long-arm statute, which is generally interpreted very broadly, *see Comsat Corp. v. Finshipyards S.A.M., et al.*, 900 F. Supp. 515, 520 (D.D.C. 1995), plaintiff bears the burden of establishing personal jurisdiction by alleging factual underpinnings for the exercise of such jurisdiction over the defendant. *See Crane v. New York Zoological Soc.*, 282 U.S. App. D.C. 295, 894 F.2d 454, 456 (D.C. Cir. 1990). These allegations must include specific facts demonstrating purposeful attempts by the defendant to avail itself of the benefits and protections **[*5]** of the District's laws. *Edmond v. United States Postal Service General Counsel*, 292 U.S. App. D.C. 240, 949 F.2d 415, 428 (D.C. Cir. 1991). Factual disputes are resolved in favor of the plaintiff. *Id.; see also Mitchell Energy Corp. v. Mary Helen Coal Co. Inc.*, 524 F. Supp. 558, 563 (D.D.C. 1981). banc). *HN4* The constitutional touchstone of the due process determination is "whether the defendant purposefully established minimum contacts in the forum state." *Comsat Corp. v. Finshipyards S.A.M., et al.*, 900 F. Supp. 515, 520 (D.D.C. 1995) (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108-09, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (internal citations and emphasis omitted)). Minimum contacts entail "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Dooley v. United Technologies Corp.*, 803 F. Supp. 428, 434 (D.D.C. 1992)(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)). The "purposeful **[*6]** availment" requirement insures that a defendant will not be haled into court solely as a result of random, or attenuated contacts.

*See Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 462-63 (D.C. Cir. 1988).

Plaintiff relies on the "transacting business" provision of the District of Columbia long-arm statute, D.C. Code § 13-423(a)(1), n1 which is co-extensive with the Due Process Clause of the Constitution. *First Chicago Int'l v. United Exchange Co. Ltd.*, 267 U.S. App. D.C. 27, 836 F.2d 1375, 1377 (D.C. Cir. 1987). HN5 The test for establishing personal jurisdiction under the "transacting business" provision is 3-pronged. Plaintiff must prove that (1) defendant transacted business in the District, (2) the claim arose from the business transacted in the District, and (3) the defendant purposely established minimum contacts with the District such that the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F. Supp. 558, 563-64 (D.D.C. 1981).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 There is also a "contracting to supply services" provision of the District of Columbia long-arm statute, D.C. Code § 13-423(a)(2), but plaintiff does not rely on it.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*7]**

Plaintiff points to several contacts to meet its burden:

> . U-Tech conducted negotiations and correspondence with DCI via facsimile and the mail system. Amended Compl. P14.
> . U-Tech contacted DCI by mail, telephone and facsimile during performance of the contract. *Id.* at P15.
> . U-Tech received payment from DCI's D.C. bank. *Id.* at P16.
> . U-Tech allegedly agreed to choice of law provisions which provided that the D.C. laws governed the construction and interpretation of the contract. *Id.* at P19. n2

Plaintiff argues that "this frequent correspondence between the parties, coupled with the accompanying telephone calls and electronic mail communication" demonstrates that U-Tech purposefully availed itself of the benefits of doing business in the District. Pl.'s Opp'n at 11.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 These are discussed in more detail on pp. 9-10 of Plaintiff's Opposition.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Defendant maintains that these allegations fall below the threshold of minimum contacts necessary to trigger D.C. long-arm jurisdiction. **[*8]** Aside from the contract provisions, plaintiff points only to defendant's communications in connection with executing their agreement. Several cases have held that such communications alone are not enough to constitute minimum contacts. *See Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F. Supp. 558, 564 (D.D.C. 1981) (stating that "exchange of letters and telephone communications with a party in the District of Columbia alone is not considered a jurisdictionally significant contract by District of Columbia courts"); *see also Richter v. Analex Corp.*, 940 F. Supp. 353, 359 (D.D.C. 1996) (indicating that the fact that the defendants engaged in correspondence

with plaintiffs did not activate jurisdiction under D.C. long-arm statute).

