# EXHIBIT 3

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086 Page 1 of 17

Case 1:06-cv-00570-ESH   Document 19-4   Filed 09/25/2006   Page 2 of 18

*2003 U.S. Dist. LEXIS 27086, **

THE HERERO PEOPLE'S REPARATIONS CORPORATION, et al., Plaintiffs, v. DEUTSCHE BANK AG, et al., Defendants.

Civ. No. 01-01868 (CKK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2003 U.S. Dist. LEXIS 27086

June 30, 2003, Decided
June 30, 2003, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by Herero People's Reparations Corp. v. Deutsche Bank AG, 2003 U.S. Dist. LEXIS 27094 (D.D.C., July 31, 2003)

**PRIOR HISTORY:** Herero People's Reparations Corp. v. Deutsche Bank AG, 2002 U.S. Dist. LEXIS 27982 (D.D.C., May 29, 2002)

**CASE SUMMARY:**
**PROCEDURAL POSTURE:** Plaintiffs, including a tribal reparations committee, alleged federal common law claims of genocide and enslavement against defendants, foreign corporations, for actions taken by the corporations between 1890 and 1915. One corporation moved to dismiss based on lack of subject-matter and personal jurisdiction and standing, as well as failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (6), and U.S. Const. art. III.

**OVERVIEW:** The corporation maintained that it lacked requisite contacts with the District of Columbia to establish general or specific personal jurisdiction over it. Plaintiffs sought to establish jurisdiction based on D.C. Code § 11-921 and on principles of universal jurisdiction. Section 11-921 did not confer personal jurisdiction over nonresident defendants, and a review of the precedent cited by plaintiffs in support of their universal jurisdiction theory revealed no case where a court inferred universal jurisdiction. As a result, the court declined to embrace principles of universal jurisdiction as an independent source of personal jurisdiction. The court could not exercise specific jurisdiction over the corporation under D.C. Code § 13-423 because none of plaintiffs' claims arose from any business transacted between the parties in the District, nor from any act causing tortious injury in the District. And, in the absence of a prima facie showing of continuous and systematic contacts between the corporation and the District to justify a finding that the corporation was doing business in the District, the court lacked general jurisdiction over the corporation under D.C. Code § 13-334(a).

**OUTCOME:** The court granted the corporation's motion to dismiss, and dismissed the corporation from the action for lack of personal jurisdiction.

**CORE TERMS:** personal jurisdiction, discovery, jurisdictional, international law, universal, federal question, systematic, subject matter jurisdiction, federal common law, motion to dismiss, nationwide, long-arm, lack of personal jurisdiction, humanity, human rights, conclusory, cogens, continuous, genocide, atrocities, civil action, genocidal, comport, dicta, service of process, requisite, Foreign Sovereign Immunity Act, Torture Victim Protection Act, exercise personal jurisdiction, criminal prosecution

**LexisNexis(R) Headnotes**

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview
HN1± Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them.

Civil Procedure > Jurisdiction > General Overview
Constitutional Law > The Judiciary > Jurisdiction > General Overview
HN2± The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States' and is inflexible and without exception. In ascertaining whether or not a court has authority to hear the merits of the plaintiffs' claims, however, it is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview
HN3± D.C. Code § 11-921 provides the Superior Court of the District of Columbia with general subject matter jurisdiction over civil suits filed in the District, but does not confer personal jurisdiction over nonresident defendants.

Civil Procedure > Justiciability > General Overview
Civil Procedure > Jurisdiction > General Overview
International Law > General Overview
HN4± The application of international law does not suspend a court's jurisprudential requirements.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview
Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview
HN5± Where federal law is silent, a court examines state law to determine the propriety of exercising personal jurisdiction over a defendant.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Challenges
Evidence > Procedural Considerations > Burdens of Proof > Allocation
HN6± When a defendant challenges the court's exercise of personal jurisdiction, it is the plaintiff who bears the burden of establishing a prima facie showing of jurisdiction; however, conclusory statements do not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts
HN7± Under District of Columbia law, local courts may exercise specific jurisdiction over defendants under D.C. Code § 13-423, which provides that a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's: (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086                     Page 3 of 17

Case 1:06-cv-00570-ESH    Document 19-4    Filed 09/25/2006    Page 4 of 18

substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. When jurisdiction over a person is based solely upon § 13-423, only a claim for relief arising from acts enumerated in § 13-423(a) may be asserted against him.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction
HN8⬆ The District of Columbia Court of Appeals has construed D.C. Code § 13-423 to permit the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business
HN9⬆ The D.C. Code confers general jurisdiction over foreign corporations under D.C. Code § 13-334(a) as to claims not arising from the corporation's conduct in the District, if the corporation is doing business in the District. Although on its face § 13-334(a) appears to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business
HN10⬆ A court's exercise of general jurisdiction pursuant to D.C. Code § 13-334(a) must comport with the Due Process Clause of the Fifth and Fourteenth Amendments and is only permissible if the defendant's business contacts with the forum district are continuous and systematic.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business
HN11⬆ The District of Columbia Court of Appeals has held that the reach of doing business jurisdiction under D.C. Code § 13-334(a) is coextensive with the reach of constitutional due process.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview
Civil Procedure > Discovery > General Overview
HN12⬆ A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum. The U.S. Court of Appeals for the District of Columbia Circuit has held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified. However, in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview
Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss
Civil Procedure > Discovery > General Overview
HN13⬆ There are few circumstances where it is appropriate to dismiss an action for lack of

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086 Page 4 of 17

Case 1:06-cv-00570-ESH   Document 19-4   Filed 09/25/2006   Page 5 of 18

personal jurisdiction without first granting precisely focused discovery aimed at addressing matters related to personal jurisdiction.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview
Civil Procedure > Discovery > General Overview

