IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IDAS RESOURCES N.V., CURAÇAO ) | |
| ) | |
| PABECO B.V. ) | |
| ) | |
| ADASTRA MINERALS, INC. ) | |
| f/k/a AMERICA MINERAL FIELDS, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:06-cv-00570-ESH |
| ) | |
| EMPRESA NACIONAL DE DIAMANTES ) | |
| DE ANGOLA E.P. ) | |
| ) | |
| NOFAR MINING B.V. ) | |
| ) | |
| Defendants. ) | |

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT EMPRESA NACIONAL DE DIAMANTES DE ANGOLA E.P.'S MOTION TO DISMISS**

Defendant, Empresa Nacional De Diamantes De Angola E.P. ("ENDIAMA"), by undersigned counsel, hereby submits this Reply to Plaintiffs' Response to Defendant ENDIAMA's Motion to Dismiss and states as follows:

I. **SUBJECT MATTER JURISDICTION CANNOT BE ESTABLISHED**

Plaintiffs rely on 28 U.S.C. §1605(a)(2) and §1605(a)(3) of the Foreign Sovereign Immunities Act (FSIA) in their Response and argue that this Court has subject matter jurisdiction over the claims against ENDIAMA. Neither of these exceptions to the FSIA applies in this case. All of the "acts" Plaintiffs discuss as occurring in the United States were actions done by Plaintiffs and others, not ENDIAMA.

### A.     ENDIAMA's Actions Have No Direct Effect in the United States

Plaintiffs must demonstrate a sufficient nexus between ENDIAMA's commercial activity in Angola (regarding Plaintiffs' claims) and the United States. See, e.g., Republic of Argentina v. Weltover, 504 U.S. 607, 617-18 (1992). Plaintiffs appear to rely on the third prong of 28 U.S.C. §1605(a)(2) to negate ENDIAMA's immunity.

This prong says that a foreign state is not "immune from the jurisdiction of courts of the United States or of the States in any case…in which the action is based…**upon an act** outside the territory of the United States in connection with commercial activity of the foreign state elsewhere and **that act causes a direct effect in the United States**." 28 U.S.C. §1605(a)(2)(iii) (emphasis added). As the Courts have held: "All three clauses require that the cause of action be based upon a certain act or activity of the foreign state,…" Voest-Alpine Trading USA Corp. v. Bank of China, 142 F. 3d 887, 892 (5th Cir. 1998).

The only inquiry therefore is whether the Plaintiffs' action in this case is based upon the alleged "acts" of ENDIAMA which caused a direct effect in the United States. Plaintiffs cannot overcome the Weltover bar that purely trivial effects in the United States are insufficient to constitute a direct effect in the United States.[1] The crux of ENDIAMA's argument regarding Weltover is that Plaintiffs have not shown that any alleged effect in the United States flows "**as an immediate consequence of [ENDIAMA's] activity**," which is the basis for Plaintiffs' claim. See Weltover, 504 U.S. at 618; see ENDIAMA's Motion to Dismiss at page 6.

The issue is whether there is any or a sufficient nexus between ENDIAMA's commercial activity in Angola (regarding Plaintiffs' claims) and the United States. Plaintiffs allege two "acts" to try to establish a direct effect in the United States: (1) payments that Plaintiff, IDAS,

---

[1] Plaintiffs are correct that Weltover does not require that such effects be substantial or foreseeable and Defendants retract this inadvertent assertion.

made to the non-party "Twins"[2] in the United States and (2) losses to the shareholders of IDAS' parent company, AMF.

### 1. IDAS' Payments to Twins Were Not Contractually Required to be Made in the United States and Any Non-Payment Was Not a Contractually Required Act of ENDIAMA

None of the acts that Plaintiffs describe as causing an effect in the United States (which in fact were IDAS' acts, not ENDIAMA's) was a contractual obligation created by any of the Agreements at issue.

