PROJECTO LUREMO-CATOBA

CAPÍTULO III
PROSPECÇÃO E PESQUISA

Secção I
OPERAÇÕES E IMPLANTAÇÃO

ARTIGO 15.º
Operações

1. As operações geológico compreendem as etapas de Prospecção, Pesquisa e Reconhecimento de jazigos secundários de diamantes.

2. A Associação tem o direito e a obrigação de realizar todas as Operações geológico necessárias, na medida do possível, em conformidade com o programa de trabalhos constante do ANEXO B.

Secção II
Prazo e Libertação de Áreas

ARTIGO 16.º
Prazo

Os direitos de Prospecção, Pesquisa e Reconhecimento são concedidos pelo prazo de 3 (três) anos. Se, no final desse período, a Associação concluir pela existência de uma densidade significativa de jazigos secundários, que justifique a continuação das Operações de Prospecção, Pesquisa e Reconhecimento esta terá direito a que lhe sejam concedidas, prorrogações anuais daquele prazo até ao limite máximo de cinco (5) anos, nos termos da Lei.

ARTIGO 17.º
Libertação de Áreas

1. Caso a Associação, queira prorrogar o prazo inicial deste Contrato, deverá libertar 50% da área do Contrato, conforme o estipulado no Art.º 6.º n.º 2 al. c) da Lei n.º 1/92, de 17 de Janeiro.

2. A libertação de uma área importa a extinção de quaisquer direitos da Associação sobre a mesma, e deverá obrigar a retirada do pessoal, equipamentos e infra-estruturas nela instalados. Excluem-se dessa obrigação as estruturas ou infra-estruturas que possam servir de suporte às Operações que prossigam nas áreas não libertadas, e bem assim aquelas infra-estruturas susceptíveis de utilização comum pela população residente nas áreas libertadas ou cujo desmantelamento se revele especialmente oneroso ou tecnicamente complexo.

3. Caso, posteriormente à libertação de quaisquer áreas ocorra uma alteração dos parâmetros geológicos, económicos ou legais que tornem a exploração dessas áreas rentáveis, o Estado deverá, em igualdade de condições oferecidas, dar preferência à Associação na atribuição de novos direito de Prospecção e Pesquisa sobre as áreas em questão.

**PROJECTO LUREMO-CATOBA**

4. Não obstante o disposto nos números anteriores, a Associação poderá, a todo o tempo, libertar quaisquer áreas que considere destituídas de interesse geológico, entregando-as ao Organismo Competente do Estado, livre de quaisquer ónus, sem prejuízo da obrigação de realização dos investimentos mínimos fixados no Art.º 24.º.

Secção III

## PROGRAMA DE TRABALHOS E INVESTIMENTOS

### ARTIGO 18.º
### Programa de Trabalhos

A Associação obriga-se a realizar o programa de trabalhos de Prospecção, Pesquisa e Reconhecimento que se encontra descrito no ANEXO B. O Programa deverá ser cumprido de modo integral e atempado, salvo eventuais alterações que vierem a ser acordadas pelo Organismo Competente e a Associação em função da evolução das Operações e dos resultados obtidos.

### ARTIGO 19.º
### Implantação

As operações iniciar-se-ão por uma fase de mobilização e implantação dos meios necessários à actividade, nomeadamente a aquisição, importação, montagem e instalação de equipamentos, infra-estruturas e outras estruturas de apoio físico e logístico, assim como a realização de levantamentos aéreos, planificação das operações, recrutamento de pessoal e outras actividades organizativas.

### ARTIGO 20.º
### Custos de Investimento

1. Com sujeição ao disposto no Artigo 24.º, a NOFAR suportará por sua conta e risco a totalidade dos custos e encargos com as Operações de Prospecção, Pesquisa e Reconhecimento.

2. Todos os custos adequadamente incorridos na realização das referidas Operações, tal como descritos no número seguinte, serão considerados custos de investimento, desde que aprovados pelas Partes.

3. Serão considerados custos de investimento, nomeadamente, os seguintes:

a) Encargos com os trabalhadores e outros colaboradores, Angolanos ou estrangeiros, incluindo salários, subsídios, avenças, despesas de deslocação e representação, alojamento e diárias, seguros, pensões e outros planos de reforma, assistência médica e outras regalias sociais, encargos legais e outros pagamentos que sejam devidos nos termos da lei ou da prática da indústria mineira internacional;

b) aquisição de materiais, produtos, aprovisionamentos e bens de consumo utilizados nas Operações, contabilizando-se o seu custo total e real para a Associação, incluindo despesas de todo o tipo de seguros, fretes, manuseamento entre o ponto de fornecimento e o ponto de destino, desalfandegamento, quaisquer impostos, direitos, taxas e outras imposições, e deduzindo-se quaisquer abatimentos que sejam efectuados;

ALUVIÃO

11

**PROJECTO LUREMO-CATOBA**

c) aquisição ou aluguer de equipamentos, máquinas e quaisquer outros objectos ou utensílios utilizados nas Operações, contabilizando-se o seu custo total e real para a Concessionária, incluindo despesas de seguro, fretes, manuseamento entre o ponto de fornecimento e o ponto de destino, desalfandegamento, quaisquer impostos, direitos, taxas e outras imposições, e descontando quaisquer abatimentos que sejam efectuados;

d) formação e treino dos trabalhadores afectos às Operações, nos termos do Artigo 40.°, ou de quaisquer outras pessoas, conforme possa ser periodicamente solicitado pelo Organismo Competente e aceite pela Associação;

e) encargos gerais e administrativos relativos à manutenção de escritórios em Angola ou noutro local;

f) aquisição, constituição de direito de superfície ou arrendamento, incluindo a respectiva manutenção, de habitações para alojamento dos trabalhadores e colaboradores, ou de outras pessoas relacionadas com as Operações;

g) aquisição, constituição de direito de superfície ou arrendamento de armazéns, estaleiros, parques, terrenos ou quaisquer outros espaços ou estruturas necessárias às Operações;

h) quaisquer serviços prestados por terceiros relacionados com as Operações, nomeadamente por subcontratados, consultores, peritos, especialistas ou outros técnicos ou agentes, quer na área operacional, técnica, económica, de auditoria, jurídica, quer em qualquer outra;

i) seguros exigidos por lei ou que a Associação considere adequados em função do risco das Operações e de outros tipos de risco comercial, e da prática da indústria mineira internacional;

j) juros e outros encargos financeiros resultantes da contracção de empréstimos ou financiamentos, ou da emissão de garantias para as Operações, aprovados pelas Associadas;

k) donativos, ofertas, prendas ou despesas com eventos sociais desde que sejam de valor razoável e estejam conformes aos usos e costumes aplicáveis;

l) despesas de promoção, comercialização, marketing e publicidade que sejam adequadas às Operações;

m) quaisquer outros custos que se mostrem necessários à adequada e eficaz condução das Operações.

n) Associação compromete-se a manter uma contabilidade permanentemente actualizada e correcta da sua conta de custos e despesas de acordo com o Plano Nacional de Contas em vigor na República de Angola.

