IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IDAS RESOURCES N.V., CURACO; PABECO, B.V.; and ADASTRA MINERALS, INC., f/k/a AMERICAN MINERAL FIELDS, INC.<br>Plaintiffs,<br><br>v.<br><br>EMPRESSA NACIONAL DE DIAMANTES DE ANGOLA E.P. and NOFAR MINING B.V.<br>Defendants. | §§§§§§§§§§§§§<br><br>Case No. 1:06-cv-00570-ESH |

**PLAINTIFFS' RESPONSE TO DEFENDANT
EMPRESSA NACIONAL DE DIAMANTES DE ANGOLA E.P.'S
MOTION TO FILE DECLARATION**

COME NOW, Plaintiffs IDAS Resources N.V., Curaco ("IDAS"); Pabeco B.V.; and Adastra Minerals, Inc., f/k/a America Mineral Fields, Inc. ("Plaintiffs") and file this Response to Defendant Empressa Nacional de Diamantes de Angola E.P.'s ("ENDIAMA") Motion to File Declaration and would show the Court as follows:

**I.**

This action arises out of two licenses issued to Plaintiffs and a series of agreements amongst Plaintiff IDAS, Defendant ENDIAMA, and Twins Limited ("Twins"), executed in 2002 and 2003 ("the 2002-2003 Agreements"). On August 1, 2006, Defendants ENDIAMA and Nofar Mining B.V. moved for the dismissal of this action on jurisdictional grounds.

In its motion, Defendant ENDIAMA challenged this Honorable Court's exercise of subject matter jurisdiction on both factual and legal grounds. Factually, ENDIAMA relied exclusively on the Affidavit of Manuel de Sousa Calado, President of ENDIAMA's Board of Directors ("Calado

Affidavit"). Because the Calado Affidavit suffers from a great number of maladies, Plaintiffs objected to the Calado Affidavit and moved that it be struck.[1] ENDIAMA is now seeking leave to amend their reply with the "Amended Affidavit."[2] Because the Amended Calado Affidavit also suffers from a great number of maladies, Plaintiffs' hereby oppose ENDIAMA's motion for leave or, alternatively, move this Honorable Court strike the Amended Calado Affidavit.

### A. Objections to the Entirety of the Amended Calado Affidavit

First, the Amended Calado Affidavit has not been appropriately notarized. Mr. Calado signed the Amended Affidavit on October 13, 2006.[3] The Amended Affidavit, however, was notarized on September 22, 2006, twenty-one days prior.[4] Thus, despite ENDIAMA's representation, the Amended Affidavit was not signed in the presence of a notary public. Therefore, this Honorable Court should deny ENDIAMA leave to supplement their reply with the Amended Calado Affidavit or, alternatively, strike the entirety of the affidavit.

Second, Mr. Calado does not aver that the statements set forth in the Amended Affidavit are true and correct, nor does he aver that he has personal knowledge of all of the statements. Rather, Mr. Calado states that he has personal knowledge of the statements made in the Amended Affidavit and can testify to them "except with respect to matters that I mention on the basis of information and belief" and except for statements "about which I have information and which I believe to be true."[5]

---

[1] *Plaintiffs' Response to ENDIAMA's Motion to Dismiss*, at 4-10.

[2] *ENDIAMA's Reply to Plaintiffs' Response to ENDIAMA's Motion to Dismiss*, at 12.

[3] *ENDIAMA's Motion for Leave*, Amended Calado Affidavit, at 5, 10.

[4] *Id.* at 11.

[5] *Id.* at ¶ 1.

ENDIAMA is seeking to file the Amended Calado Affidavit in support of its Motion to Dismiss, and ENDIAMA's Motion to Dismiss is treated as a motion for summary judgment. *See Brookens v. United States*, 627 F.2d 494, 499 (D.C. Cir. 1980); *Scanwell Laboratories, Inc. v. Thomas*, 521 F.2d 941, 949 (D.C. Cir. 1975). Affidavits filed in support of a motion for summary judgment must be based upon personal knowledge. *See* FED. R. CIV. P. 56(e); *Gleklen v. Democratic Congrssional Camp*, 199 F.3d 1365, 1369 (D.C. Cir. 2000). Not only does Mr. Calado not base all of his statements on personal knowledge, Mr. Calado does not identify which statements are within his personal knowledge and which he is "mention[ing] on the basis of information and belief."[6] Therefore, this Honorable Court should deny ENDIAMA leave to supplement their reply with the Amended Calado Affidavit or, alternatively, strike the entirety of the affidavit.