Relying on *Mitchell, supra*, defendant advances additional facts mitigating against a finding that this Court has personal jurisdiction. Defendant's position is strikingly analogous to that of the *Mitchell* defendant. In *Mitchell*, the contract at issue was to be performed outside the District, in Kentucky, 524 F. Supp. at 564; in the present case, the contract at issue was to be performed **[*9]** in California, Def.'s Mot. at 7. In *Mitchell*, the alleged breach of contract occurred in Kentucky, *id.* at 564; in the present case, any alleged breach of contract occurred in California. In *Mitchell*, the contract documents were either signed by each party in its own jurisdiction and exchanged through the mail, or fully executed in Indianapolis, *id.* at 564; here, the contract documents were signed by each party in its own jurisdiction and exchanged through the mail. See Pl.'s Opp'n at 4. The *Mitchell* defendant was not authorized, registered, or licensed to do business in D.C., *Mitchell*, 524 F. Supp. at 560. Similarly, defendant U-Tech is not incorporated or authorized to do business in D.C. Finally, neither the *Mitchell* defendant, nor U-Tech, has ever maintained an office or an agent for transacting business in D.C. *Mitchell*, at 560.

Moreover, plaintiff does not dispute that there were several meetings in California prior to the award of the government contract. Def.'s Mot. at 7. Nor does plaintiff dispute that it used defendant's California offices for the duration of the contract. *Id.* In fact, the proposal was written in California. **[*10]** Def.'s Reply at 5.

Plaintiff relies heavily on *Schwartz v. CDI Japan. Ltd.*, 938 F. Supp. 1 (D.D.C. 1996) for the proposition that "a non-resident defendant may be subject to personal jurisdiction even if he has never been physically present in the forum state and where his only contacts have been by mail or telephone." *Id.* at 5-6. n3 In *Schwartz*, plaintiff, a U.S. citizen, sued two defendants, a Japanese corporation and a Japanese citizen who resides in Tokyo, for breach of contract. *Id.* at 3. The Japanese corporation made many of the same arguments that U-Tech makes:

> "[The corporation] is not incorporated in the District; it is not authorized to do business in the District; it has no agent or employee in the District;. . . it has not solicited any business in the District. . . its only contact with the District was to contract with the [Smithsonian] it conducted only limited mail and telecommunication contacts, including payments . . . " *Id.* at 7.

The court held that the corporation had transacted business in the district, and concluded that it could exercise jurisdiction over the defendants. **[*11]** *Id.* at 3.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Plaintiff also cites McGee v. Int'l Life Insurance Co., 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957) as support for the proposition that "a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents . . . [in part because of] a great increase in the amount of business conducted by mail across state lines." Id. at 222-3. However, it should be noted that the present case can be distinguished from McGee. In that case, the Supreme Court found that the defendant, a Texas insurance company, had a "substantial connection with [California]," id. at 223, because it had solicited California business by mailing a reinsurance certificate, and because



it had accepted premiums mailed by the plaintiff from California. Although plaintiff maintains that defendant's acceptance of payments from plaintiff's D.C.-based bank provides a basis for personal jurisdiction, neither party maintains that defendant sought out plaintiff's business.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*12]

However, *Schwartz* is distinguishable from the present case on two important points. First, the non-resident defendant corporation in *Schwartz* solicited business relationships in the District. 938 F. Supp. at 7. Here, the parties dispute who solicited whose business. Defendant U-Tech claims that plaintiff DCI sought its assistance first; DCI claims that a third party brought the two companies together. Regardless, neither party claims that U-Tech affirmatively solicited DCI's or any other D.C.-based business. Thus, U-Tech clearly is not similarly situated to the *Schwartz* defendant. Second, the *Schwartz* contract called for the performance of work in the District. *Id.* at 6. The contract in the present case was to be performed entirely in California. *Schwartz* is clearly not applicable to the present case. n4

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 In addition, there was evidence in *Schwartz* that the plaintiff was an agent of the defendant corporation. Id. at 7-8. There is no evidence of any agency relationship in the present case.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*13]

Under the applicable case law, and particularly *Mitchell*, the telephone, fax, and mail communications between the parties are not enough to constitute minimum contacts sufficient to trigger D.C. long-arm jurisdiction. Since defendant did not establish minimum contacts under the D.C. long-arm statute, there is no need to reach the second prong of the analysis -- whether jurisdiction would comport with due process principles.

2. *Dueling Choice of Law and Forum Selection Provisions*

To bolster its claim that this Court lacks personal jurisdiction, defendant points to the parties' subcontract. The subcontract contains vying choice of law and forum selection provisions. The parties contend that they have included provisions in their subcontract that assign jurisdiction to their respective preferred fora. A careful reading of the contract provisions and consideration of the parties' arguments support defendant's contention that the proper forum for this action is California.