**HN14** Foreign nationals should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists.

**COUNSEL:** [*1] For THE HERERO PEOPLE'S REPARATIONS CORPORATION, a District of Columbia Corporation, HEREROS, a Tribe and Ethnic and Racial Group, by and through its Paramount Chief, K. RIRUAKO, Paramount Chief, MBURUMBA GETZEN KERINA, KURUNDIRO KAPUUO, CORNELIA TJAVEOND JA, MOSES NGUARAMBUKA, HILDE KAZAKOKA KAMBERIPA, FESTUS KORUKUVE, UEZUVANJO TJIHAVGC, UJEUETU TJIHANGE, MOSES KATUUO, LEVY K. O. NGANJONE, FESTUS NDJAI, HOOMAJO JJINGEE, UELEMBUIA TJINAWBA, JARARAIHE TJINGEE, HANGEKAOUA MBINGE, EHRENS JEJA, NATHANAEL UAKUMBUA, RUDOLPH KAUZUU, JAENDEKUA KAPIKA, BEN MBEUSERUA, FELIX KOKATI, SAMUEL UPENDURA, MAJOOR FESTUS KAMBURONA, UETAVERA TJIRAMBI, JULIUS KATJINGISIUA, GEBHARID MUESEE, NAHASON KAAHANGORO, GERSON NGETUNIE, NIKLAAS KOUJO, ESEKIEL TJIVIKUA, PUURIJATA MGOMBE, MUHONUNE TJIAUIKO, ELISA MUYAHERE, OSIEL ZAJERUES, VAUNDURA TJISUTA, KAPIKA MOTJINDUIKO, KATJIMBATERE MBENDURA, UARAA MUPEU, KAVARI HIALONGURA, CHRISTOR VEZUVAPI KAZOHUA, GLAMENOTS MUPURUA, EHRENFRIED TJIPUTOVANDU, NGORERA LANGUEMUNA, METHEUS TJIRDUNDA, TUATUPUKUA HEPUTE, SAULUS KASAONA, JOSEF TJIVINDE, Plaintiffs: Philip M. Musolino, MUSOLINO & DESSEL, Washington, DC.

For DEUTSCHE BANK, A.G., Defendant: Michael David Nolan, [*2] MILBANK, TWEED, HADLEY & MCCLOY, Washington, DC.

**JUDGES:** COLLEEN KOLLAR-KOTELLY, United States District Judge.

**OPINION BY:** COLLEEN KOLLAR-KOTELLY

**OPINION: MEMORANDUM OPINION**

(June 30, 2003)

This case is brought by the Herero People's Reparations Corporation, the Herero Tribe of Namibia, and individual members of the Herero Tribe (collectively "Plaintiffs"), who allege that during the late Nineteenth and early Twentieth Centuries, Defendants, Deutsche Bank AG, Terex Corporation, n1 and Woermann Line, in cooperation with the government of Imperial Germany, engaged in "explicitly sanctioned extermination, the destruction of tribal culture and social organization, concentration camps, forced labor, medical experimentation and the exploitation of women and children in order to advance their common financial interests." Am. Compl. Introduction. Defendants filed separate Motions to Dismiss the present action, but each Defendant incorporated and adopted many of the arguments of its respective co-Defendant. See Def. Woermann Line's Mem. in Support of Mot. to Dismiss at 1-2; Def. Deutsche Bank's Mem. in Support of Mot. to Dismiss at 2-4; see also infra note 7. The Court only considers the [*3] arguments raised by Defendant Woermann Line at this time. n2 After reviewing Defendants' Motions, Plaintiffs' Oppositions, Defendants' Replies, and the applicable law, the Court shall grant Defendant Woermann Line's motion and dismiss the case against it for lack of personal jurisdiction.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086

Case 1:06-cv-00570-ESH   Document 19-4   Filed 09/25/2006   Page 6 of 18

Page 5 of 17

n1 On September 5, 2001, Plaintiffs filed a Notice of Dismissal without prejudice with respect to Terex Corporation pursuant to Federal Rules of Civil Procedure 41 (a).

n2 Defendant Woermann Line has moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6). *See also infra* note 7.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## I. BACKGROUND

The present case asks the Court to examine the absolute depths of human existence, from the evils of imperialism to institutional slavery and genocide. Plaintiffs allege that Defendants, as members of the "German **[*4]** colonial enterprise," systematically murdered thousands of Herero men, women, and children. Am. Compl. PP 104-109. The atrocities allegedly committed by Defendants span a twenty-five-year period between 1890 and 1915, *id.* PP 151-165, and include:

> (a) initiation of and implementation of a race war against the Herero; (b) initiation of and implementation of an implicit and explicit campaign of genocide, extermination and extirpation of the Hereros; (c) the brutalization and enslavement of the Hereros, and the systematic use of forced labor; (d) the systematic forced degradation of Herero women held as captives; and (e) the systematic destruction of the Herero culture.

*Id.* PP 148-150.

During this period of time, Plaintiffs contend that "out of 80,000 men, women and children, the German colonial enterprise had exterminated all but 15,000." *Id.* P 114. According to the Amended Complaint, the remaining Herero, some 10,632 women and children and 4,137 men, were placed in German concentration camps. *Id.*

Plaintiffs' Amended Complaint asserts that each of these acts constitutes a "crime against humanity and was a crime against humanity from 1890 to 1915." **[*5]** *Id.* PP 152-56. Moreover, according to Plaintiffs, each of these acts, including the "intentional destruction of a tribe," "slavery," and the "systematic abuse of women," is a "violation of international law and was a violation of international law from 1890 to 1915," *id.* PP 157-62, and as "an ethnic, racial, political and cultural group," the Herero Tribe is "entitled to the protection of international law," *id.* P 163. The Amended Complaint seeks relief in the "amount of two billion dollars ($ 2,000,000,000) or such other amount [sic] as may be proven at trial." *Id.* at 65("Wherefore" Paragraph).