In the present case, Plaintiffs allege a breach of contract action against ENDIAMA. This Court has previously addressed a breach of contract action under the FSIA and stated in Termorio, S.A. v. Electrifacadero del Atlantico, S.A., E.S.P., 421 F. Supp. 2d 87 (D.D.C. 2006) that if

> the cause of action is breach of contract, a 'direct effect' means a 'nontrivial' one which must 'follow as an immediate consequence of the defendant's activity.'" Repub. of Argentina, 504 U.S. 607, at 618, 112 S. Ct. 2160, 199 L. Ed. 2d 394 (citation, internal quotation marks and ellipses omitted). "The direct effect test is interpreted to require a clause in a contract mandating the fulfillment of contractual obligations *in the United States*." Atl. Tele-Network v. Inter-Am Dev. Bank, 251 F. Supp. 2d 126, 134 (D.D.C. 2003) (emphasis in the original).

Id. at 95-96.

Plaintiffs have indicated that "[p]ayments to Twins under the 1995 Agreement and the 2002-2003 Agreements were made to bank accounts in Washington D.C." Where Plaintiffs chose to make payments to non-party "Twins" is irrelevant. The "acts" of ENDIAMA abroad are the issue. In addition, Plaintiffs' exhibits show that Plaintiffs made the payments *to C/R International (not Twins)* in U.S. Bank Accounts, though there is no allegation that this payment was required or conducted pursuant to any contract and could be deemed an "act of

---

[2] Although Plaintiffs refer to payments made to "Twins," all exhibits provided by the Plaintiffs indicate these payments by IDAS were going to a lobbying firm called C/R International which is owned by a Mr. Robert Cabelly, for "consulting services" to IDAS.

3

ENDIAMA."[3] Plaintiffs' exhibits show only that Plaintiffs used C/R International's services and were billed directly by that wholly unrelated company. For example:

> (1) Plaintiffs' Exhibit 5, a letter dated February 17, 1998 from C/R International, Robert Cabelly, to IDAS regarding what appear to be matters Mr. Cabelly was working on for IDAS and requesting payment *from IDAS* "in connection with the above" items.[4]
>
> (2) Plaintiffs' Exhibit 5, a February 18, 1998 letter from C/R International's Robert Cabelly regarding "an agreement with Kobus on compensation in the form of a vehicle." In addition, C/R International requests payment to a bank account in North Carolina for credit to Washington, D.C. and indicates that this "completes **IDAS's commitment to me** and now enables me to assist IDAS without further compensation."
>
> (3) Plaintiffs' Exhibit 6, entitled "RECEIPT" indicates that payment was received from AMF to pay "Cabelly for consulting services."
>
> (4) Plaintiffs' Exhibit 7 shows a December 1, 2003 invoice to AMF from C/R International covering a trip to Luanda. Notably, the Nov. 20, 2003 invoice to AMF (also attached within Plaintiffs' Exhibit 7) shows that C/R International, LLC's Robert Cabelly stated "[a]s we agreed, this invoice covers the expenses for my travel to Luanda **to assist you** in the talks with ENDIAMA." (emphasis added)

Plaintiffs' Exhibits 5-7.

It is important to ask in reviewing these "acts," what are the alleged "acts" of ENDIAMA that are causing an effect in the United States? Plaintiffs are attempting to claim that its **own payments** to C/R International for consulting services are the "acts" of ENDIAMA causing a direct effect in the United States. This claim underscores the absurdity of IDAS' position. Plaintiffs have failed to point to any acts of ENDIAMA which had a direct effect in the United States that would form a nexus between ENDIAMA and the United States. Notably, Plaintiffs'

---

[3] It is important to clarify that Plaintiffs mislead the Court by stating that the 2002-2003 Agreements were among "Twins **(based in Washington, D.C.)**," ENDIAMA and Plaintiffs. See Plaintiffs' Response at 7. Plaintiffs have provided no documentation or evidence that would indicate Twins is based in Washington, D.C.; rather, Plaintiffs have provided documentation which clearly shows that **Twins is a company within the Cook Islands** and even admit that Twins is a Cook Islands company. See Plaintiffs' Response to NOFAR's Motion to Dismiss at page 5.
[4] For example, Exhibit 5 is merely correspondence between Plaintiffs and a third party and has no relation to this case.