ARTIGO 21.°
**Amostras**

1. Enquanto não existirem instalações adequadas em Angola que sejam internacionalmente reconhecidas para a realização da análise ou avaliação de amostras geológicas obtidas durante a Prospecção, Pesquisa e Reconhecimento, a Associação

ALUVIÃO

12

**PROJECTO LUREMO-CATOBA**

poderá remeter essas amostras, devidamente seladas, para centros especializados no estrangeiro, desde que seja observada a Lei.

2. A Associação informará o Organismo Competente dos resultados e das avaliações, de acordo com o disposto no Artigo 48.º.

3. Sempre que as circunstâncias o permitam, a Associação recolherá e remeterá ao Instituto Geológico de Angola amostras de rochas com interesse científico que sejam encontradas na Área do Contrato.

ARTIGO 22.º
**Investimento da Prospecção e Pesquisa**

A NOFAR compromete-se a disponibilizar por sua conta e risco à Associação os recursos financeiros devidos para a realização dos investimentos necessários.

ARTIGO 23.º
**Investimento Mínimo em Prospecção e Pesquisa**

1. A NOFAR obriga-se a realizar nos 3 (três) anos de Prospecção, Pesquisa e Reconhecimento um investimento mínimo de U.S.D. 3.000.000,00 (três milhões de dólares dos Estados Unidos da América).

2. Caso a fase de Prospecção, Pesquisa e Reconhecimento se prolongue para além do prazo de 3 (três) anos, o montante mínimo do investimento a efectuar em cada período de prorrogação, deverá ser definido anualmente pela Associação e aprovado pelo Organismo Competente.

ARTIGO 24.º
**Risco**

A NOFAR assume inteiramente o investimento por sua conta e risco. Se não for descoberto qualquer Jazigo economicamente viável, ou se os Jazigos descobertos não forem suficientes para permitir a recuperação dos investimentos realizados, a NOFAR assumirá o respectivo prejuízo, não podendo reclamar qualquer reembolso por parte da ENDIAMA ou do Governo.

**CAPÍTULO IV
EXPLORAÇÃO**

ARTIGO 25.º
**Reembolso do Investimento**

1. Todos os custos de investimentos incorridos com a prospecção, pesquisa e reconhecimento dos jazigos economicamente exploráveis, incluindo os respectivos Estudos de Viabilidade Técnico-Económico, serão reembolsáveis a partir das receitas provenientes da sua exploração, de forma proporcional à sua dimensão e ao volume de actividades que levaram à sua descoberta.

2. Nos termos dos Artigos 14.º da lei n.º 1/92, de 17 de Janeiro, é assegurado à NOFAR o reembolso integral dos investimentos realizados no cumprimento dos respectivos planos de prospecção, pesquisa e reconhecimento, apenas a partir dos

**PROJECTO LUREMO-CATOBA**

lucros provenientes da fase de exploração dos jazigos que forem descobertos ou valorizados com esses planos.

3. As condições, formas e prazos de reembolso serão fixadas no respectivo título de exploração com base na rentabilidade esperada em função do Estudo de Viabilidade Técnica económica.

ARTIGO 26.º
**Distribuição de Dividendos**

Das receitas brutas obtidas na fase de exploração e após a dedução dos impostos, custos operacionais, reserva legal e reserva de cash flow, serão deduzidos os seguintes valores:

a) 50 %(cinquenta por cento) para a amortização do investimento;
b) o remanescente será distribuído as Associadas de acordo com as respectivas participações.

ARTIGO 27.º
**Garantia dos Direitos de Exploração**

Fica entretanto, desde já, garantida à Sociedade Mista que vier a ser constituída para a fase de Exploração, caso tenham sido concretizadas a descoberta e a avaliação, mediante estudo técnico e económico de uma ou mais jazigos minerais a concessão de direitos de exploração mediante a respectiva outorga do título de exploração.

Artigo 28.º
**Bónus**

A NOFAR pagará um Bónus a Endiama de acordo com o estabelecido no artigo 10.º do contrato de exploração Luremo – Catoba.

ARTIGO 29.º
**Estudo de Viabilidade Técnico-Económico**

1. Concluída a Prospecção, Pesquisa e Reconhecimento de qualquer Jazigo, a Associação procederá à elaboração de um Estudo ou Estudos de Viabilidade Técnico-Económico para a Exploração, devendo no final do terceiro ano, ser elaborado e apresentado o primeiro E.V.T.E. relativo a primeira Mina, e no final do quinto ano, todos os E.V.T.E., nos termos da última parte do art.º17.º do presente contrato.

2. O Estudo de Viabilidade Técnico-Económico incluirá um relatório geológico que será elaborado com base em práticas usuais na indústria mineira internacional, designadamente com base em geofísica, sondagens, amostragens e geoquímica detalhadas, que confirmem a dimensão do Jazigo e a existência de quantidades económicas de diamantes nesse Jazigo que justifiquem um mais aprofundado programa geotécnico para prosseguir com as Operações até ao início da fase de Desenvolvimento e, finalmente, da fase de Exploração.

3. Do relatório geológico deverão constar:

ALUVIÃO                                                                                              14

**PROJECTO LUREMO-CATOBA**

a) Mapa geológico da área pretendida, à escala adequada, com a descrição das características geológicas salientes dessa área;

b) Planta topográfica identificando os locais em que todos os trabalhos de geofísica, sondagem e amostragem foram realizados;

c) Mapas dos resultados dos trabalhos de geofísica e perfis de sondagem que salientem o Jazigo;

d) Mapas dos resultados de geoquímica e de mineralogia das análises laboratoriais;

e Relatório detalhado descrevendo os Jazigos estudados, a sua estrutura e morfologia, incluindo informação sobre a distribuição de diamantes, e as reservas determinadas.