**B.    Additional Maladies of the Amended Calado Affidavit**

The Amended Calado Affidavit suffers from additional maladies, which are considered *infra* by paragraph.

**1.    Paragraphs 1-15, 20: Irrelevant Statements**

Paragraphs 1-7 of the Amended Calado Affidavit provide background information on ENDIAMA. Paragraphs 8-11 discuss in some detail a June 14, 1995 contract between ENDIAMA and IDAS ("the 1995 Agreement"). The 1995 Agreement is also the focus of ENDIAMA's Motion to Dismiss. Indeed, ENDIAMA avers in its Motion to Dismiss that "[t]he contracts entered into between IDAS and ENDIAMA ('IDAS Agreement') involved prospecting and exploration only in Angola," and ENDIAMA supports this statement by referring to paragraph 8 of the original Calado Affidavit. *ENDIAMA's Memorandum in Support* at 3. It is clear from the Amended Calado

---

[6] *Id.* at ¶ 1.

Affidavit, the Calado Affidavit, and the Motion to Dismiss that ENDIAMA's jurisdictional attack is based upon the 1995 Agreement. The problem with ENDIAMA's argument, and Mr. Calado's preoccupation with the 1995 Agreement, is that the 1995 Agreement is irrelevant to the claims being made, as it was rescinded in 2000 by mutual agreement of the parties. **The claims being made by Plaintiffs arise out of the 2002-2003 Agreements**,[7] agreements which ENDIAMA wholly fails to address in its Motion to Dismiss, Memorandum in Support, and Calado Affidavit. Accordingly, Mr. Calado's discussion of the 1995 Agreement, including its arbitration provision,[8] is without probative

---

[7] Because of a new law limiting the maximum area that could be licensed to a single entity, the 1995 Agreement was rescinded by agreement of the parties. Rescission was memorialized in a November 2000, Memorandum of Understanding, ratified by the Council of Ministers, and published in *The Diario*, the official Government gazette. As noted in the Complaint,

> The Angolan Government promulgated a new diamond law limiting the maximum diamond concession area for any one company to 3,000 sq. km. Based upon this fact, IDAS and Twins were advised by ENDIAMA that the 1995 and related agreements were no longer effective and new contracts would have to be agreed. **IDAS and Twins agreed to terminate the earlier agreements and negotiate new contracts with ENDIAMA.**

*Complaint* at ¶ 17 (emphasis added).

[8] The 1995 Agreement, which was rescinded in whole, is the sole document ever mentioning arbitration. The parties did not subsequently agree to any particular form or medium for dispute resolution.

force in support of ENDIAMA's burden to establish an exception to the FSIA.

Paragraphs 11-15 and 20 of the Amended Calado Affidavit aver that the concession areas are not located in the United States and that ENDIAMA has no employees in the United States, is not a resident of the United States, has no offices in the United States, and did not sign the 1995 or 2002-2003 Agreements in the United States. But these paragraphs say nothing about whether the actions complained of had a "direct affect" in the United States. Accordingly, these paragraphs are of no help to ENDIAMA.