The subcontract contains conflicting forum selection and choice of law provisions. The "Choice of Law" provision under section 2 of the subcontract reads:

> CHOICE OF LAW -- The construction, interpretation [*14] (sic) performance of this Agreement and all transactions under it shall be governed by the laws of District of Columbia excluding its choice of law rules and excluding the Convention for the International Sale of Goods. The parties agree that the provisions of the District of Columbia Uniform Commercial Code apply to this Agreement and all transactions under it relating to the furnishing of services, the lease or rental of equipment or material, and the licence of software. Supplier (U-Tech) agrees to submit to the jurisdiction of any court wherein an action is commenced against the Company (DCI) based on a claim for which Supplier has agreed to indemnify Company under this Agreement. (hereinafter "Plaintiff's clause" or "D.C. clause")

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 6497                    Page 8 of 11

Case 1:06-cv-00570-ESH   Document 19-2   Filed 09/25/2006   Page 9 of 12

However, in a different section headed "DISPUTES AND APPLICABLE LAW," the subcontract includes the following language from U-Tech's standard subcontract agreements:

> (a) Any disputes arising under this Subcontract solely between the Contractor and Subcontractor shall be governed by the law of the State of California. However, if the issue in dispute is not covered by California law or if there is a conflict between California law and the **[*15]** Federal law, i.e. decisions of the Federal courts, regulations and statutes, the California court shall apply the Federal law. Any litigation under this Subcontract, if commenced by Subcontractor (U-Tech) against the Contractor (DCI), shall be brought in a court of competent jurisdiction in the State of California. . . . (hereinafter "Defendant's clause" or "California clause")

The California provision was incorporated by reference into the contract at U-Tech's suggestion, but DCI, as the contractor, was the ultimate author of the contract. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 In The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972), the Supreme Court held that forum selection clauses are "presumptively valid" and should be "specifically" enforced unless the resisting party "could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching." However, Bremen has been overruled at the federal level by 28 U.S.C. § 1404(a), which provides the basis for defendant's alternative argument to transfer. See Outokumpu Engineering Enterprises, Inc., v. Kvaerner Enviropower, Inc., et al. 685 A.2d 724, 733 (Sup. Ct. Del. July 10, 1996)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*16]**

Plaintiff makes two fairly unconvincing arguments as to why the D.C. provision is controlling. First, relying on the third sentence of defendant's clause, plaintiff contends that defendant's clause is not controlling because by its own language its application is limited solely to actions brought by defendant against plaintiff, not the converse. Pl.'s Opp'n at 12-13. However, plaintiff does not explain away the first sentence, which clearly states that "any disputes arising under this Subcontract solely between the Contractor and Subcontractor shall be governed by the law of the State of California." Nor can it. See Def.'s Reply at 7. The instant action fits neatly under the category indicated in this sentence; therefore, it is the opinion of the Court that, at the very least, California law governs the action, even if it is not heard in a California court.

Second, plaintiff contends that the D.C. clause is controlling because it manifests DCI's intent. HN6 The basic rules of contract construction require giving priority to the intention of the parties. See Mercer Management Consulting, Inc. v. Wilde, 920 F. Supp. 219, 235 (D.D.C. 1996). DCI argues that it clearly **[*17]** intended for D.C. laws "to govern both the performance and all transactions under the Subcontract Agreement," and "the basis of this lawsuit against U-Tech is U-Tech's failure to perform under the Subcontract." Pl.'s Opp'n at 14. However, this intent argument cuts against plaintiff as well. The Court is persuaded that since DCI chose to incorporate the California clause, there is also strong support for the

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 6497 Page 9 of 11

Case 1:06-cv-00570-ESH Document 19-2 Filed 09/25/2006 Page 10 of 12

proposition that plaintiff intended actions like this one to be heard in a California court. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Additional discussion of this point can be found in Def.'s Mot. at 8.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