Plaintiffs filed their Complaint in Superior Court of the District of Columbia pursuant to D.C. Code § 11-921 n3 and "on principles of universal jurisdiction applicable to crimes against humanity, genocidal practices and human rights atrocities," *id.* P 1, but did not specify a statute or precedent in support of a cause of action in their Amended Complaint, see generally *id.*; see also *The Herero People's Reparations Corp., et. al. v. Deutsche Bank AG, et al.*, No. 01-1868 (D.D.C. May 30, 2002) (memorandum opinion denying Plaintiffs' motion **[*6]** for remand) at 4 ("In the present case, Plaintiffs' complaint, motion to remand, and reply to Defendants' memorandum do not mention any specific state statute or common law theory under which they seek recovery. Their complaint refers to principles of District of

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086 Page 6 of 17

Case 1:06-cv-00570-ESH   Document 19-4   Filed 09/25/2006   Page 7 of 18

Columbia law, United States law, and international law,' and to principles of universal jurisdiction applicable to crime [sic] against humanity, genocidal practices and human rights atrocities.'") (quoting Compl. Introduction, P 1) [hereinafter "Remand Opinion"].

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Section 921 states in relevant part: "the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia." D.C. Code § 11-921.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On August 30, 2001, Defendants successfully removed the case to the United States District Court for the District of Columbia under 28 U.S.C. § 1441. Pursuant to the requirements of 28 U.S.C. § 1446(a), n4 Defendants stated **[\*7]** that Plaintiffs' claims of jurisdiction based on "United States law" and "international law" placed the case under federal question jurisdiction pursuant to 28 U.S.C. § 1331. n5 On October 1, 2001, Plaintiffs moved to remand the case to Superior Court of the District of Columbia, arguing that Defendants' notice to remove the case to federal court was inadequate. The Court, on May 30, 2002, ruled that Defendants' notice of removal was adequate under 28 U.S.C. § 1446. See Remand Opinion at 5-6. The Court observed that "Plaintiffs' filings have conceded that they do not contest this court's original jurisdiction over their claims." Id. at 4. Because Plaintiffs' Amended Complaint did not "mention any specific state statute or common law theory under which they seek recovery," id., and refers to "principles of District of Columbia law, United States law, and international law," Am. Compl. Introduction, and to "principles of universal jurisdiction applicable to crimes against humanity, genocidal practices and human rights atrocities," id. P 1, the Court concluded that it could exercise federal question jurisdiction under 28 U.S.C. § 1331 **[\*8]** , Remand Opinion at 4-5 ("Federal common law has established that issues of international law fall under federal jurisdiction."). n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Section 1446(a) states that "[a] defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a).

n5 Section 1331 states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

n6 In their Opposition to Defendant Woermann Line's present Motion to Dismiss, Plaintiffs state: "As this Court has already concluded, the Herero claim sounds in international law. It is well-settled that the determination and interpretation of international law present federal questions. . . .'" Pls.' Opp'n to Mot. to Dismiss of Def. Woermann Line at 15-16 (citing Restatement (Third) of Foreign Relations Law of the United States, § 112(2) (1987)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*9]** On April 30, 2002, while Plaintiffs' Motion to Remand was still pending before the Court, Defendants filed separate Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 8(a)(2). n7 Def. Deutsche Bank's Mem. of Law in Support of Mot. to Dismiss at 2-4 [hereinafter "Def. Deutsche Bank's Mem."]; Woermann Line's Mem. of Law in Support of Mot. to Dismiss at 1-2 [hereinafter "Def. Woermann Line's Mem."]. In response to Defendants' Motions, Plaintiffs aver for the first time in their Opposition that their claims are based on "a federal common law action for genocide and enslavement." Pls.' Opp'n to Mot. to Dismiss of Def. Woermann Line at 18 [hereinafter "Pls.' Woermann Opp'n"]; *see also id.* at 16 (stating that "the Herero do not seek coverage of the Alien Tort Claim Act"). n8 Plaintiffs opine that the "offenses committed at the behest and for the benefit of the defendant corporations against the Herero are violations of *jus cogens* [n9] norms," *id.* at 6, and "because **[*10]** violations of *jus cogens* norms are the embodiment of evil, every nation is obligated to punish those responsible," *id.* at 8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 On March 20, 2003, Defendant Deutsche Bank filed a Notice of Withdrawal of Defense Based on Lack of Personal Jurisdiction. Likewise, in Defendant Woermann Line's Reply, Defendant notified the Court that, "although Woermann Line continues to believe . . . that the Amended Complaint also fails to satisfy the pleading requirement of Rule 8(a) of the Federal Rules of Civil Procedure, at this time Woermann Line withdraws its motion to dismiss on that ground, solely to obviate the need for the Court to address Plaintiffs' contention that they need merits discovery' from Woermann Line to respond to the Rule 8(a) arguments." Def. Woermann Line's Reply at 1 n.2.

n8 In addition, Defendants observed in their Memoranda in Support of their Motions to Dismiss that Plaintiffs cannot assert a claim under the Torture Victim Protection Act, 28 U.S.C. § 1350, because the statute limits liability to "individuals," and therefore does not apply to corporate entities. Def. Deutsche Bank's Mem. at 12-13. Plaintiffs fail to rebut this contention in their Opposition and note that their claims stem from "a federal common law action for genocide and enslavement." Pls.' Woermann Opp'n at 18. **[*11]**

n9 In *Princz v. Federal Republic of Germany*, the D.C. Circuit defined a *"jus cogens* norm as a principle of international law that is accepted by the international community of States as a whole as a norm from which no derogation is permitted." *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1173 (D.C. Cir. 1994) (quotations and citation omitted). The court went on to observe that, at least with regard to a state, *jus cogens* norms are violated if the state:

> practices, encourages, or condones (a) genocide, (b) slavery or slave trade, (c) murder or causing the disappearance of individuals, (d) torture or other cruel, inhuman, or degrading punishment, (e) prolonged arbitrary detention, (f) systematic racial discrimination, or (g) a consistent pattern of gross violations of internationally recognized human rights.