4

exhibits neither reference the agreements with ENDIAMA, nor point to anything other than the "consulting services" AMF was receiving from C/R International, a company not a party to any agreements with ENDIAMA. Plaintiffs have shown only that any payments made by them to Mr. Cabelly were for AMF's use of his services.

The cases Plaintiffs rely on to argue that a deposit or future deposit in a U.S. bank constitutes a direct effect implicating the foreign state demonstrate only that a direct effect resulting in jurisdiction over ENDIAMA **cannot** be found. The United States Court of Appeals for the District of Columbia Circuit has clearly stated, in a case relied upon by Plaintiffs, that a key factor is that the payment in the United States was immediate and unavoidable, that it was required by the contract and that the payment was made or to be made by the foreign state. See, I.T. Consultants, Inc. v. Islamic Republic of Pak., 351 F. 3d 1184 (D.C. Cir. 2003) (assuming that the agreement between the parties did provide for payment by the foreign state in Virginia and determining therefore that the involvement of a U.S. bank was immediate and unavoidable). The I.T. Consultants Court explained that:

> The facts of this case differ in significant respects from those on which this court relied in Goodman Holdings when it found Weltover distinguishable. In Goodman Holdings, the nexus with bank accounts in the United States was the fact that the Iraqi sovereign defendant might have used those accounts to make the payments due to its creditor (an Irish corporation), as it had sometimes done before. The "immediate consequence" that Weltover requires was not present, the court found, because the payments could have been made from the defendant's [foreign state's] other accounts – outside the United States – **and there was no requirement that the payments be made into an account in New York or anywhere else in the United States**. Goodman Holdings, 26 F. 3d at 1146-47. In short, the transaction at issue in Goodman Holdings could have occurred without the involvement of a United States bank at any stage.

Id. at 1190 (emphasis added).

The Court acknowledged that

> [t]he Iraqi bank in <u>Goodman Holdings</u> did use some United States banks to make payments on other letters of credit, but we concluded that the failure to honor the particular letters at issue in the case did not have a direct effect in the United States because "neither New York nor any other United States location was designated as the 'place of performance' where money was 'supposed' to have been paid."

<u>Id.</u> at 1189 (citing <u>Goodman Holdings v. Rafidain Bank</u>, 26 F.3d 1143, 1146 (D.C. Cir. 1994)). In the present case, Plaintiffs offer no support that payments **by ENDIAMA** were to be made in the United States under contract. Plaintiffs have made no allegation that ENDIAMA made or was required to make any payments within the United States in relation to the contract. It is unrefuted that no Agreement entered into by ENDIAMA designated a location in the United States as a place of performance where money was to be paid or other acts performed by ENDIAMA. <u>See</u> Calado Affidavit at ¶¶ 12, 25, 26;[5] <u>see also</u> <u>Lempert v. Kazakhstan</u>, 62 Fed. Appx. 355, 356 (D.C. Cir. 2003) (unpublished opinion) (stating that because "neither the consulting agreement nor customary practice required that payment be made in the United States, the district court correctly held that appellant's financial loss resulting from Kazakhstan's alleged breach of the agreement did not constitute a direct effect under §1605(a)(2)") (attached as Exhibit 1).

---

[5] Plaintiffs cite to <u>Virtual Countries, Inc.</u> for support that a direct effect can be found in the United States. <u>Virtual Countries, Inc. v. Republic of S. Afr.</u>, 300 F. 3d 230, 240 (2d Cir. 2002). Interestingly, <u>Virtual Countries</u> found that a direct effect did not exist and stated that in cases where:
> defendants could have discharged their obligations by tendering payment elsewhere" and had no specific objection to tender performance in the United States, courts have declined jurisdiction under the FSIA because of the absence of a direct effect. <u>Dar El-Bina Eng'g & Contr. Co. v. Republic of Iraq</u>, 79 F. Supp. 2d 374, 382-85 (S.D.N.Y. 2000) (finding jurisdiction only over those contracts at issue in which New York was designated as the place of performance); <u>see also</u>, <u>United World Trade</u>, 33 F. 3d at 1238 (finding "lost profits" insufficient for jurisdiction); <u>Goodman Holdings v. Rafidain Bank</u>, 307 U.S. App. D.C. 79, 26 F. 3d 1143, 1146 (D.C. Cir. 1994) (finding no jurisdiction where no "United States location was designated as the 'place of performance'"), cert. denied, 513 U.S. 1079, 130 L. Ed. 2d 632, 115 S. Ct. 728 (1995); <u>Int'l Hous. Ltd. v. Rafidain Bank Iraq</u>, 893 F. 2d 8, 11 (2d Cir. 1989) (finding no direct effect where losses were incurred overseas by a foreign corporation).