4. O Estudo destina-se a demonstrar a viabilidade económica da Exploração de um ou mais Jazigos, e deverá ser submetido à aprovação nos termos do número 6. Na elaboração do Estudo, e para além do relatório geológico previsto nos números anteriores, a Associação terá ainda em consideração os seguintes elementos:

a) Análise económica e financeira do projecto, com estimativa do montante dos investimentos a realizar e respectivos programas e orçamentos de trabalho;

b) Processos de produção e de metalurgia a adoptar na extracção de diamantes;

c) Estudo de impacto ambiental;

d) Plano de desenvolvimento para as reservas identificadas no relatório geológico, e respectiva previsão orçamental para conduzir o projecto à fase de Desenvolvimento;

e) Estruturas operacionais necessárias à execução das fases de Desenvolvimento e de Exploração;

f) Infra-estruturas necessárias à implantação e desenvolvimento do projecto;

g) Estimativa dos custos de Exploração;

h) Necessidades de recursos humanos e programas de emprego e formação de trabalhadores Angolanos;

i) Estimativa dos valores indicativos dos diamantes a serem extraídos, bem como o estudo de mercado;

j) Forma de estruturação e gestão das operações de Exploração.

5. A análise económico-financeira deverá ser efectuada de acordo com o método real de actualização do fluxo de caixa ("*discounted cash flow*"), e terá por objectivo calcular a taxa de retorno do investimento após atingida através da produção a partir do(s) Jazigo(s) relevante(s). O cálculo da referida taxa terá em conta, de acordo com a fórmula mundialmente utilizada na indústria mineira, entre outros, os seguintes factores:

a) O número de anos estimado desde a data de aprovação do Estudo de Viabilidade Técnico-Económico até à data em que todas as obrigações de desmontagem e recuperação da área, nos termos do referido Estudo, tiverem sido cumpridas pela Associação (o "Período Aplicável");

b) Estimativa dos fluxos de caixa reais após impostos durante cada ano do Período Aplicável, tendo em consideração a estimativa de todas as entradas e saídas de fluxos de caixa depois de impostos para a Associação;

c) Índices de preços actualizados de acordo com a taxa de inflação anual, sendo a inflação futura estimada, com base no acréscimo médio do Índice de Preços no Consumidor ("Consumer Price Index") dos Estados Unidos da América;

d) Todos os cálculos devem ser expressos em dólares dos Estados Unidos da América.

ALUVIÃO

15

**PROJECTO LUREMO-CATOBA**

6. O Estudo, conjuntamente com os documentos referidos no número 4, e quaisquer outros que sejam exigidos por lei, serão submetidos ao Organismo Competente para aprovação.

7. O Organismo Competente deverá aprovar o Estudo e demais documentos referidos no número anterior. No exercício dos poderes e competências atribuídos por lei, o Organismo Competente poderá solicitar à Associação esclarecimentos, propor alterações ou aditamentos, ou, de um modo geral, promover a realização de consultas com vista ao esclarecimento ou resolução de quaisquer dúvidas surgidas.

8. O Estudo deverá ser apresentado ao Organismo Competente até ao termo do prazo do contrato.

9. Enquanto este Contrato estiver em vigor, poderão ser elaborados e apresentados ao Organismo Competente novos Estudos de Viabilidade Técnico-Económico para Jazigos que sejam posteriormente descobertos ou avaliados.

ARTIGO 30.º
**Duração da Exploração**

A duração do direito de Exploração para cada Mina será fixada após apresentação do E.V.T.E, sendo sempre inferior ao período necessário para o esgotamento das reservas mineiras existentes, podendo ser objecto de um ou mais períodos de prorrogação nas mesmas condições ou outras mediante negociações que tenham em conta as condições do mercado e a sua evolução, nos termos da Lei.

ARTIGO 31.º
**Área da Mina**

1. A Área da Mina será demarcada pela Entidade Competente, tendo em conta a área julgada necessária para levar a efeito o Plano de Exploração aprovado para instalações mineiras de tratamento industrias e auxiliares.

2. A Área da Mina terá por base um ou mais Jazigos economicamente viáveis que possam ser explorados a partir de uma mesma estrutura física de exploração, seja à superfície ou subterrânea, desde que devidamente autorizada pelo Organismo Competente.

3. Se o(s) Jazigo(s) a explorar se estender(em) para além da Área do Contrato, em zona que não esteja abrangida por qualquer contrato com terceiras entidades para Prospecção ou Exploração, as Associadas terão o direito de incluir essa zona adjacente na Área da Mina, desde que solicitem ao Organismo Competente, em conformidade com a legislação em vigor.

**CAPITULO V – ADMINISTRAÇÃO E GESTÃO**

ARTIGO 32º
**(Conselho de Associados)**

1. A Associação em Participação será administrada e gerida por um Conselho de Associados composto por 3 (três) membros, sendo um representante de cada Associada, sob proposta das mesmas, através da qual coordenarão e orientarão a

ALUVIÃO

16

**PROJECTO LUREMO-CATOBA**

actividade da Associação, devendo o respectivo escritório ser situado em Luanda, Angola.

2. O Conselho de Associados será dirigido por um Presidente que será indicado pela ENDIAMA, a quem competirá:

a) convocar as reuniões e submeter aos membros a proposta da ordem de trabalhos;

b) presidir as reuniões e dirigir os respectivos trabalhos;

c) coordenar e orientar as actividades do Conselho de Associados, com vista a garantir o seu bom funcionamento.

3. Ao Conselho de Associados são conferidos os mais amplos poderes de gestão e representação da Associação, limitada pela competência exclusiva atribuída por lei ou pelos estatutos.

## ARTIGO 33.º
### (Competência do Conselho de Associados)

Para além de outras atribuições previstas no Contrato ou em legislação em vigor, compete ao Conselho de Associados:

a) aprovar os programas anuais e respectivos orçamentos e submeter à ENDIAMA para aprovação final;

b) aprovar o seu regulamento interno;

c) elaborar e submeter a aprovação das Associadas os princípios da política de administração, gestão e recursos humanos da Associação;

d) acompanhar e controlar a execução da política de recursos humanos da Associação e aprovar o respectivo regulamento interno de pessoal;

e) adquirir, onerar e alienar quaisquer bens da Associação, mediante prévia autorização escrita das Associadas;

f) discutir, analisar e aprovar os relatórios de actividades da Direcção da Associação e submetê-los à aprovação da Associação e as autoridades competentes;

g) exercer o poder disciplinar, em nome das Associadas nos termos em que forem definidos.