### 2. Paragraphs 16-17, 27: Demonstrably False Statements

In paragraph 16 and 17 of his affidavit, Mr. Calado awkwardly rephrased his prior sworn statements that "ENDIAMA does not and has not engaged in any course of conduct in the United States" and that "ENDIAMA has never been involved in any transactions or business with any entity located in the United States." *Calado Affidavit* at ¶¶ 16,17. But as proven in *Plaintiffs' Response to ENDIAMA's Motion to Dismiss*, these statements are demonstrably false.[9] ENDIAMA has extensive relationships with parties organized under U.S. law, such as Lazare Kaplan International, and parties residing in the United States, such as Twins.[10]

The last of Mr. Calado's statements, paragraph 27, is uninformed. Mr. Calado asserts that "ENDIAMA had no involvement whatsoever in the acquisition of IDAS by Adestra [sic] Minerals, Inc. ('AMI')." *Amended Calado Affidavit* at ¶ 27. In a February 23, 1998 meeting, however, ENDIAMA expressly consented to Plaintiff Adastra's acquisition of IDAS. *See Plaintiffs' Reponse to ENDIAMA's Motion to Dimiss*, Exhibit 4. This consent was subsequently confirmed in writings

---

[9]   *Plaintiffs' Response to ENDIAMA's Motion to Dismiss*, at 7-9.

[10]  *Id.*

exchanged between the parties, one which includes an invitation for ENDIAMA "to come to Dallas or any other place in the US, at any time convenient to you, to meet the Chairman of AMF as well as some of the members of the Board of Directors of IDAS Resources N.V. and AMF." *Id.* at 3. As with his other statements, Mr. Calado's statement that ENDIAMA had no involvement in Adastra's acquisition of IDAS is incorrect.

### 3. Paragraphs 18-19, 26: Conclusory Statements

Plaintiffs object to paragraphs 18, 19, and 26 of the Amended Calado Affidavit because they are simply recitals of the holdings that ENDIAMA hopes to elicit from this Honorable Court:

> 18. ENDIAMA, E.P. did not waive, either explicitly or implicitly, its jurisdictional immunity for actions in the United States of America.
>
> 19. ENDIAMA, E.P. did not perform acts or commercial activities in the United States of America, or acts outside the territory of the United States of America, related to commercial activities that may have or have had a direct effect upon the United States of America, with respect to the matters alleged in the cause of action for this case.
>
> 26. No Agreement executed by ENDIAMA, E.P. designated a place in the United States of America as the place of its execution where payments would be made or other acts performed.

Conclusory allegations contained in an affidavit are of no probative force. *See e.g., Consolidated Edison Co. of New York v. Bodman*, 445 F.3d 438, 458 (D.C. Cir. 2006); *Maydack v. U.S. Dep't of Justice*, 218 F.3d 760, 769 (D.C. Cir. 2000).

### 4. Paragraphs 21-25: Misleading Statements

Paragraphs 21-25 fail to provide any probative evidence, as they relate solely to ENDIAMA's contractual relations with Nofar. But more significantly, paragraphs 21-25 are misleading because they fail to discuss Twins' partnership in Defendants' joint venture.

Twins' partnership with Defendants is of critical importance because while Twins is

organized under Cook Island law, Twins is based in Washington, D.C., thereby further connecting Defendants with the United States for purposes of jurisdiction. *See* Exhibit 8, *Plaintiffs' Response to ENDIAMA's Motion to Dismiss, Pryor Declaration* at ¶ 6-10. This U.S. connection is likely why Defendants, in general, and Mr. Calado, in particular, have repeatedly refused to disclose the details and extent of Twins' participation in their joint venture. Despite the efforts of Defendants and Mr. Calado, however, the truth will come out in the discovery process.

## II.

Pursuant to the foregoing, Plaintiffs respectfully urge this Honorable Court deny Defendant ENDIAMA's Motion to File Declaration or, in the alternative, strike it.

**Respectfully submitted,**

Steven D. Cundra
Hall Estill Hardwick Golden Gable & Nelson, PC
1120 20th Street, NW
Suite 700, North Building
Washington, DC 20036

Stephen F. Malouf
The Law Offices of Stephen F. Malouf, PC
3811 Turtle Creek Blvd., Suite 1600
Dallas, Texas 75219

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the attorneys of record in the above cause in accordance with the Federal Rules of Civil Procedure on this 24th day of October, 2006.

_S. M. Watson_
Sarah Watson, Legal Assistant
Hall Estill Hardwick Golden Gable & Nelson, PC
1120 20th Street, NW
Suite 700, North Building
Washington, DC 20036