On the other hand, defendant's argument that the California claim is controlling is persuasive. Defendant maintains that any ambiguities in the contract must be construed against DCI, since it drafted the document and therefore created the ambiguity. n7 *Cole v. Burns International Security Services*, 323 U.S. App. D.C. 133, 105 F.3d 1465 (D.C. Cir. 1997). Further, defendant notes that the California clause has language specifically [*18] applying it to disputes between the parties, like the instant case, while the language in the D.C. clause is more general. Also, the D.C. clause stated that the D.C. Uniform Commercial Code would apply to the contract, but that code covers the sale of goods only, while the contract at issue was a services contract.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Plaintiff uses this same argument against defendant, stating that any ambiguities in the California clause should be construed in plaintiff's favor, since defendant wrote that language. See Pl.'s Opp'n at 16. Whether or not there are ambiguities to be resolved in the clause, this argument is a red herring, since DCI was the ultimate drafter of the subcontract.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Accordingly, this Court concludes that the California clause is controlling. Since the defendant has not established the minimum contacts necessary to activate jurisdiction under the D.C. long-arm statute, either through phone, fax, and mail communications, or through contract provisions, this Court finds that it cannot exercise personal jurisdiction [*19] over defendant.

B. Defendant's Motion to Transfer This Case to the Central District of California under 28 U.S.C. § 1404

Defendant moves, in the alternative, to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a) and in the interests of justice. HN7 Even without jurisdiction over the defendant, this Court may transfer rather than dismiss a case, to avoid any injustice that may result from dismissal of an action merely because an incorrect decision has been made on a close jurisdictional question. *Mitchell*, 524 F. Supp. 558 at 564. HN8 Under 28 U.S.C. § 1404(a), this Court has the discretion to transfer a civil action to another district where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice." The moving party bears the burden of establishing that the transfer of an action is proper. See *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987). HN9 In determining the propriety of a § 1404(a) transfer, the court considers both the private interests of the parties and the [*20] public interests of the courts:

The private interest considerations include: (1) the plaintiffs' choice of forum,

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 6497　　　　Page 10 of 11

Case 1:06-cv-00570-ESH    Document 19-2    Filed 09/25/2006    Page 11 of 12

unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses ..., but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998) (quoting *Trout Unlimited v. Dept of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

1. *Venue in the Transferee District*

As a threshold question, the Court must consider whether venue is proper in the Central District of California. As defendant is a California corporation, jurisdiction and venue would be proper **[*21]** in the Central District of California. See 28 U.S.C. § 1391(c).

2. *Convenience of the Parties and Witnesses*

Defendants seek transfer on several grounds, including that 1) the contract was written in California, 2) the contract was performed entirely in California, 3) any alleged breach would have occurred in California, and 4) several defense witnesses, who have submitted affidavits, are located in California.

Plaintiffs argue that plaintiff's choice of forum is entitled to great deference and should not be disturbed. See *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998). In addition, plaintiff contends that it will be greatly inconvenienced by transfer, since both the documents relating to this controversy and several of plaintiff's witnesses with personal knowledge are located in the District of Columbia. The Court recognizes that, regardless of where this case is litigated, there will exist minor inconveniences to witnesses for both parties. Thus, this factor is not a decisive one in resolving the present motion.

3. *Interests of Justice*

**HN10** Differences between the applicable law in the vying venues **[*22]** are also factored into the transfer of venue calculus, since "the interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake." See *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 8. Since the contract was written and performed in California, allegedly breached in California, and defendant is located in California, it is clear that that state has more of a stake in this litigation than the District of Columbia.

### III. Conclusion

Arguably, since the defendant has not established minimum contacts sufficient to trigger personal jurisdiction under the District of Columbia long-arm statute, and defendant's forum selection clause is controlling in the parties' subcontract, this case should be dismissed. Nevertheless, in the interests of justice, this Court concludes that this case should be transferred to the Central District of California under 28 U.S.C. § 1404. Accordingly, it is

**ORDERED** that defendant's motion to dismiss [3-1] is **DENIED;** and it is

**FURTHER ORDERED** that defendant's alternative motion to transfer this case to the Central **[*23]** District of California under 28 U.S.C. § 1404 [3-2], is **GRANTED;** and it is

**FURTHER ORDERED** that this case be transferred to the Central District of California.

1/31/00
DATE

EMMET G. SULLIVAN

UNITED STATES DISTRICT JUDGE

    Service: **Get by LEXSEE®**
    Citation: **2000 U.S. Dist. LEXIS 6497**
      View: Full
Date/Time: Friday, September 22, 2006 - 11:56 AM EDT



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.