*Id.* (quoting Restatement (Third) of Foreign Relations Law of the United States, § 702 (1987)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## II. DISCUSSION

A. *Threshold Jurisdictional Inquiry*

Defendant Woermann Line challenges both the Court's **[*12]** authority to hear this case (lack of subject matter jurisdiction, Article III standing, and personal jurisdiction) and the subsequent merits of the claim (failure to state a claim upon which relief can be granted). Def. Woermann Line's Mem. at 1-2. The Court, therefore, must consider as a threshold matter whether it has the authority to reach the merits. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 101, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (observing that the "absolute purity" of the jurisdiction-first rule is well established). **HN1**"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999). **HN2**"The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States' and is inflexible and without exception.'" *Steel Co.*, 523 U.S. at 94-95 (quoting *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462 (1884)). In ascertaining whether **[*13]** or not the Court has authority to hear the merits of Plaintiffs' claims, however, "it is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." *Marathon Oil Co.*, 526 U.S. at 585; *accord The Grand Council of the Crees and New England Coalition for Energy Efficiency and the Env't v. Federal Energy Regulatory Comm'n*, 339 U.S. App. D.C. 203, 198 F.3d 950, 954 (D.C. Cir. 2000) (observing that "it is entirely proper to consider whether there is prudential standing while leaving the question of constitutional standing in doubt, as there is no mandated sequencing of jurisdictional issues'") (quoting *Marathon Oil Co.*, 526 U.S. at 584).

1. *Personal Jurisdiction*

Defendant Woermann Line argues that the Court lacks authority to reach the merits of Plaintiffs' Amended Complaint for want of personal jurisdiction. Def. Woermann Line's Mem. at 13-18. In support of its Motion to Dismiss, Defendant Woermann Line has attached several declarations, which maintain that it lacks requisite contacts with the District of Columbia to establish general or specific personal jurisdiction over Defendants. Decl. of Jurgen **[*14]** Glissmann PP 5-16; Decl. of Dieter Tittel PP 5-16. Indeed, the Declarations contend that the two alleged successors to Woermann Line are "not licensed to do business in the District of Columbia," do "not have a registered agent of service of process in the District of Columbia," do "not lease any office space or other facility of any kind in the District of Columbia, nor [do they] maintain a telephone, telex or telefax number in the District of Columbia," do "not own any real property or tangible personal property in the District of Columbia," do not have any "directors, officers, employees or agents in the District of Columbia," do "not have a bank or brokerage account in the District of Columbia," do "not ship goods to or from the District of Columbia," are "not engaged in continuous and systematic activity of any kind in the District of Columbia," do "not conduct or transact business in the District of Columbia," and have "not caused any injury within the District of Columbia." Decl. of Dieter Tittel PP 5-16; *see also* Decl. of Jurgen Glissmann PP 5-16. n10

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Defendants have filed a Joint Motion for a Protective Order, as well as individual Motions for Protective Orders, pursuant to Federal Rule of Civil Procedure 26(c), seeking protection from certain discovery requests served by Plaintiffs. Woermann Line attached Plaintiffs' discovery requests in a series of exhibits to Defendant's Motion for a Protective Order. Plaintiffs' requests would often ask Defendant Woermann Line to prove a negative. *See, e.g.,* Def. Woermann Line's Mot. for Protective Order, Ex. A. (Pls.' First Request for Production of Docs. to Def. Woermann Line at 4) (requesting "all documents supporting your contention that this Court cannot exercise personal jurisdiction in this matter"). Likewise, many of Plaintiffs' requests are expressly refuted by Defendant's Declarations. *See, e.g., id.,* Decl. of Alan Kanzer P 7. Plaintiffs also seek discovery regarding Defendant Woermann Line's contacts with the United States as a whole and any information Defendant can provide about Defendant Deutsche Bank's contacts with the District of Columbia. *Id.,* Ex. A (Pls.' First Set of Jurisdictional Interrogatories to Def. Woermann Line at 5-7). Finally, Plaintiffs desire to depose "one or more officers, or managing agents, or other persons" regarding Defendant's contacts with the District of Columbia. *Id.,* Ex. A (Notice of Deposition at 1).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*15]

a. *Principles of "Universal Jurisdiction"*

Plaintiffs do not embrace the D.C. long-arm statute, D.C. Code § 13-423, in their Amended Complaint, but seek jurisdiction based "on 11 D.C. Code § 921 and on principles of universal jurisdiction applicable to crimes against humanity, genocidal practices and human rights atrocities." Am. Compl. P 1. The section of the D.C. Code to which Plaintiffs cite in their Amended Complaint, HN3 D.C. Code § 11-921, provides the Superior Court of the District of Columbia with general subject matter jurisdiction over civil suits filed in the District, but does not confer personal jurisdiction over nonresident defendants. *Compare* D.C. Code §§ 11-921 *with* 13-423; *see also supra* note 3. In their Opposition, Plaintiffs nevertheless cite precedent purporting to authorize the Court to exercise personal jurisdiction over Defendant Woermann Line pursuant to principles of "universal jurisdiction." Pls.' Woermann Opp'n at 40. For example, Plaintiffs observe that the D.C. Circuit "affirmed the denial of a motion to dismiss for lack of subject matter and personal jurisdiction [*16] in a Middle East airline highjacking," citing *United States v. Yunis,* 288 U.S. App. D.C. 129, 924 F.2d 1086, 1091-92 (D.C. Cir. 1991), *id.,* and likewise rely on *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 13 (D.D.C. 1998), *id.* at 42. In essence, Plaintiffs contend that *jus cogens* norms warrant "a departure from the traditional due process analysis." *Id.* at 41.