<u>Id.</u> at 240.

Plaintiffs urge on page 13 of their Memorandum in Opposition that "payments to Twins" are relevant claims "under the 2002-2003 Agreements and the 1995 Agreement before that were made to designated bank accounts in the United States." As it has been pointed out, Twins is not a party plaintiff and any payments or non-payments to Twins are not the basis of IDAS' claims. As above shown, these claimed "payments" were also not to Twins or IDAS and had nothing to do with IDAS' claims in this action. Accordingly, Plaintiffs' contention, even if true, is irrelevant to jurisdiction over ENDIAMA, under the statute itself and the cases cited by IDAS. Plaintiffs' cases do not support their position.

- In Walpex Trading Co., 712 F. Supp. 383 (S.D.N.Y. 1989), the person allegedly harmed was an American company (which was the plaintiff). The Court stated:

    > The present case presents a foreign sovereign's alleged breach of a contract with a United States corporate plaintiff. The performance was to occur primarily in this country and the foreign defendant utilized United States banking resources to facilitate payment.

    712 F. Supp. at 389-390. The claim was the defendant's failure to pay money in the United States to an American plaintiff.

- In I.T. Consultants, Inc. v. Islamic Republic of Pakistan, et al., 351 F. 3d 1184 (D.C. Cir. 2003) (by Roberts, J., now Chief Justice Roberts), the Court held that "a foreign sovereign's failure to make a **contractually required** deposit in a bank in the United States meets the statute's definition of a 'direct effect'..." 351 F. 2d at 1186 (emphasis added).

- In Keller, et al. v. Central Bank of Nigeria, 277 F. 3d 811 (6th Cir. 2002), the Court found jurisdiction under the direct effect clause of 28 U.S.C. §1605(a)(2) because the defendant's foreign state "agreed to pay but failed to transmit the promise of funds to an account in a Cleveland bank." 277 F. 3d at 818.

- In Hanil Bank v. PT Bank Negara Indonesia (PERSERO), 148 F. 3d 127 (2nd Cir. 1998), the cause of action related to payments owing to Hanil, the plaintiff, by the sovereign foreign state BNI. The court stated:

    > Because Hanil specified a New York bank account into which the funds were to be deposited – and because BNI had not eliminated New York as an option in the letter of

7

>credit is issued – its breach resulted in the failure of funds destined for New York to arrive there.

148 F. 3d at 132.

- In the leading case, Argentina v. Weltover, 504 U.S. 607, 112 S. Ct. 2160 (1992), jurisdiction under the FSIA "direct effect" provision was found because plaintiffs (Weltover) "had designated their accounts in New York as the place of payment, and Argentina had made some interest payments into those accounts before announcing that it was rescheduling the payments. Because New York was the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations [the act of the foreign state abroad which was the basis for the lawsuit] necessarily had a 'direct effect' in the United States." 504 U.S. at 619, 112 S. Ct. at 2168.

- Voest-Alpine Trading USA Corporation v. Bank of China, 142 F.3d 887 (5th Cir. 1998), dealt with payments to be made to plaintiff by the foreign state Bank of China. As in some of the other cases discussed above, the Court noted:

    >Voest-Alpine is an American corporation that suffered a nontrivial financial loss in the United States in the form of funds not remitted to its account at a Texas Bank. Voest-Alpine expressly instructed the Bank of China to wire payment on the letter of credit directly into Voest-Alpine's bank account in Houston.

    142 F.3d at 896. The court referred to its holding in Callejo v. Bancomer, S.A., 764 F.2d 1101 (5th Cir. 1985) which is likewise applicable to the case at bar. The Court said "Callejo held that because the plaintiffs, and the bank account into which interest payments were to be made, were located in the Untied States, the effects of [the defendant's] breach were inevitably felt by them there." 142 F.3d at 895-896.