## ARTIGO 34.º
### (Deliberações do Conselho de Associados)

1. As reuniões da Conselho de Associados, só poderão realizar-se com a presença de todos os seus membros.

2. Qualquer membro da Conselho de Associados poderá, nas suas ausências ou impedimentos delegar os seus poderes, mediante Procuração numa outra pessoa, desde que esta integre o quadro de pessoal da Associada que representa.

3. Cada membro da Conselho de Associados, terá direito a um voto e as deliberações serão tomadas, sempre que possível, por consenso dos membros.

4. Carecem de consulta prévia favorável das Associadas, as seguintes questões:

a) aprovação do orçamento anual da Associação, bem com o respectivo relatório e contas;

ALUVIÃO

17

**PROJECTO LUREMO-CATOBA**

   b) a realização de investimentos da Associação;
   c) a aquisição, oneração e alienação dos bens da Associação.

5. No caso de impasse nas deliberações do Conselho de Associados terá sete (7) dias úteis, para deliberar de acordo as seguintes regras:

   a) cada membro deverá consultar a Associada que represente, sobre a questão com vista à busca de consenso;
   b) não tendo sido possível a obtenção de consenso com base nas consultas previstas na alínea a), as Associadas, reunirão com vista a pôr-se termo ao impasse;
   c) as Associadas deverão, na impossibilidade de obtenção de consenso com base na alínea b), decidir com base nas respectivas quotas de participação definidas no Art. 4.º do presente Contrato.

ARTIGO 35.º
(Direcção Executiva)

1. O Conselho de Associados delegará no Director Geral a nomear pela ENDIAMA, os poderes de gestão corrente da Associação e, designadamente a execução de contratos de concessão de direitos mineiros, bem como todos os assuntos com esta directa ou indirectamente relacionados.

2. Para execução do presente Contrato, as Associadas acordam que a NOFAR indicará o Director para as Operações Geológicas e Mineiras e o Director para Administração e Finanças e a TWINS indicará o Director de Aprovisionamento.

3. O Director Geral terá a responsabilidade pela condução das operações previstas no Contrato, deverá agir de acordo as deliberações do Conselho de Associados e controlar a gestão dos Directores para os pelouros indicados no ponto n.º 2.

4. A Direcção da Associação terá atribuições essencialmente executivas, designadamente:

   a) Conduzir e executar as operações geológico-mineiras, com zelo, dedicação, competência, eficiência e eficácia, nas melhores condições técnicas, económicas e ecológicas de acordo com a lei angolana e as regras e poderes geralmente aceites na industria mineiras de diamantes;

   b) executar em nome da Associação todas as operações previstas nos programas de investigação geológico-mineiras, assumindo todos os compromissos necessários ao efeito;

   c) manter o Conselho de Associados informado sobre a realização das operações geológico-mineiras, mediante relatórios e reuniões periódicas, de acordo com o estabelecido neste Contrato e os procedimentos a definir pela Conselho de Associados;

   d) efectuar e manter actualizados e organizados nos escritórios da Associação o registo completo de todas as operações técnicas realizadas ao abrigo do Contrato, bem como o registo todos os custos e despesas em que incorrer.

ALUVIÃO

18

PROJECTO LUREMO-CATOBA

## CAPITULO VI
## CONDUÇÃO DAS OPERAÇÕES

### ARTIGO 36.º
### Licenças e Autorizações

O Organismo Competente poderá emitir, ou solicitar que outras Entidades Públicas emitam, todas as licenças, autorizações ou permissões necessárias ou convenientes para a execução atempada e completa das Operações, nomeadamente para os seguintes fins, nos termos da lei:

a) Acesso, permanência e livre circulação na Área do Contrato ou na Área da Mina, a qualquer hora do dia ou noite conforme seja necessário, de qualquer pessoa afecta às Operações, incluindo empregados de empresas subcontratadas, supervisores, médicos, enfermeiros, transportadores, vigilantes e todo o restante pessoal;

b) Construção e montagem de quaisquer instalações, edifícios, habitações e quaisquer outras estruturas, infra-estruturas e equipamentos necessários às Operações;

c) Utilização de meios de acesso ao local das Operações, incluindo estradas e aeroportos, aeródromos, caminhos de ferro, vias fluviais e outros;

d) Extracção de areia, burgaus, argilas e de outros materiais naturais de construção, bem como água dos cursos dos rios, incluindo os materiais provenientes de terrenos do domínio do Estado e de outras Entidades Públicas;

e) Montagem e funcionamento de estabelecimentos de produção e venda de produtos alimentares e bens industriais destinados exclusivamente aos trabalhadores e colaboradores afectos às Operações;

f) Obtenção de vistos de trabalho e outras autorizações para a entrada, saída e permanência no território nacional dos trabalhadores, colaboradores e consultores estrangeiros afectos às Operações, incluindo os pertencentes a empresas subcontratadas, bem como a importação e exportação dos seus bens pessoais;

g) Atracação, embarque e desembarque de navios nos portos de Angola, bem como a carga e descarga de aeronaves nos aeroportos do país em regime de prioridade;

h) Utilização de telecomunicações públicas e privadas, concedendo-se prioridade na obtenção de linhas, canais ou espectros de ondas, nacionais e internacionais, cujos licenciamentos deverão estar sujeitos a legislação em vigor;

i) Transporte de correspondência e documentos entre Angola e o estrangeiro;

j) Importação e exportação de todos os produtos, amostras, equipamentos, bens, incluindo o desembaraço aduaneiro expedito e em condições de segurança;

k) Importação de capitais a partir do exterior, e obtenção das respectivas licenças por parte do Instituto do Investimento Estrangeiro e das instituições bancárias autorizadas.

### ARTIGO 37.º
### Estruturas e Infra-estruturas

1. As estruturas e infra-estruturas poderão ser localizadas fora da Área do Contrato ou da Área da Mina, na medida em que tal se revele adequado às Operações, por razões operacionais, logísticas, económicas, de segurança ou outras. Poderão, nomeadamente, situar-se fora da Área do Contrato ou da Área da Mina as instalações e escritórios de apoio logístico e administrativo.