The cases cited by Plaintiffs, however, are readily distinguishable from the case at bar. In *Yunis,* while the D.C. Circuit "affirmed the denial of a motion to dismiss for lack of subject matter and personal jurisdiction in a Middle East airline highjacking" case, *id.* at 40, the court held that a *statute,* the Hostage Taking Act, 18 U.S.C. § 1203, conferred on the district court personal and subject matter jurisdiction over the *criminal prosecution* of the defendant, *Yunis,* 924 F.2d at 1090-91. In so holding, the court noted that its reading of the Hostage Taking Act was not in tension with international law because of principles of universal jurisdiction, and as a result, the court did not find it necessary [*17] to construct the reach of the statute narrowly to avoid infringing on international law. *Id.* at 1090. Here, however, Plaintiffs rely on the *"federal common law"* to advance their *civil* claims. Pls.' Woermann Opp'n at 18 (emphasis added). *Yunis* simply does not provide the patch Plaintiffs need to mend their jurisdictional hole. The case does not suggest, through its discussion of principles of universal jurisdiction, that such principles would be embraced in the absence of statutory authorization; rather, the *Yunis* court merely noted that the criminal prosecution of an alien terrorist in United States federal court, as authorized by a duly enacted federal statute, did not conflict with international norms. *See Yunis,* 924 F.2d at 1090-91. Likewise, Plaintiffs' reliance on *Flatow v. Islamic Republic of Iran* is misplaced. In *Flatow,* the District Court held that the Foreign Sovereign Immunity Act, 28 U.S.C. § 1602, *et seq.,* did not conflict with

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086  Page 10 of 17

Case 1:06-cv-00570-ESH   Document 19-4   Filed 09/25/2006   Page 11 of 18

traditional notions of due process because "a foreign state is not a person' for the purposes of the constitutional due process analysis." *Flatow*, 999 F. Supp. at 19 **[*18]** (capitalization altered). *Flatow* considered whether the Foreign Sovereign Immunity Act constitutionally conferred personal jurisdiction over foreign state defendants in federal courts. *Id.* Here, the Court is not presented with any statute conferring jurisdiction over Defendant Woermann Line. As a result, *Flatow's* holding clearly must be limited to its interpretation of the Foreign Sovereign Immunity Act and cannot be read as conferring district courts with universal jurisdiction in the absence of a statute providing such jurisdiction.

Plaintiffs also rely on dicta from *Xuncax v. Gramajo*, 886 F. Supp. 162 (D.R.I. 1995), to support their theory of universal jurisdiction -- a case in which the question of personal jurisdiction was not even before the court. Pls.' Woermann Opp'n at 42-43. In *Xuncax*, "nine expatriate citizens of Guatemala . . . and Dianna Ortiz, a citizen of the United States, . . . brought separate actions against Hector Gramajo, formerly Guatemala's Minister of Defense." *Xuncax*, 886 F. Supp. at 169. After the defendant filed "a conclusory pro se answer," he declined to participate further in the proceedings, "refusing **[*19]** even to respond to court orders requiring him to furnish a current address for service." *Id.* Default judgment was entered pursuant to Federal Rule of Civil Procedure 55(a), and the only questions before the court were "(1) whether [the] Court may render judgment against defendant and (2) if so, what damage award constitutes a proper measure of the defendant's legal liability." *Id.* Following the court's discussion of plaintiff Ortiz's claim under the Torture Victim Protection Act, 28 U.S.C. § 1350, the court briefly noted, in dicta, that personal jurisdiction was appropriate under the doctrine of universal jurisdiction. *Id.* at 183 n.25 (citing Restatement (Third) of Foreign Relations Law of the United States, § 404 (1987)).

Although the *Xuncax* court's dicta seems to support the principle of universal jurisdiction, the court was not required to consider the statutory and constitutional limits of personal jurisdiction. As the authors of the Restatement (Third) of Foreign Relations Law note, <sup>HN4</sup> the application of international law does not suspend the Court's **[*20]** jurisprudential requirements. See Restatement (Third) of Foreign Relations Law of the United States, § 1 n.4 (1987) ("The jurisprudence of adjudication -- principles as to jurisdiction, standing, mootness, ripeness, etc.-applies to foreign relations cases as to others."). Moreover, in *Xuncax*, the plaintiffs brought their claims under the Alien Tort Claims Act, 28 U.S.C. § 1350, and the Torture Victim Protection Act, 28 U.S.C. § 1350. n11 *Xuncax*, 886 F. Supp. at 176-192. Here, Plaintiffs seek relief under "federal common law" and, naturally, face jurisprudential difficulties in the absence of express authorization from Congress.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 In *Xuncax*, the plaintiffs also asserted that their claims -- violations of international and federal common law -- provided an independent source of jurisdiction pursuant to 28 U.S.C. § 1331. *Xuncax*, 886 F. Supp. at 193. Although the *Xuncax* court seems to have conflated its analysis of subject matter jurisdiction and failure to state a valid cause of action, *compare id.* at 194 *with Verizon v. Public Service Commission of Maryland*, 535 U.S. 635, 642-43, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) ("'It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction.'") (quoting *Steel Co.*, 523 U.S. at 89), it nonetheless concluded that "international law is not itself a source of private rights of action," *Xuncax*, 886 F. Supp. at 194. Accordingly, the *Xuncax* court rejected the plaintiffs' "federal common law" claims for lack of subject matter jurisdiction and did not consider, even in dicta, the personal jurisdiction problems presented by such independent claims.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*21]**