- More apropro is United World Trade, Inc. v. Mangyshlakneft Oil Production Association, et al., 33 F.3d 1232 (10 Cir. 1994).

    Contrasting Weltover, the court in United World Trade said: "No part of MOP's (the sovereign defendant) performance was to take place in the United States. Unlike Weltover, the defendants' performance of their contractual obligations had no connection at all with the United States." 33 F. 3d at 1237.

These cases reiterate again and again that the direct effect prong of 28 U.S.C. § 1605(a)(2) requires in this case that ENDIAMA commit a commercial act abroad that had a direct effect on IDAS in the United States. Discussions about Twins and PR firms with contacts

8

in the District of Columbia are irrelevant and are nothing more than strained attempts to find something in the United States that might mislead and misdirect the Court from the issue at hand.

There is no jurisdiction **over** ENDIAMA under the FSIA with respect to the claims and allegations made by IDAS.

### 2. Plaintiffs' Parent Company's Alleged Stock Losses Do Not Constitute a Direct Effect

The alleged stock losses of IDAS' parent company, AMF, also do not constitute a direct effect. See, e.g., Termorio, 421 F. Supp. 2d at 95 (stating that "[p]laintiffs appear to be arguing the loss suffered by Lease Co. constitutes a direct effect. However, Lease Co. lacks standing and is no longer a plaintiff in this proceeding, and accordingly any proposed effect on Lease Co. is irrelevant."). Similarly, AMF is not a proper plaintiff in this proceeding and any of its alleged stock losses are irrelevant. See, id. (finding that Lease Co. lacks standing to bring its claim because Lease Co. is merely a "stockholder of a stockholder" of the other plaintiff and was not otherwise a party to the Agreement or any actions). AMF was not a party to any agreement with ENDIAMA; it is allegedly only the parent company of IDAS. Similarly, Plaintiffs' complaint alleges that "Plaintiff Pabeco was a shareholder in IDAS and its shares were part of shares in IDAS that were to be acquired by AM[F]." See Complaint at 4 fn 2. Neither Pabeco nor AMF were parties to the agreements, and both were holders of other stock.

Plaintiffs have failed to cite any case where the extremely attenuated alleged losses of a non-party can establish subject matter jurisdiction over a foreign state. Even assuming Plaintiffs' allegation that AMF's stockholders were, first, within the United States and, second, had a monetary loss that occurred within the United States, it does not constitute a "direct effect" in the United States caused by ENDIAMA's acts abroad. Zedan v. Kingdom of Saudi Arabia, 270 U.S. App. D.C. 382, 849 F. 2d 1511, 1514 (D.C. Cir. 1988) (plaintiff's presence in U.S. was not a

9

direct effect because "financial hardship fortuitously suffered in the United States is not a direct effect of Saudi Arabia's failure to honor a contract in Saudi Arabia."); see also, Soudavar v. Islamic Republic of Iran, 67 F. Appx. 618, 619 (D.C. Cir. June 10, 2003) (unpublished judgment) (attached as Exhibit 2).

### B. Plaintiffs Cannot Obtain Subject Matter Jurisdiction Based Upon Expropriation of Property

Plaintiffs allege that jurisdiction can be obtained under 28 U.S.C. §1605(a)(3) which would require (1) rights in property that (2) were taken in violation of international law and (3) the property at issue (or any property exchanged for it) is either (a) present in the United States "in connection with commercial activity carried on in the United States by the foreign state" or (b) "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality of the foreign state and…is engaged in commercial activity in the United States." Id. There are numerous reasons why Plaintiffs have not shown that subject matter jurisdiction can be obtained based upon the expropriation of property exceptions. These reasons include: (1) a breach of contract does not establish a "right in property"; and (2) plaintiffs have not alleged that ENDIAMA is engaged in commercial activity within the United States.