2. A Associação tem o direito de recusar quaisquer pedidos formulados pelo Organismo Competente, por outras entidades públicas ou pela ENDIAMA para a construção de estruturas ou infra-estruturas que a Associação não considere necessárias às

**PROJECTO LUREMO-CATOBA**

Operações, sem embargo de o pedido poder ser aceite em condições a acordar, desde que os respectivos custos sejam considerados custos de investimento nos termos do Artigo 20.º.

3. Aquando do termo voluntário das Operações de Prospecção nos termos deste Contrato, da libertação de uma área nos termos do Artigo 16.º, as estruturas e infra-estruturas instaladas revertem para o Estado, ou para quem o Estado designar, que passará a ser responsável pelas mesmas para todos os efeitos de direito. Exceptuam-se as estruturas que puderem ser levantadas e que a Associação pretenda utilizar em Operações mineiras realizadas noutra parte de Angola.

### ARTIGO 38.º
### Recursos Humanos

1. A Associação deverá recrutar os trabalhadores mais adequados às Operações, em função das suas qualificações e experiência para as exigências dos planos aprovados, independentemente da nacionalidade dos mesmos, ressalvado o disposto nos números seguintes.

2. Na medida em que existam trabalhadores nacionais com as qualificações e experiência adequadas, a Associação deverá dar preferência ao recrutamento desses trabalhadores, e, nomeadamente, daqueles que se encontrem ao serviço da ENDIAMA, tendo em consideração o disposto na alínea a) do Art. 11.º.

3. A Associação deverá ministrar formação e treino aos trabalhadores nacionais, em conformidade com as directrizes constantes do ANEXO C, de modo a permitir a sua progressão profissional e o desempenho de cargos e funções progressivamente mais exigentes e de maior responsabilidade.

4. Na medida do legalmente exigido ou necessário para as Operações, aos trabalhadores poderão ser atribuídos determinados benefícios laborais, tais como alojamento, alimentação, assistência médica, transporte, programas de lazer e outras regalias sociais de acordo com o regulamento referido no número seguinte.

5. As condições da prestação de trabalho, incluindo as matérias de natureza disciplinar, serão desenvolvidas e concretizadas em regulamento interno.

### ARTIGO 39.º
### Saúde e Segurança no Trabalho

1. Na organização do trabalho e apetrechamento das instalações, a Direcção da Associação deverá assegurar níveis máximos em matéria de saúde e segurança, minimizando o risco de acidentes de trabalho e doenças profissionais e propiciando um ambiente de trabalho saudável.

2. A Direcção da Associação deverá promover acções de formação e sensibilização em matéria de higiene e segurança no trabalho, assim como educar os trabalhadores e outros colaboradores na correcta utilização das máquinas, materiais e utensílios de trabalho.

ALUVIÃO                                                                                          20

**PROJECTO LUREMO-CATOBA**

3. A Direcção da Associação deverá apetrechar-se com equipamentos adequados e estabelecer procedimentos com vista a permitir uma resposta pronta em caso de acidente e evacuação dos sinistrados.

## ARTIGO 40.º
### Subcontratação

1. A Associação poderá recorrer a empresas contratadas e consultores para a realização de trabalhos e funções especializadas, nos termos da Lei.

2. A subcontratação nos termos do numero anterior não importa qualquer exoneração ou diminuição das responsabilidades ou obrigações da Associação nos termos do presente Contrato.

## ARTIGO 41.º
### Aquisição de Bens e Serviços

1. A Associação é livre de adquirir e contratar, em Angola ou no estrangeiro, os bens e serviços que, no seu livre critério, se mostrarem mais adequados à correcta execução das Operações.

2. Em caso de igualdade de condições entre os bens e serviços Angolanos e os estrangeiros, tendo em conta a qualidade, preço e outros encargos, disponibilidade, condições de entrega, especificações, manutenção e outros factores considerados relevantes, a Associação deverá dar preferência aos bens e serviços de origem nacional.

3. É proibido a prestação de serviços e fornecimentos de bens pelas Associadas ou contratadas da Endiama á Associação, mas se vigorar o regime concorrencial esta proibição não abrange as empresas das associadas ou contratadas pela Endiama.

## ARTIGO 42.º
### Segurança

1. Sem prejuízo das competências da polícia e de outras forças de ordem e segurança interna, compete à Associação tomar medidas para garantir, dentro da Área do Contrato ou da Área da Mina, a segurança das pessoas, equipamentos e instalações afectos às Operações, e ainda dos minerais que venham a ser extraídos, ou daqueles que sejam extraídos no decurso das actividades.

2. Para efeitos do número anterior, a Associação poderá recrutar, formar e equipar o pessoal que considere necessário, assim como recorrer aos serviços de empresas de segurança devidamente licenciadas.

3. A Associação será responsável pelo armazenamento e transporte dos diamantes recuperados e produzidos a partir da Área do Contrato no decurso das Operações.

## ARTIGO 43.º
### Transportes Aéreos e Rodoviários

A Associação utilizará os transportes aéreos e rodoviários conforme considere mais adequado para a execução das Operações, ficando no entanto sujeita às regras de licenciamento em vigor para a construção de estradas, aeródromos ou pistas de aterragem privadas.

ALUVIÃO                                                                                                    21

PROJECTO LUREMO-CATOBA

## ARTIGO 44.º
### Telecomunicações

Poderão ser adquiridos e utilizados pela Associação meios de comunicação com frequência independente, com sujeição às regras de licenciamento em vigor.

## ARTIGO 45.º
### Importação e Reexportação de Equipamentos e Outros Bens

1. A Associação tem o direito de importar e, quando adequado, reexportar, quaisquer equipamentos ou outros bens necessários à correcta execução das Operações.

2. A importação e reexportação estarão sujeitas ao regime aduaneiro previsto na Lei.

## ARTIGO 46.º
### Circulação de Informações e Dados

1. A Associação e as Partes têm o direito de remeter para fora de Angola, e de aí utilizar, cópias de todas as informações e dados relativas às Operações, salvaguardadas as disposições legais e as obrigações de confidencialidade constantes do Art. 59.º.

2. No caso de a análise das informações e dados só poder ser adequadamente efectuada através da inspecção dos respectivos originais, nomeadamente tratando-se de registos em fita magnética de levantamentos aeromagnéticos, a Associação poderá caso seja necessário, enviar esses originais para o exterior do país, após apresentação de prévia justificação ao Organismo Competente. Ressalvada esta excepção, os originais de todas as informações e dados deverão ser mantidos em Angola pela Associação.