A careful review of the precedent cited by Plaintiffs in support of their theory of universal jurisdiction reveals no case where a court inferred universal jurisdiction. Moreover, and as the Court will consider below, violations of international law do not absolve the Court of its statutory and constitutional duties with respect to exercising personal jurisdiction over defendants. As a result, the Court declines to embrace "principles of universal jurisdiction" as an independent source of personal jurisdiction here.

b. *Statutory Sources of Personal Jurisdiction*

Plaintiffs also appear to argue, in the alternative, for a more traditional personal jurisdiction inquiry. Plaintiffs do not contend anywhere in their Opposition, however, that Defendant Woermann Line has requisite contacts with the District of Columbia to subject it to the Court's authority. n12 Nonetheless, Plaintiffs argue that, because this action involves a federal question, "'the starting point of this Court's minimum contacts analysis is the Due Process Clause of the Fifth Amendment. . . . The relevant inquiry under such circumstances is whether the defendant has minimum contacts with the United States as a whole, **[*22]** rather than whether the defendant has minimum contacts with the particular state in which the federal court sits.'" *Id.* (quoting *Estate of Unger v. The Palestinian Authority*, 153 F. Supp. 2d 76, 87 (D.R.I. 2001). Finally, Plaintiffs assert that even if the Court determines that it lacks personal jurisdiction over Defendant, Plaintiffs are "entitled to reasonable discovery before disposition of the motion to dismiss." *Id.* at 43.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Plaintiffs also fail to allege that Defendant Woermann Line has any contacts with the District of Columbia in their Amended Complaint. Am. Compl. P 6 (alleging only that Defendant Woermann Line "is responsible for operations in the United States").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

There is no federal long-arm statute that governs the personal jurisdiction inquiry in this federal question case. *HN5* Where, as here, federal law is silent, the Court examines District of Columbia law to determine the propriety of exercising personal jurisdiction over the defendant. *Edmond v. United States Postal Serv. Gen. Counsel*, 292 U.S. App. D.C. 240, 949 F.2d 415, 424 (D.C. Cir. 1991) **[*23]** ("Even though subject-matter jurisdiction is here predicated upon a federal question, [plaintiffs] must rely on D.C. law to sue nonresident defendants, since no federal long arm statute applies.") (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 98, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987); *First Chicago Int'l v. United Exch. Co.*, 267 U.S. App. D.C. 27, 836 F.2d 1375, 1377-79 (D.C. Cir. 1988) (using D.C. long-arm statute in federal question case)). *HN6* When a defendant challenges the Court's exercise of personal jurisdiction, it is the plaintiff who bears the burden of establishing a *prima facie* showing of jurisdiction, see *First Chicago Int'l*, 836 F.2d at 1378; however, "conclusionary statement[s] do[] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction," *Naartex Consulting Corp. v. Watt*, 232 U.S. App. D.C. 293, 722 F.2d 779, 787 (D.C. Cir. 1983); see also *First Chicago Int'l*, 836 F.2d at 1378.

*HN7* Under District of Columbia law, local courts may exercise "specific jurisdiction" over defendants under D.C. Code § 13-423, which provides, in pertinent part, that

   (a) A District **[*24]** of Columbia court may exercise personal jurisdiction over a

person, who acts directly or by an agent, as to a claim for relief arising from the person's --

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423. **HN8** The D.C. Court of Appeals has construed section 13-423 to "permit the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause" of the Fifth and Fourteenth Amendments to the Constitution of [*25] the United States. *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 810-11 (D.C. 1976) (*en banc*). However, because Plaintiffs' claims do not comport with the statute's provisions-that is, their claims do not arise from any business transacted between the parties in the District, nor from any act causing tortious injury in the District n13 -- "this font of jurisdiction is unavailable." *Gorman v. Ameritrade Holding Corp.*, 352 U.S. App. D.C. 229, 293 F.3d 506, 509 (D.C. Cir. 2002).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 All of the alleged acts committed by Defendants occurred in Africa, and none of the alleged injuries developed in the District. *See generally*, Am. Compl.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN9** The D.C. Code also confers "general jurisdiction" over foreign corporations under D.C. Code § 13-334(a) "as to claims not arising from the corporation's conduct in the District, if the corporation is doing business' in the District." *Id.* (quoting D.C. Code § 13-334(a)). "Although [*26] on its face § 13-334(a) appears to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District." *Id.* (citing *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981); *see also El-Fadl v. Central Bank of Jordan*, 316 U.S. App. D.C. 86, 75 F.3d 668, 673 n.7 (D.C. Cir. 1996)). **HN10**

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086 Page 13 of 17

Case 1:06-cv-00570-ESH    Document 19-4    Filed 09/25/2006    Page 14 of 18

The Court's exercise of general jurisdiction pursuant to D.C. Code § 13-334(a) must comport with the Due Process Clause of the Fifth and Fourteenth Amendments and is "only permissible if the defendant's business contacts with the forum district are continuous and systematic.'" *Ameritrade Holding Corp.*, 293 F.3d at 509-10 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)); *see also Cent. Bank of Jordan*, 75 F.3d at 675. **HN11** The D.C. Court of Appeals has held that "the reach of 'doing business' jurisdiction under § 13-334(a) is coextensive with the reach of constitutional due process." *Ameritrade Holding Corp.*, 293 F.3d at 510 **[*27]** (citing *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1148 (D.C. 1985) ("We may find jurisdiction if [the defendant] . . . has been carrying on in the District a continuous and systematic, but limited, part of its general business.") (quotations and brackets in the original omitted)).