The expropriation exception is inapplicable because a breach of contract dispute does not equal a "right in property." Property taken within the meaning of the statute means "physical property," not the alleged right to receive payment. Thus, "the FSIA is not implicated when intangible property is the object of the dispute." See, Nemariam v. Fed. Democratic Republic of Ethiopia, 400 F. Supp. 2d 76, 83 (D.D.C. 2005). As discussed in ENDIAMA's Motion to Dismiss, an alleged contract right is intangible property and breach of contract.

Plaintiffs have not shown that ENDIAMA is engaged in commercial activity within the United States which is also a requirement under 28 U.S.C. § 1605(a)(3). Rather, Plaintiffs take

10

issue with the way in which certain paragraphs were phrased in the Calado Affidavit and ignore the plain statement of each paragraph. Plaintiffs fail to read the Affidavit for exactly what it states: that ENDIAMA has not engaged in any business transactions within the United States.[6] The transactions or business activities to which Plaintiffs cite in hopes of contradicting this statement are examples of activities of business conducted **within Angola by others** for diamond mining activities **in Angola**. ENDIAMA has not sought to transact business within the United States, nor have Plaintiffs even offered any allegations to refute this statement. Rather, Plaintiffs point to an agreement with LaZare Kaplan International, Inc. ("LKI") and ENDIAMA in 1994.[7] The document is of no significance, as it indicates that LKI has made efforts to broaden "its purchasing capabilities throughout Africa and has an office in Antwerp to supplement its rough diamond needs by secondary market purchases." Plaintiffs' Exhibit 1, page 6 (the page number is referencing the website designation located at the top left of the document and not the actual filing page number).

Plaintiffs have failed to answer: what did ENDIAMA do in the United States in connection with that LKI contract? The Agreement with ENDIAMA references LKI being "granted a license to purchase rough diamonds from local Angolan miners and export such rough diamonds for resale." Plaintiffs' Exhibit 1, page 8. Additionally, the document shows that LKI has five buying offices in Angola, including one in Luanda. Plaintiffs' Exhibit 1, page 8. There is nothing alleged, or that could be alleged, that could support the assumption that ENDIAMA somehow sought out business or conducted a transaction in the United States. To the contrary,

---

[6] To the extent Plaintiffs were confused, an Amended Affidavit will be provided.
[7] Plaintiffs attach as "Exhibit 1" a Lazare Kaplan International, Inc., 10K405 filing with the SEC in 1999, purportedly taken from the SEC website, which, given Plaintiffs' requirements for specific authentication of exhibits, they have surprisingly failed to provide. The declaration of Jonathan Nockels does not indicate where or how the exhibits were obtained, or what personal knowledge he has regarding their authenticity as true and correct copies of the originals.

this agreement related to the mining of Angolan diamonds, within Angola, involving offices LKI had and was setting up within Angola.

Plaintiffs recognize that the agreement is for activity within Angola as the "agreement further provides that LKI and ENDIAMA would work towards the establishment of a cutting and polishing facility in Angola." Plaintiffs' Response at 8 fn 7. Plaintiffs have provided nothing to refute the Calado Affidavit's factual statement that no activity occurred or was to occur within the United States with the IDAS contracts, nor did ENDIAMA seek business transactions within the United States. Rather, Plaintiffs cite to examples of matters that were to occur in Angola. Plaintiffs mention an agreement with SODIAM, whom Plaintiffs say is a subsidiary of ENDIAMA, to have the "exclusive right to market diamonds in Angola." Plaintiffs' Response at 8. It is unclear how any of these examples would show that ENDIAMA has transacted business within the United States; on the contrary, Plaintiffs' examples all show transactions that companies sought in Angola, to market and mine the diamonds within Angola. There is no basis for subject matter jurisdiction in this case under 28 U.S.C. §1605(a)(3).

## II.  PLAINTIFFS' ATTACK ON THE CALADO AFFIDAVIT IS ENTIRELY UNFOUNDED

Despite the fact that Plaintiffs attached numerous Portuguese documents to their Response, which were not translated into English, Plaintiffs complain that the translation ENDIAMA provided for the Affidavit of Manuel de Sousa Calado, is not certified. Defendants will file shortly an Amended Affidavit from Angola with a certified translation addressing all of Plaintiffs' concerns regarding the affidavit.[8] The affidavit will include in the term "Agreement between the parties" **all** Agreements and Memorandums of Understanding between the parties.