## CAPITULO VII
### INSPECÇÃO E RESPONSABILIDADE

## ARTIGO 47.º
### Inspecção pelo Organismo Competente

1. A Associação deverá permitir e facilitar a inspecção, por parte do Organismo Competente, das suas actividades e dos dados e elementos que possuir de natureza técnica, económica, financeira ou outra.

2. Os representantes devidamente credenciados do Organismo Competente terão o direito de visitar o local ou locais das Operações, devendo ser-lhes facultadas as condições logísticas necessárias, segundo um critério de razoabilidade, ao desempenho da sua missão nesse local ou locais. Sem que tal represente qualquer diminuição dos poderes e competências do Organismo Competente, esta entidade e Associada deverá colaborar no sentido de as referidas visitas e inspecções serem organizadas de modo a causar o menor transtorno possível ao curso das Operações.

## ARTIGO 48.º
### Relatórios Periódicos

1. A Associação elaborará e submeterá ao Organismo Competente relatórios semestrais contendo uma descrição circunstanciada dos trabalhos realizados e os dados técnicos e económicos obtidos.

ALUVIÃO

22

**PROJECTO LUREMO-CATOBA**

2. Os relatórios devem ser elaborados com todos dados relevantes de modo a permitir ao Organismo Competente avaliar a eficácia e resultados das Operações realizadas, bem como dos respectivos dados financeiros, nomeadamente através da apresentação de dados estatísticos e outros elementos de síntese.

3. Os relatórios devem ser apresentados ao Organismo Competente no prazo de 90 (noventa) dias após o termo do período a que disserem respeito.

ARTIGO 49.º
**Responsabilidade Civil**

As Associadas serão responsáveis, nos termos da lei, por qualquer dano causado a terceiros.

ARTIGO 50.º
**Seguros**

1. As Associadas deverão celebrar os contratos de seguro exigidos por lei, ou quaisquer outros que ela própria, considere necessário, com vista à adequada cobertura dos riscos emergentes das Operações.

2. Sem prejuízo do disposto no número anterior, as Associadas poderão recorrer a apólices de âmbito mundial que existam da NOFAR, na medida em que as mesmas sejam extensíveis às Operações em Angola, bem como promover o auto-seguro quando não seja possível, ou seja demasiado oneroso, obter cobertura externa.

3. As apólices deverão estar permanentemente em vigor e os limites de cobertura deverão ser ajustados a quaisquer variações no risco das Operações.

ARTIGO 51.º
**Protecção do Ambiente**

1. Na execução das Operações, as Associadas deverão actuar em conformidade com os padrões e práticas internacionalmente aceites em matéria de protecção do ambiente.

2. Concretamente, as Operações deverão ser conduzidas de modo a reduzir a formação e propagação de poeiras, prevenir e remediar a contaminação das águas, evitar a contaminação dos solos, assegurar a estabilidade dos terrenos, tratar ou remover os entulhos, tapar e cobrir poços e trincheiras após a conclusão dos trabalhos, manter o ruído e vibrações em níveis aceitáveis, e não lançar no mar, correntes de água, lagoas ou solo, resíduos contaminantes nocivos à saúde humana, ao ambiente, à fauna ou à flora. A Associação deverá ainda desenvolver estudos e projectos visando a preservação do equilíbrio ecológico e a minimização dos danos causados pelas Operações.

3. Quando, não obstante a observância dos princípios acima estabelecidos, não for possível evitar a ocorrência de lesões ao ambiente, a Associação deverá, na medida do que for razoável e tecnicamente executável, promover a reconstituição física dos locais afectados.

ALUVIÃO

23

**PROJECTO LUREMO-CATOBA**

4. As medidas de protecção do ambiente nos termos acima descritos deverão fazer parte dos planos de trabalho e deverão respeitar as Princípios Gerais sobre a Reposição do Meio Ambiente.

## CAPÍTULO VIII
### REGIME FISCAL, CAMBIAL E CONTABILÍSTICO

### ARTIGO 52.º
### Regime Fiscal

1. A Associação está sujeita ao regime fiscal estabelecido no Regulamento do Regime Fiscal para a Indústria Mineira ("RRFIM"), aprovado pelo Decreto Lei n.º4-B/96 de 31, de Maio, com as alterações constantes dos números seguintes:

2. Todos os custos incorridos no exercício das actividades de Prospecção, Pesquisa e Reconhecimento serão contabilizados, quer em Dólares dos Estados Unidos, quer em Kwanzas, como imobilizado incorpóreo e, como tal, sujeitos à amortização às taxas previstas no Artigo 3.º, n.º2 do RRFIM.

3. A amortização dos custos referidos no anterior número 2, só se iniciará no ano em que começar a produção. Estes custos são integralmente amortizáveis, não se aplicando para o efeito o limite de 5 anos para o reporte de prejuízos previstos no Artigo 6.º do RRFIM.

### ARTIGO 53.º
### (Regime Cambial)

1. A Associação estará sujeita ao regime cambial aplicável às actividades mineiras e legislação complementar (Aviso n.º 02/2003, de 7 de Fevereiro).

2. A Associação poderá abrir e manter como garantia, "Escrow Account" em Bancos domiciliados no exterior para efeitos de reembolso do serviço da dívida de Contratos de Financiamento.

### ARTIGO 54.º
### Regime Contabilístico

1. A Associação registará as transacções em conformidade com os Princípios de Contabilidade vigentes na ordem jurídica angolano.

2. A apresentação das Demonstrações Financeiras obedecerá o Plano Geral de Contabilidade vigente (Decreto no. 82/2001 de 16 de Novembro).

3. As transacções serão registadas em moeda funcional US Dólar – USD e convertida automaticamente para a moeda local Kwanzas – Kz ao câmbio da data divulgado pelo Banco Nacional de Angola.

4. Para efeito de controlo das condições internas de exploração durante a fase de prospecção, pesquisa e reconhecimento a Associação procederá à contabilização de todos os custos da operação, imputando-os aos jazigos objectos de intervenção, quer estes se revelem ou não economicamente exploráveis.

ALUVIÃO

24

PROJECTO LUREMO-CATOBA

CAPÍTULO IX
CLÁUSULAS JURÍDICAS

ARTIGO 55.º
Lei Aplicável

O presente Contrato rege-se pelo Direito Angolano.