Plaintiffs fail to allege any facts in their Amended Complaint or Opposition to Defendant Woermann Line's Motion to Dismiss that establish a *prima facie* showing of "continuous and systematic" contacts between Defendant Woermann Line and the District. *See* Am. Compl. P 6; Pls.' Opp'n to Mot. to Dismiss of Def. Woermann Line at 39-43. Indeed, Plaintiffs do not even respond to Defendant Woermann Line's contention that it does not have any contacts with the District, *see* Pls.' Opp'n to Mot. to Dismiss of Def. Woermann Line at 39-43, nor do Plaintiffs allege so in their Amended Complaint, *see* Am. Compl. P 6 (alleging only that Defendant Woermann Line "is responsible for operations in the United States"). Because Plaintiffs fail to allege that Defendant Woermann Line has contacts with the District to establish personal jurisdiction, the Court shall grant Defendant Woermann Line's **[*28]** Motion to Dismiss under Rule 12(b)(2).

In granting Defendant Woermann Line's Motion to Dismiss for lack of personal jurisdiction, it is necessary to briefly address Plaintiffs' contention that when, as here, a federal court's subject matter jurisdiction is premised on a federal question, the appropriate constitutional analysis is whether the defendants have requisite contacts with the United States as a whole. *See* Pls.' Woermann Opp'n at 40 n.27. Plaintiffs do not cite to a single case that supports their contention where, like here, no federal long-arm statute is applicable. Several scholars, however, have advocated a broad due process analysis when a federal court exercises federal question jurisdiction, observing that because the court is deriving its authority from the United States, the jurisdictional inquiry should comport with the scope of the sovereign's interest in the claim. *See* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1068.1 (3d ed. 2002) (observing that a number of commentators have argued that the Fourteenth Amended Due Process Clause standards "were too narrow when a federal court exercised federal question jurisdiction, **[*29]** at least when dealing with alien defendants"). It follows, then, according to these commentators, that when a district court exercises federal question jurisdiction over a claim, the focus of the court's Fifth Amendment due process inquiry should be expanded to the defendants' contacts with the United States, not limited to those with the forum state. *See id.*; *see also Estate of Unger v. The Palestinian Authority*, 153 F. Supp. 2d 76, 86-96 (D.R.I. 2001).

Plaintiffs only cite to one case in support of their nationwide contacts argument, *Estate of Unger v. The Palestinian Authority*, 153 F. Supp. 2d 76, 86-96 (D.R.I. 2001). *See* Pls.' Woermann Opp'n at 40 n.27. In *Estate of Unger*, several plaintiffs, including a United States citizen, filed a civil action under 18 U.S.C. § 2333, *et seq.*, part of the Antiterrorism Act of 1991. *Estate of Unger*, 153 F. Supp. 2d at 82. The District Court for the District of Rhode Island exercised personal jurisdiction over defendants through the nationwide service of process provisions of the statute n14 and under Federal Rule of Civil Procedure 4(k)(1)(D) **[*30]** . n15 *Id.* at 87. In the present case, however, Plaintiffs do not proffer any statute that provides nationwide service of process in advancing their "federal common law" claims. n16 More importantly, Plaintiffs do not cite any precedent applying a nationwide contacts analysis where the appropriate personal jurisdiction inquiry was made under state or District law. *See, e.g., Edmond*, 949 F.2d at 424. As a result, the Court declines to apply their theory of nationwide contacts in this case.

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086    Page 14 of 17

Case 1:06-cv-00570-ESH   Document 19-4   Filed 09/25/2006   Page 15 of 18

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n14 See 18 U.S.C. § 2334(a), which provides that "process in [a civil action under section 2333 of this title] may be served in any district where the defendant resides, is found, or has an agent."

n15 Rule 4(k)(1)(D) provides, in pertinent part, that "service of a summons or filing a waiver is effective to establish jurisdiction over the person of a defendant . . . when authorized by a statute of the United States." Fed. R. Civ. P. 4(k)(1)(D).

n16 In *Omni Capital International v. Rudolf Wolff & Company*, 484 U.S. 97, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987), the Supreme Court held that in the absence of a federal statute conferring nationwide service of process, former Rule 4(e) required the courts to look to the forum state's long-arm statute. *Omni Capital*, 484 U.S. at 108. Plaintiffs, however, cannot avail themselves of the D.C. long-arm statute because their claims do not arise from business transactions in the District, nor did any tortious act result in injury in the District. *See supra* at 12-13.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*31]**

c. *Jurisdictional Discovery*

Plaintiffs argue that, should the Court be compelled to dismiss the Amended Complaint for lack of personal jurisdiction over Defendants, they are "entitled to reasonable discovery before disposition of the motion to dismiss." Pls.' Woermann Opp'n at 43. In fact, according to Plaintiffs, jurisdictional discovery is a "prerequisite to the disposition of the issue of personal jurisdiction." *Id.* In support of this contention, Plaintiffs cite several decisions issued by the United States Court of Appeals for the District of Columbia Circuit. *Id.* (citing *GTE News Media Services, Inc. v. Bell South Corp.*, 339 U.S. App. D.C. 332, 199 F.3d 1343, 1352 (D.C. Cir. 2000); *Crane v. Carr*, 259 U.S. App. D.C. 229, 814 F.2d 758, 764 (D.C. Cir. 1987); *Cent. Bank of Jordan*, 75 F.3d at 676). However, it is difficult to determine what Plaintiffs seek to establish through discovery, since Plaintiffs have failed to even allege that Woermann Line has contacts with the District. *See id.* at 39-43; Am. Compl. P 6.