---

[8] Plaintiffs further complain that the notary seal on the Calado Affidavit was not translated for them. The Amended Affidavit should also resolve any questions Plaintiffs may have had regarding the competency of the notary. The Calado Affidavit does reveal that the statement is being made after being "duly sworn." To the extent that Plaintiffs

It is clear from the Calado Affidavit, and Plaintiffs do not refute, that the agreements between the parties involved prospecting and exploration in Angola only, with Portuguese to be the official language for all matters relating to the agreement, and arbitration to be required in Luanda, Angola. None of the agreements were to be performed in the United States, nor did ENDIAMA initiate any transactions within the United States.

The Calado Affidavit supports (and the Amended Affidavit will support) the fact that ENDIAMA has not been engaged in any conduct or transactions with IDAS or any other company that occurred, or were to occur, in the United States. Plaintiffs' statements regarding the sufficiency of the format and language differences of the Affidavit are inconsequential.

## III.   JURISDICTIONAL DISCOVERY SHOULD BE DENIED

ENDIAMA has caused no direct effect in the United States. ENDIAMA neither took property rights in violation of international law nor engaged in commercial activity in the United States. Plaintiffs have failed to provide one example of a commercial activity undertaken by ENDIAMA within the United States.

Nor have Plaintiffs indicated what jurisdictional facts would be relevant if jurisdictional discovery were allowed. Jurisdictional discovery is not justified. Plaintiffs have not provided any basis upon which to grant their request. See, e.g., Crist v. Republic of Turk., 995 F. Supp. 5, (D.D.C. 1998). The Court in Crist stated that "[r]equests for jurisdictional discovery should be granted only if the plaintiff presents 'non-conclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA.'" Id. at 12 (citing Millicom Int'l Cellular, S.A. v. Republic of Costa Rica, 1997 U.S. Dist. LEXIS 12622, 1997 WL 527340, *4 (D.D.C. Aug. 18, 1997));" see also Goodman

---

aver "being duly sworn" is different from stating the following statements are true and correct, Defendants will not quibble with these language semantics and will address this concern and all remaining concerns in the Amended Affidavit.

13

Holdings v. Rafidain Bank, 26 F. 3d 1143, 1147 (D.C. Cir. 1994) (affirming dismissal for lack of subject matter jurisdiction over plaintiff's objections that additional discovery would uncover jurisdictional facts, because no additional discovery would alter the jurisdictional analysis). In this case, there is nothing to be supplemented.

Plaintiffs have the contracts at issue and have even attached a Portuguese version of the contract with NOFAR. To establish a direct effect, the contract alleged to be in breach must have required the fulfillment of contractual obligations by ENDIAMA in the United States. The contracts do not require any obligation by ENDIAMA to be fulfilled in the United States. Moreover, an alleged contract right does not provide a "right in property" applicable to the expropriation exception. No jurisdictional discovery would change these relevant facts.

## IV.  CONCLUSION

For the foregoing reasons, Defendant, ENDIAMA, requests that this Court dismiss Plaintiffs' claims against this Defendant with prejudice.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

        /s/ Thomas J. Whalen
Thomas J. Whalen (D.C. Bar No. 208512)
Laura G. Stover (D.C. Bar No. 475144)
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, NW
Suite 1200
Washington, DC 20006
Phone: (202) 659-6600
Fax: (202) 659-6699

Counsel for Defendant, Empresa Nacional de Diamantes de Angola E.P.

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a copy of the foregoing **Reply to Plaintiffs' Response to Defendant ENDIAMA's Motion to Dismiss** was filed and served electronically, this 25th day of September, 2006, to:

    Steven D. Cundra
    Hall Estill Hardwick Golden Gable & Nelson, PC
    1120 20th Street, NW
    Suite 700, North Building
    Washington, DC 20036

    Stephen F. Malouf
    The Law Offices of Stephen F. Malouf, P.C.
    3506 Cedar Springs
    Dallas, TX 75219


      /s/ *Thomas J. Whalen*
      Thomas J. Whalen