ARTIGO 56º
Língua do Contrato

1. A língua do Contrato é o português tendo sido redigido em português, devendo ser igualmente essa a língua a utilizar em todos os documentos, registos de informação e correspondência oficial relativos às Operações geológico-mineiras.

2. Nas comunicações verbais, tanto poderá ser utilizada o Português como o Inglês, devendo no entanto utilizar-se um interprete beste último caso, cujos encargos serão suportados pela parte que dele necessitar.

ARTIGO 57.º
Interpretação e Aplicação

1. A interpretação e aplicação do presente Contrato deverá obedecer ao Princípio da legalidade, tendo em conta a unidade do Sistema Jurídico Angolano.

2. Sem prejuizo do disposto no número anterior, as disposições do presente Contrato deverão ser interpretadas da forma que melhor permitir a Associação executar as Operações de modo eficaz, célere e com menores custos, tendo em conta as soluções mais correctas do ponto de vista técnico e económico.

ARTIGO 58.º
Confidencialidade

1. Enquanto este Contrato vigorar, quaisquer dados, informações e documentos de natureza técnica, económica, contabilística ou outra, incluindo, nomeadamente, relatórios, análises, resultados, mapas, gráficos, registos e outros elementos que sejam obtidos ou gerados no decurso das Operações, serão mantidos na mais estrita confidencialidade e não poderão ser revelados sem o consentimento, manifestado por escrito das partes.

2. A Associação deverá informar os seus trabalhadores, consultores e empresas contratadas acerca da obrigação de confidencialidade prevista neste Artigo, e exigir o seu estrito cumprimento.

3. Ficam excluídos do disposto nos números anteriores todos os dados, informações e documentos que, por exigência legal ou contratual, devam ser prestados ou apresentados ao Organismo Competente, ou outra entidade pública, a instituições financeiras, entidades seguradoras, bolsas de valores, consultores no âmbito das suas funções ou potenciais cessionários, e bem assim para o cumprimento de qualquer outro dever imposto por lei. Nesse caso, a informação deverá ser prestada apenas à entidade que dela carece, e o seu conteúdo deverá ser restringido ao estritamente necessário para o fim que se pretende atingir.

ALUVIÃO

25

PROJETO LUREMO-CATOBA

4. A fim de obter propostas para a celebração de contratos para áreas adjacentes à Área do Contrato, a ENDIAMA poderá após prévia informação à Associação, revelar a terceiros interessados os dados e informações de natureza geológica, mineira ou técnica que possuírem relativamente às zonas adjacentes á Área do Contrato.

5. As Partes, poderão utilizar informações relativas a outros minerais descobertos na Área do Contrato para efeitos de apresentação ao Organismo Competente de pedidos de licença de Prospecção ou Exploração desses minerais.

6. A obrigação de confidencialidade prevista nos números anteriores não será aplicável às publicações que, nos termos da lei ou dos respectivos Estatutos, as partes estejam obrigadas a efectuar.

## ARTIGO 59.º
### Boa Fé

As Partes e a Associação obrigam-se a actuar no âmbito do presente Contrato de acordo com os ditames da boa fé, e a não exercer qualquer direito ou faculdade de modo injustificadamente oneroso para a outra parte.

## ARTIGO 60.º
### Cessação da Licença de Prospecção

A Licença de Prospecção cessará os seus efeitos nos termos da Lei.

## ARTIGO 61.º
### (Alteração de Circunstâncias)

1. Se durante a vigência do presente Contrato ocorrerem circunstâncias ou factores de natureza política, económica, financeira, legal ou mesmo tecnológica que, não constituindo situação de força maior alteram, contudo, o equilíbrio económico e financeiro que vigorava no momento da celebração do contrato e provocam consequências danosas ou injustas para uma das Partes, as clausulas do presente Contrato afectados por esta alteração serão renegociadas com vista a adopção de mecanismos de adaptação que permitam a manutenção da relação contratual com base no equilíbrio económico e financeiro inicial.

2. Não havendo acordo entre as Partes durante a renegociação do Contrato, as Partes recorrerão a Arbitragem, nos termos do Art.º 65.º do Contrato.

## ARTIGO 62.º
### Forçá Maior

1. Nenhuma das Associadas será responsável pelo incumprimento ou pelo cumprimento parcial ou defeituoso se tal se ficar a dever a uma situação de força maior, nela incluído todo e qualquer fenómeno alheio à sua vontade, imprevisível e incontornável, tais como, meramente exemplificativo, catástrofes naturais, guerras, sabotagens, terrorismo, insurreições, distúrbios civis, greves, lock out, medidas políticas legais ou administrativas das autoridades públicas.

ALUVIÃO

26

PROJETO LUREMO-CATOBA

2. A Associada que pretender invocar o presente artigo deverá comunicar à outra pela via mais eficaz ao seu alcance e no espaço de tempo mais curto possível, devendo as Associadas efectuar toda as diligências ao seu alcance com vista à redução dos efeitos do fenómeno sobre o Contrato.

3. Se a situação de força maior durar mais do que três meses ou for previsível, que ela durará por um período superior a este, as Associadas reapreciarão as condições do Contrato e as possibilidades da sua continuidade ou a conveniência da sua caducidade, tendo em conta a nova realidade existente.

4. Se as Partes optarem pela continuidade do Contrato, o mesmo ficará apenas suspenso durante o período em que se mantiver a ocorrência de força maior suspendendo-se igualmente, durante esse período, o decurso do seu prazo de duração, podendo ser executado parcialmente à medida do que for possível se apenas ocorrer uma afectação parcial.

5. Não havendo acordo quanto à sua continuidade, o Contrato considera-se caducado, produzindo os seus efeitos no prazo de sessenta (60) dias contados do aviso de recepção pelas outras Partes.

## ARTIGO 63.º
## Rescisão do Contrato

1. Este Contrato poderá ser rescindido por iniciativa da ENDIAMA para além dos casos previstos na lei, quando:

a) O relatório final de operações da NOFAR conclua que não ocorrem na área correspondente ao objecto deste Contrato, quaisquer jazigos dos tipos incluídos no objecto deste Contrato susceptíveis de exploração económica;

b) a NOFAR tenha, sem suficiente causa ou justificação, não cumprido com as obrigações que lhe cabem nos termos deste contrato por um período superior a trinta dias consecutivos ou noventa dias interpolados no decurso de um ano;

c) ocorrer violação reiterada ou grave das disposições contratuais pela NOFAR ou pela TWINS que torne impossível a continuação da relação contratual entre as Associadas.

d) se a NOFAR não criar as condições técnicas e financeiras para o início das operações de acordo com o programa de trabalho constante do ANEXO B, no prazo de 90 (noventa) dias, á contar da data de aprovação do presente contrato.