HN12 "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction **[*32]** of a federal court by withholding information on its contacts with the forum." *Cent. Bank of Jordan*, 75 F.3d at 676. This Circuit has held that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE*, 199 F.3d at 1351 (citing *Crane*, 814 F.2d at 760). However, "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 331 U.S. App. D.C. 226, 148 F.3d 1080, 1090 (D.C. Cir. 1998); *see also Cent. Bank of Jordan*, 75 F.3d at 676 (permitting jurisdictional discovery, but observing that plaintiff's allegations were "not conclusory' to the extent that [plaintiff] has alleged specific [business] transactions").

Under *GTE*, it appears that HN13 there are few circumstances where it is appropriate to dismiss an action for lack of personal jurisdiction without first granting "precisely focused discovery aimed at addressing matters related to personal jurisdiction. **[*33]** " *GTE*, 199 F.3d at 1352. However, the Court believes that such a situation is presented here. Plaintiffs

do not allege anywhere in their Amended Complaint or in their Opposition to Defendants' Motions to Dismiss that Defendant Woermann Line has any requisite contacts with the District of Columbia. See Pls.' Woermann Opp'n at 39-43. Not only do Plaintiffs fail to rebut Woermann Line's Declarations with factual allegations presented in their Opposition, Plaintiffs' sole contention with regard to Woermann Line is that it "is responsible for operations in the United States." Am. Compl. P 6. Certainly, "these statements are too bare to support even the inference" that Woermann Line actually does "any business in the District," *Caribbean Broadcasting*, 148 F.3d at 1089, let alone that their contacts are continuous and systematic, see supra at 13-14. n17 In light of Plaintiffs' bare allegation with respect to Woermann Line, the Court concludes that Plaintiffs have failed to "demonstrate[] that [they] can supplement [their] jurisdictional allegations through discovery." *GTE*, 199 F.3d at 1351. n18 Therefore, dismissal of the present [*34] case is warranted, without jurisdictional discovery, with regard to Defendant Woermann Line. n19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n17 The Court also observes that, to the extent that *Central Bank of Jordan's* requirement that Plaintiffs advance more than mere "conclusory" allegations, see *Central Bank of Jordan*, 75 F.3d at 676, survives the Circuit's holding in *GTE*, Plaintiffs have failed to comport with that requirement as well.

n18 In reaching this conclusion, the Court also finds decisions of the Second and Seventh Circuits persuasive -- involving requests for jurisdictional discovery directed at foreign corporations. In *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corporation*, the Seventh Circuit concluded that HN14↑"foreign nationals should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Cent. States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998). Likewise, in *Nissan Motor*, the Second Circuit determined that the plaintiffs' "conclusory statements -- without any supporting facts -- "failed to establish a prima facie case of personal jurisdiction. *Nissan Motor*, 148 F.3d at 185. Although the Second Circuit appears to meld its review of personal jurisdiction and jurisdictional discovery based on the prima facie case standard, compare id. at 185-86 with *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (noting that the *GTE* court permitted jurisdictional discovery even though "plaintiffs had failed to establish a prima facie case of personal jurisdiction"), *Nissan Motor* is factually similar to the present action before the Court. Moreover, as *Nissan Motor* observed, if the Second Circuit were to adopt an overly liberal standard:

> it would not be difficult for a plaintiff suing a multinational foreign corporation in the federal courts in New York, to make similar conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue. This would require the federal courts to conduct substantial jurisdictional discovery over foreign corporations -- a practice in which they have not hitherto engaged.

*Nissan Motor*, 148 F.3d at 185-86. Indeed, in a situation such as the one presently before the Court, permitting jurisdictional discovery would effectively add an additional, and unwritten, discovery requirement to Rule 12(b)(2). [*35]

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086

Case 1:06-cv-00570-ESH    Document 19-4    Filed 09/25/2006    Page 17 of 18

Page 16 of 17

n19 Plaintiffs have moved to file a surreply rebutting certain claims raised by Defendant Woermann Line regarding the purported tolling of a statute of limitations. Because the Court lacks personal jurisdiction over Defendant Woermann Line, it is not necessary to consider Defendant's assertions regarding the statute of limitations at this time. Nonetheless, Defendant Deutsche Bank incorporated Woermann Line's arguments regarding this matter. Therefore, the Court will consider this issue in its forthcoming opinion addressing Defendant Deutsche Bank's pending Motions.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## III. CONCLUSION

For the reasons stated above, Defendant Woermann Line's Motion to Dismiss is granted. Defendant Woermann Line is dismissed from this action for lack of personal jurisdiction.

COLLEEN KOLLAR-KOTELLY

United States District Judge

## ORDER

(June 30, 2003)

For the reasons stated in the accompanying Memorandum Opinion, it is, this 30 of June, 2003, hereby

**ORDERED** that Defendant Woermann Line's Motion to Dismiss [# 24] is GRANTED; it is further

**ORDERED** Defendant Woermann Line is dismissed [*36] from this action for lack of personal jurisdiction; and it is further

**ORDERED** that Defendant Woerman Line's Motion for a Protective Order [# 29] is DENIED as moot.

**SO ORDERED.**

COLLEEN KOLLAR-KOTELLY

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2003 U.S.Dist. LEXIS 27086**
View: Full
Date/Time: Friday, September 22, 2006 - 1:01 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27086    Page 17 of 17

Case 1:06-cv-00570-ESH    Document 19-4    Filed 09/25/2006    Page 18 of 18

**A** - Citing Refs. With Analysis Available
**I** - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.