2. O Contrato poderá ser rescindido por iniciativa da NOFAR, ou da TWINS, para além dos casos previstos na Lei, quando:

a) as operações tenham revelado que não ocorrem na área correspondente ao objecto deste Contrato quaisquer jazigos dos tipos incluídos no objecto deste Contrato, susceptíveis de exploração económica;

b) por força maior se torne economicamente inviável prosseguir as operações;

c) As operações tenham sido totalmente paralisadas ou interrompidas por um período superior a três meses devido à força maior;

ALUVIÃO

27

**PROJECTO LUREMO-CATOBA**

d) Ocorrer violação reiterada ou grave das disposições contratuais pela ENDIAMA que torna impossível a continuação da relação contratual entre as Associadas.

3. Sem prejuízo do previsto no Art.º 67º, a iniciativa da rescisão por qualquer das Associadas deve ser comunicada por escrito à outra Associada até trinta dias após a causa invocada como fundamento da rescisão, produzindo estes efeitos depois de passados trinta dias sobre a data da recepção da referida comunicação.

## ARTIGO 64.º
### Resolução de Diferendos

1. Os eventuais diferendos que possam surgir entre as Partes signatárias do presente Contrato em matéria de aplicação, interpretação ou integração das disposições do mesmo, ou de qualquer disposição legal, deverão ser resolvidos amigavelmente de comum acordo.

2. Não sendo possível alcançar acordo no prazo de 60 (sessenta) dias após uma parte ter enviado à outra comunicação escrita estabelecendo os termos do diferendo e solicitando à resolução do mesmo, qualquer das partes pode submeter o diferendo a arbitragem.

3. A arbitragem será conduzida de acordo com as Regras de Arbitragem da UNCITRAL em vigor na data da celebração do presente Contrato, salvo na medida em que tenham sido modificadas ou complementadas pelas partes.

4. O tribunal arbitral será composto por três árbitros, um nomeado pelo Demandante, outro pelos Demandados e o terceiro, que desempenhará as funções de árbitro presidente, escolhido de comum acordo pelos árbitros antes nomeados. O Tribunal considera-se constituído na data em que o terceiro árbitro comunicar às Partes por escrito a sua aceitação.

5. Caso os dois árbitros nomeados não chegarem a acordo quanto a nomeação do terceiro arbitro no prazo de 30 (trinta) dias, o terceiro arbitro será nomeado pelo Presidente do Tribunal Provincial de Luanda, a requerimentos de qualquer uma das partes.

6. O tribunal arbitral terá a sua sede jurídica em Luanda – República de Angola.

7. O tribunal arbitral julgará de acordo com o Direito Angolano.

8. As decisões e sentenças do tribunal arbitral são finais e vinculativas, e delas não cabe recurso.

9. A decisão arbitral estabelecerá ainda a forma como cada uma das Partes deve suportar os custos da arbitragem e em que proporção.

## ARTIGO 65.º
### Entrada em Vigor

O presente Contrato entra em vigor na data em que se verifique cumulativamente os seguintes factos:

a) Publicação do Decreto do Ministério da Geologia e Minas, que aprove o presente Contrato;
b) Assinatura do presente contrato pelas partes.

ALUVIÃO                                                                    28

**PROJECTO LUREMO-CATOBA**

## ARTIGO 66.º
### Revisão

Para além do disposto no Artigo 63.º, este Contrato poderá ser revisto em qualquer momento mediante acordo escrito entre as Partes.

## ARTIGO 67.º
### (Disposições Nulas, Anuláveis ou Inválidas)

Se qualquer disposição deste Contrato violar a lei, regulamento, postura ou similar e, por essa razão, o presente Contrato de Associação se torne parcialmente nulo, anulável ou inválido, o mesmo Contrato considerar-se-á reduzido ao conjunto dos artigos válidos, permanecendo em vigor sem as disposições viciadas se, desse modo, for ainda possível a execução do objecto do presente Contrato e a execução dos objectivos pretendidos com o mesmo.

## CAPÍTULO X
### DISPOSIÇÕES FINAIS

## ARTIGO 68.º
### Comunicações

1. As notificações ou comunicações entre as Partes, a Associação no âmbito do presente Contrato só se consideram validamente realizadas se forem efectuadas por escrito, e entregues pessoalmente ou enviadas por correio, correio electrónico (e-mail), telecópia ou telex para os seguintes endereços:

**ENDIAMA**
Rua: Major Kanhangulo n.º 100 Edifício Endiama
Telex: 3068/3046
Telefax: 337276/336983
e-mail – endiama@endiama-angola.com/ www.endiama-angola.com
Luanda – Angola

**NOFAR**
Rua: Wartermanweg 100, 3067 GG Roterdão
Telef:332439
Telefax:+871-762-599252
e-mail: mkramash@netvision.net.il

Países Baixos

**TWINS**
Rua: Anz House, Main Road, Avarua, Rarotonga
Telef: 2022612841
e-mail: rcabelly@crinternational.com
Ilhas Cook

ALUVIÃO

29

**PROJECTO LUREMO-CATOBA**

2. Qualquer alteração aos endereços acima indicados deverá ser prontamente comunicada por escrito às demais entidades.

### ARTIGO 69.º
### Anexos

Fazem parte integrante do presente Contrato os seguintes Anexos:

a) Anexo A – Mapas da Áreas do Contrato
b) ANEXO B – Programa de Trabalhos
c) ANEXO C – Princípios Gerais Sobre a Política de Recursos Humanos
d) ANEXO D – Princípios Gerais Sobre a Protecção do Ambiente
e) ANEXO E – Princípios Gerais Sobre Acções de Carácter Social

EM FÉ DO QUE, as Partes celebraram o presente Contrato, em Luanda, em _18_ de Maio de 2004.

**PELA ENDIAMA**

DR. MANUEL ARNALDO DE SOUSA CALADO

**PELA NOFAR**

SR. KRAMASH MORDECHAI

**PELA TWINS**

SR. GENERAL ANTÓNIO DOS SANTOS FRANÇA

ALUVIÃO

30